**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

THE ARC OF IOWA; CHARMAINE
ALEXANDER, individually and on behalf of
C.B., a minor; JONATHAN  CRAIG,
individually and on behalf of E.C. and J.C.,
minors; MICHELLE CROFT, individually and
on behalf of J.J.B., a minor; AMANDA
DEVEREAUX, individually and on behalf of
P.D., a minor; CARISSA FROYUM ROISE,
individually and on behalf of H.J.F.R., a minor;
LIDIJA GEEST, individually and on behalf of
K.G., a minor; MELISSA HADDEN,
individually and on behalf of V.M.H., a minor;
HEATHER LYNN PRESTON, individually
and on behalf of M.P. and S.P, minors; LISA
HARDISTY SITHONNORATH, individually
and on behalf of A.S., a minor; REBEKAH
STEWART, individually and on behalf of
E.M.S., a minor; and ERIN VERCANDE,
individually and on behalf of S.V., a minor,

     *Plaintiffs*,
  v.

KIM REYNOLDS, in her official capacity as
Governor of Iowa; ANN LEBO, in her official
capacity as Director of the Iowa Department of
Education; ANKENY COMMUNITY
SCHOOL DISTRICT; COUNCIL BLUFFS
COMMUNITY SCHOOL DISTRICT;
DAVENPORT COMMUNITY SCHOOL
DISTRICT; DECORAH  COMMUNITY
SCHOOL DISTRICT;  DENVER
COMMUNITY SCHOOL DISTRICT; DES
MOINES PUBLIC SCHOOLS; IOWA CITY
COMMUNITY SCHOOL DISTRICT;
JOHNSTON COMMUNITY SCHOOL
DISTRICT; LINN MAR COMMUNITY
SCHOOL DISTRICT; and WATERLOO
COMMUNITY SCHOOL DISTRICT,

     *Defendants*.

Case No. 4:21-cv-264

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## PRELIMINARY STATEMENT

1.      In the final days of the 2021 legislative session, the Iowa General Assembly passed section 28 of House File 847, which prohibits school districts in Iowa from requiring everyone to wear masks in their schools. 2021 Iowa Acts ch. 139, § 28 (codified at Iowa Code § 280.31) (hereinafter "HF 847"). As the school year begins and COVID cases soar, school districts face a dilemma: whether to comply with HF 847 or whether to meet their obligations under federal disability rights laws by protecting the health, safety, and dignity of their students with disabilities and providing equal access to their education.

2.      Parents of children with disabilities that put them at risk of severe illness should they contract COVID also face a dilemma: whether to send their children to school at risk to their health and even lives or whether to keep them at home at the expense of their education and development.

3.      HF 847 provides that "school district[s] . . . shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's . . . property unless the facial covering is necessary for a specific extracurricular or instructional purpose . . . ." *Id.*

4.      This directive reversed the Iowa Department of Education's ("IDOE") prior policy which "defer[ed] to local districts . . . to determine how and when" school activities could resume.[1] The directive also scorned the prevailing guidance from the United States Center for Disease Control ("CDC") recommending the use of face masks in indoor environments, including schools.

---

[1] *COVID-19 Guidance and Information*, Iowa Dep't of Educ. (Oct. 7, 2020), http://web.archive.org/web/20210109052728/https://educateiowa.gov/article/2021/01/07/covid-19-guidance-and-information.

Prior to the passage of HF 847, numerous school districts around the state—including Des Moines, West Des Moines, Waukee, Sioux City, Urbandale, Linn-Mar, and Norwalk— required masks on school property.[2]

5.      Similarly, on August 6, 2021, the Iowa Department of Public Health issued public health guidance that stated that "HF 847, signed by Governor Reynolds on May 20, 2021, prohibits a school district from adopting or enforcing a policy that requires employees, students, or the public to wear a mask while on school property."[3]

6.      Since HF 847 was enacted, nationally the number of children contracting COVID-19 has increased almost six-fold (592%).[4]

7.      Plaintiffs are students with disabilities that increase the risk of serious complications or death from a COVID-19 infection.  These conditions include asthma, Down syndrome, cerebral palsy, heart defects and other heart problems, lung conditions, hypertension, sickle cell anemia, and weakened immune systems—many of which have been identified by the CDC as risk factors for severe illness in the case of COVID-19 infections.

8.      Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals with disabilities. Both federal disability rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation of students with disabilities in public education. Both laws also prohibit methods of administration that defeat the fundamental goals of public schools

---

[2] Grant Gerlock, *Schools Review Mask Policies After IDPH Issues New Guidelines,* Iowa Public Radio (May 18, 2021), https://www.iowapublicradio.org/state-government-news/2021-05-18/schools-review-mask-policies-after-idph-issues-new-guidelines.
[3] *COVID-19 and K-12 School Update for Fall 2021,* Iowa Dep't of Public Health (Aug. 6, 2021), https://idph.iowa.gov/Portals/1/userfiles/61/covid19resources/School%20Update%20Fall%202021.pdf.
[4] *Children and COVID-19: State Data Report: Version: 8/26/21,* Am. Acad. Pediatrics (Aug. 26, 2021 update), https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/ at 9.

with respect to students with disabilities—that is to provide an education. Finally, both federal disability rights laws also impose affirmative obligations on covered entities to proactively provide reasonable modifications to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

9. School districts with students who have disabilities that make them more likely to become severely ill from a COVID-19 infection have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety. Currently, the CDC's recommended protocol—as well as those of the American Academy of Pediatrics and the American Medical Association—includes universal masking. By prohibiting any school from imposing a mask mandate, HF 847 interferes with that school's ability to comply with its obligations under federal disability rights laws and illegally forces parents of children with underlying conditions to choose between their child's education and their child's health and safety in violation of the ADA and Section 504. Further, such a prohibition needlessly and unconscionably exposes Iowa school children and their families to a heightened risk of infection, hospitalization, and death. It is against this law—and its calamitous consequences—that Plaintiffs seek declaratory and injunctive relief.

## PARTIES

10. The ARC of Iowa ("the Arc") is the state chapter of a nationwide nonprofit organization devoted to advocating for people with intellectual and developmental disabilities (I/DD) and their families. The Iowa chapter has just over 3,100 members, including families of individuals with I/DD in need of support and services, professionals in the field of developmental disabilities, and citizens interested in promoting the rights of people with I/DD. Throughout its almost sixty-year history, the Arc has represented and acted on behalf of individuals and their

families and has sought to improve civil rights for people with I/DD. The Arc has standing to represent its members who are adversely affected by HF 847, in particular families with children with I/DD and underlying medical conditions that make them vulnerable to severe complications from COVID-19.

11.     Heather Lynn Preston is an individual, *sui juris,* who resides in Des Moines, Iowa. Ms. Preston is the parent of M.P., a disabled child. M.P. is diagnosed with Heterotaxy Syndrome, and lives with significant heart defects, chronic lung conditions, and an absent spleen, among other disabilities. Ms. Preston is also the parent of S.P, a disabled child. S.P is diagnosed with hypertension due to small kidneys seizures, and Tourette Syndrome.

12.     Lisa Hardisty Sithonnorath is an individual, *sui juris,* who resides in Des Moines, Iowa.  Dr. Sithonnorath is the parent of A.S., a disabled child. A.S. is diagnosed with Down syndrome and hypothyroidism, and has a previous history of viral induced asthma.

13.     Charmaine Alexander is an individual, *sui juris,* who resides in Urbandale, Iowa. Ms. Alexander is the parent of C.B., a disabled child. C.B. is diagnosed with asthma.

14.     Lidija Geest is an individual, *sui juris,* who resides in Davenport, Iowa. Ms. Geest is the parent of K.G., a disabled child. K.G. is diagnosed with asthma.

15.     Erin Vercande is an individual, *sui juris,* who resides in Decorah, Iowa. Ms. Vercande is the parent of S.V., a disabled child. S.V. has a brain injury, cerebral palsy, and a history of strokes and epilepsy.

16.     Jonathan Craig is an individual, *sui juris*, who resides in Black Hawk County, Iowa. Mr. Craig is the parent of E.C., a disabled child.  E.C. is diagnosed with Down syndrome, chronic seizures, and chronic respiratory problems.  Mr. Craig is also the parent of J.C., a disabled child.  J.C. is diagnosed with sickle cell anemia and functional asplenia.

17.     Amanda Devereaux is an individual, *sui juris*, who resides in Polk County, Iowa. Ms. Devereaux is the parent of P.D., a disabled child.  P.D. is diagnosed with symptomatic congenital cytomegalovirus infection, polymicrogyria, and epilepsy, along with other disabilities.

18.     Carissa Froyum Roise is an individual, *sui juris*, who resides in Bremer County, Iowa. Ms. Roise is the parent of H.J.F.R., a disabled child.  H.J.F.R. is diagnosed with congenital central hypoventilation syndrome.

19.     Melissa Hadden is an individual, *sui juris*, who resides in Pottawattamie County, Iowa. Ms. Hadden is the parent of V.M.H., a disabled child.  V.M.H. is diagnosed with heart disease, periventricular leukomalacia, autism, cerebral palsy, cortical digital impairments, and optic nerve hypoplasia.

20.     Michelle Croft is an individual, *sui juris*, who resides in Johnson County, Iowa. Ms. Croft is the parent of J.J.B., a disabled child.  J.J.B. is diagnosed with asthma, among other disabilities.

21.     Rebekah Stewart is an individual, *sui juris*, who resides in Linn County, Iowa. Ms. Stewart is the parent of E.M.S., a disabled child.  E.M.S. is diagnosed with Williams Syndrome.

22.     Plaintiffs Heather Lynn Preston, Lisa Hardisty Sithonnorath, Charmaine Alexander, Lidija Geest, Erin Vercande, Jonathan Craig, Amanda Devereaux, Carissa Froyum Roise, Melissa Hadden, Michelle Croft, and Rebekah Stewart are referred to as the Individual Plaintiffs.

23.     The Individual Plaintiffs are parents of children who are "qualified individuals with disabilities" under the ADA and who are protected from discrimination by the ADA and under Section 504 of the Rehabilitation Act.

    a.   The Individual Plaintiffs' children have a physical or mental impairment that substantially limits one or more major life activities, or a record of such an impairment, 42 U.S.C. § 12102(2), (3) ; 29 U.S.C. § 705(20)

    b.   The Individual Plaintiffs' children meet the "essential eligibility requirements" for participation in the programs or activities provided by the public entity (e.g., they are the right age to be eligible for public education in the state), 42 U.S.C. § 12131(2); 29 U.S.C. § 794.

24.    The Defendant Kim Reynolds is the Governor of the State of Iowa and as such is the Chief Executive for the state, responsible for ensuring the enforcement of the state's educational statutes. Iowa Const. art. IV, § 9. Defendant Reynolds signed the education legislation containing HF 847. She has publicly advocated for HF 847 to remain in effect, to be vigorously enforced, and has vowed to defend it in court. Defendant Reynolds is sued in her official capacity as the Governor of the State of Iowa.  The State of Iowa and the Office of the Governor are public entities within the meaning of the ADA, 42 U.S.C. § 12131, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

25.    The Defendant Ann Lebo is Director of the Iowa Department of Education ("IDOE") and is responsible for the acts and omissions of the IDOE.  Defendant Lebo is sued in her official capacity as the Director of the Iowa Department of Education. The Iowa Department of Education is a public entity within the meaning of the ADA, 42 U.S.C. § 12131, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

26.    The Defendants Reynolds and Leboare collectively referred to as the "Defendant

State Officials."

27.     The Defendants, DES MOINES PUBLIC SCHOOLS; JOHNSTON COMMUNITY SCHOOL DISTRICT; DAVENPORT COMMUNITY SCHOOL DISTRICT; DECORAH COMMUNITY SCHOOL DISTRICT;  WATERLOO COMMUNITY SCHOOL DISTRICT; ANKENY COMMUNITY SCHOOL DISTRICT; DENVER COMMUNITY SCHOOL DISTRICT; COUNCIL BLUFFS COMMUNITY SCHOOL DISTRICT; IOWA CITY COMMUNITY SCHOOL DISTRICT; and LINN MAR COMMUNITY SCHOOL DISTRICT ("Districts"), indispensable but not adverse parties, are corporate and governmental agencies duly empowered by the constitution and statutes of the state of Iowa to administer, manage, and operate the schools in their District.  Each District receives state and federal funding for the education of children with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a). Each District meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

28.     Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Americans with Disabilities Act of 1990; 42 U.S.C. § 12101 *et seq*. and for claims brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

29.     This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

30.     Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that more than one Defendant and more than one Plaintiff reside in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## FACTS

### THE CURRENT STATE OF THE COVID-19 PANDEMIC

31.     The history of the COVID-19 pandemic is well-known, and an extensive body of evidence shows that COVID-19 is a highly communicable respiratory virus that spreads through close contact.

32.     Since the inception of the pandemic, more than 400,000 positive cases of COVID-19 in Iowa have been recorded, tens of thousands of Iowans have been hospitalized, and more than 6,200 Iowans have died.[5] Cases peaked in Iowa in November 2020 when over 5,000 new cases were reported in a single day.[6] The number of deaths, hospitalizations, and infections began declining in early 2021 once vaccines became available. By early July 2021, the number of new COVID-19 cases reported per week in Iowa had decreased to fewer than 100 per day.

29.     The medical landscape drastically changed with the widespread transmission of the highly contagious and virulent Delta variant of COVID-19. The number of newly reported cases, hospitalizations, and deaths due to COVID-19 have all increased sharply.  Over the week of August 18 to 25, 2021, over 7,000 new cases were reported in Iowa.[7]   And Iowa is seeing the most hospitalizations since January 2021.[8]

30.     The newest data on the Delta variant are particularly troubling for students and school districts. For example, data shows children are infected with the Delta variant at much

---

[5] Tim Webber, *More than 400,000 Iowans have tested positive for COVID as state reports more than 1,000 new cases per day*, Des Moines Reg. (Aug. 25, 2021),
https://www.desmoinesregister.com/story/news/health/2021/08/25/iowa-covid-19-tracker-idph-tested-positive-new-cases-deaths-delta-variant-coronavirus-vaccine/8167310002/ (documenting positive cases and deaths);
*Hospitalization Analysis*, COVID-19 in Iowa (Sept. 2, 2021 update),
https://coronavirus.iowa.gov/pages/hospitalization-analysis (documenting hospitalizations).
[6] *Tracking Coronavirus in Iowa: Latest Map and Case Count*, N.Y. Times (Sept. 2, 2021 update),
https://www.nytimes.com/interactive/2021/us/iowa-covid-cases.html.
[7] Webber, *supra* note 5.
[8] *Hospitalization Analysis*, COVID-19 in Iowa (Sept. 2, 2021 update),
https://coronavirus.iowa.gov/pages/hospitalization-analysis.

higher rates than was true with previous virus strains, especially those who are unvaccinated (including those five to eleven years-old who are not yet eligible to receive a vaccine).[9]

31.     According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country."[10] At present "child cases have increased exponentially, with over a five-fold increase in the past month, rising from about 38,000 cases the week ending July 22nd to nearly 204,000 [the week of August 26]."[11]  As the American Academy of Pediatrics explained on August 5, "The higher proportion of cases in this population means this age group could be contributing in driving continued spread of COVID-19. Sadly, over 350 children have died of COVID since the start of [the] pandemic and millions of children have been negatively impacted by missed schooling, social isolation, and in too many cases, the death of parents and other caregivers."[12]

32.     Nationally, children represented 22.4% of all new COVID-19 cases – over one-fifth reported for the week that ended August 26, 2021.[13]

33.     The view close to home is particularly disturbing. Although Iowa stopped reporting the number of pediatric COVID-19 cases in July, the American Academy of Pediatrics has recorded 3,500 new cases among Iowa children since the end of July.[14]  Recent numbers show children accounting for over 22% of all Iowa COVID-19 cases.[15]

---

[9] *Children and COVID-19: State Data Report*, *supra* note 4.

[10] Letter from American Academy of Pediatrics to Acting FDA Commissioner Janet Woodcock (Aug. 5, 2021), https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[11] *Children and COVID-19: State Data Report*, *supra* note 4.

[12] Letter from American Academy of Pediatrics, *supra* note 10.

[13] *Children and COVID-19: State Data Report*, *supra* note 4.

[14] *Compare Children and COVID-19: State Data Report*, *supra* note 4 at 25 (reporting 48,618 cumulative child cases in Iowa) *with Children and COVID-19: State Data Report: Version: 7/29/21*, Am. Acad. Pediatrics (July 29, 2021 update), https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID-19%20State%20Data%20Report%207.29%20FINAL.pdf at 24 (reporting 45,121 cumulative child cases in Iowa).

[15] Tim Webber, *Children make up nearly a quarter of new COVID-19 cases in Iowa*, Des Moines Reg. (Sept. 1, 2021), https://www.desmoinesregister.com/story/news/health/2021/09/01/covid-19-iowa-testing-data-shows-kids-make-up-22-percent-cases/8167419002/.

COVID-19 POSES EXTREME RISKS TO STUDENTS WITH DISABILITIES

34.      School-aged children with certain disabilities, including a range of underlying medical conditions, are at increased risk of severe illness from COVID-19 as compared to other children. According to the CDC, "[c]urrent evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[16] And as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[17]

35.      These are not the only children at risk of grave harm. Individuals with intellectual disabilities are also at increased risk of contracting COVID-19 and of dying from COVID-19 infection.  A recent study published in the New England Journal of Medicine—working with a data set of 64,414,495 patients across more than 500 U.S. healthcare systems—concluded that "intellectual disability was the strongest independent risk factor for presenting with a COVID-19 diagnosis and the strongest independent risk factor other than age for COVID-19 mortality." The study found individuals with intellectual disabilities were more likely to contract COVID-19; if diagnosed with COVID-19, more likely to be admitted to the hospital; and more likely to die following admission.[18]

36.      The rates reflect the risks associated with intellectual disability itself, as well as comorbidities that in the study were overrepresented among those with intellectual disabilities. Notably, the odds of mortality among those with intellectual disabilities in the study were

---

[16] *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Aug. 20, 2021 update), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[17] *Id.*
[18] Jonathan Gleason et. al., *Commentary: The Devastating Impact of Covid-19 on Individuals with Intellectual Disabilities in the United States*, New Eng. J. Med. (Mar. 5, 2021), https://catalyst.nejm.org/doi/full/10.1056/CAT.21.0051.

"significantly higher than other conditions such as congestive heart failure, kidney disease, and lung disease."[19]

37.     Iowa school districts regularly serve students with these disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, and weakened immune systems are common. For the 2020-2021 school year, 12.9% (approximately 62,000 children) of Iowa's 485,851 enrolled students were students with disabilities.[20]

38.     The COVID-19 pandemic has dramatically affected students with disabilities, beginning with the closure of the public school system in the spring of 2020. Many students lost critical instruction and services.

39.     The American Academy of Pediatrics has advised that "[r]emote-learning highlighted inequities in education, was detrimental to the educational attainment of students of all ages and exacerbated the mental health crisis among children and adolescents."[21] Likewise, the CDC concluded that "[s]tudents benefit from in-person learning, and safely returning to in-person instruction in the fall 2021 is a priority."[22]

40.     The detrimental impact on education from the COVID-19 pandemic has been especially alarming for students with disabilities.   As detailed by the U.S. Department of Education, COVID-19 has "significantly disrupted the education and related aids and services needed to support their academic progress and prevent regression."[23] Students with disabilities

---

[19] *Id.*
[20] *State Summary: Reporting Year: 2020*, Iowa Dep't of Education (2020),
https://www.iaschoolperformance.gov/ECP/StateDistrictSchool/StateSummary?y=2020.
[21] *COVID-19 Guidance for Safe Schools*, Am. Acad. Pediatrics (July 18, 2021 update),
https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/.
[22] *Guidance for COVID-19 Prevention in K-12 Schools*, Ctrs. for Disease Control & Prevention (Aug. 5, 2021),
https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.
[23] *Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students,* U.S. Dep't of Education,
(Jun. 9, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-covid19.pdf at iv.

have not only lost critical in-class instruction, but they have also lost services such as speech and occupational therapy as well as behavioral support and counseling. Many parents have reported regression. And there is evidence that the disruption in services and instruction "may be exacerbating longstanding disability-based disparities in academic achievement."

41.    After signing the bill in January 2021 requiring all school districts in the state to offer 100%, full time in-person instruction, Governor Reynolds said, "the biggest risk to our students is their continued absence from school . . ."[24]  Director Lebo echoed this statement, remarking that "students engaged in remote learning are falling behind academically."[25]

42.    The CDC unambiguously recommends "universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status."[26] In announcing this recommendation, the CDC noted that "[w]hen teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves" and that "protection against exposure remains essential in school settings."[27]  In making this recommendation, the CDC has noted "At least ten studies have confirmed the benefit of universal masking in community level analyses . . . Each analysis demonstrated that, following directives from organizational and political leadership for universal masking, new infections fell significantly."[28]

43.    The American Academy of Pediatrics and the American Medical Association

---

[24] Ian Richardson, *Governor Kim Reynolds signs law requiring Iowa schools offer in person classes*, Des Moines Reg. (Jan. 29, 2021), https://www.desmoinesregister.com/story/news/politics/2021/01/29/gov-kim-reynolds-signs-law-requiring-iowa-schools-offer-in-person-classes/4307252001/.
[25] *Iowa Gov. Reynolds pushing for in-person learning*, Associated Press (Jan. 4, 2021), https://kchanews.com/2021/01/04/iowa-gov-reynolds-pushing-for-in-person-learning/.
[26] *Guidance for COVID-19 Prevention in K-12 Schools*, *supra* note 23.
[27] *Id.*
[28] *Use of Cloth Masks to Control the Spread of SARS-CoV-2*, Ctrs. for Disease Control & Prevention (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

similarly recommend that schools adhere to universal masking policies.[29]

44.     The Iowa Medical Society and the Iowa Chapter of the American Academy of Pediatrics have similarly recommended universal indoor masking by all students (age two and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status.[30]

45.     The County Health Departments for Polk, Linn, and Scott Counties (the three most populous Iowa Counties) all recommend universal mask-wearing in indoor settings, including schools.[31]

46.     The U.S. Department of Education's roadmap for returning students to school safely—with its first priority being the health and safety of students, staff and educators—fully adopted the CDC recommendation.[32]

47.     Research supports the effectiveness of universal masking in schools. The ABC Science Collaborative, led by top physicians on the staff of Duke University, studied data from 100 school districts in North Carolina and found that "[w]hen masking is in place, COVID-19 transmission in schools is low."[33]

48.     On August 30, 2021, the U.S. Department of Education announced an investigation

---

[29] *COVID-19 Guidance for Safe Schools*, *supra* note 22; Gerald Harmon, *AMA statement on CDC's updated mask guidance to combat COVID-19 spread*, Am. Medical Ass'n (July 27, 2021), https://www.ama-assn.org/press-center/ama-statements/ama-statement-cdc-s-updated-mask-guidance-combat-covid-19-spread.
[30] Sydney Maras, *IMS & IA AAP: Back to School Face Mask Usage Statement*, Iowa Medical Society (Aug. 19, 2021), https://www.iowamedical.org/news/10941537.
[31] *Quad Cities COVID-19 Coalition: August 19 Press Release*, Scott Cnty. (Aug. 19, 2021), https://www.scottcountyiowa.gov/sites/default/files/attachments/posts/20210819_COVID-19_Update_on_Public_Health_Response.pdf (Scott County); *COVID-19 cases and hospitalizations are surging: It is time for our community to step up and do the right thing*, Polk Cnty. (Aug. 24, 2021), https://www.polkcountyiowa.gov/health-department/news-and-press-releases/covid-19-cases-and-hospitalizations-are-surging-it-is-time-for-our-community-to-step-up-and-do-the-right-thing/ (Polk County); Grace King, *Masks should be mandated to be worn in schools, Linn County board of health says*, Gazette (Aug. 30, 2021), https://www.thegazette.com/k/masks-should-be-mandated-to-be-worn-in-schools-linn-county-board-of-health-says/ (Linn Counties).
[32] *Return to School Roadmap*, U.S. Dep't of Education (Aug. 2, 2021), https://sites.ed.gov/roadmap/parent-checklist/.
[33] *The ABCs of North Carolina's Plan A*, ABC Science Collaborative (July 1, 2021), https://abcsciencecollaborative.org/the-abcs-of-north-carolinas-plan-a/.

into whether in light of HF 847 "students with disabilities who are at heightened risk for severe illness from COVID-19 are prevented from safely returning to in-person education, in violation of Federal law."[34]

<u>THE RECENT RESPONSE OF IOWA OFFICIALS TO COVID-19</u>

44.     In spite of national and local guidance urging precaution, HF 847 prohibits local school districts from even considering whether to implement the most basic and effective COVID-19 prevention strategy in school settings.

45.     Despite increased numbers of cases and deaths being reported in the state of Iowa and despite guidance from the U.S. Department of Education, the CDC, the American Academy of Pediatrics, the American Medical Association, the Iowa Medical Association, and public health experts, Governor Reynolds and Director Lebo have remained steadfast in their position that school districts should not impose mask mandates.

46.     At the time Governor Reynolds signed the bill containing HF 847, Iowa was reporting only approximately 150 new COVID-19 cases per day. Since that time, COVID-19 infection rates, daily cases, and COVID-19 related hospitalizations have ballooned in Iowa with the emergence of the Delta variant.

47.     As compared to when HF 847 was passed, the number of reported new cases is seven times higher; hospitalizations are at the highest point since January of 2021; and COVID-19-related deaths are rapidly climbing.[35]  As of August 28 in Iowa, across the few days that schools have reopened, school districts had reported 464 COVID-19 cases in schools.[36] As of September

---

[34] Letter from U.S. Dep't of Education Office of Civil Rights to Ann Lebo (Aug. 30, 2021), https://www2.ed.gov/about/offices/list/ocr/correspondence/other/20210830-iowa-doe.pdf.
[35] Nick Coltrain, *Iowa COVID hospitalizations highest since January, 25% increase since last week to nearly 500*, Des Moines Reg. (Aug. 26, 2021), https://www.desmoinesregister.com/story/news/health/2021/08/26/iowa-covid-19-hospitalization-rate-positive-cases-surges-delta-variant/5541193001/.
[36] Compilation from available school district COVID-19 dashboards.

2, there were fewer ICU beds available in Iowa than at any point during the 2020-2021 winter COVID-19 surge.[37]

48.     Notwithstanding the reemergence of COVID-19, Governor Reynolds and Director Lebo have doubled down on the mask mandate prohibition.  On July 27, 2021, Governor Reynolds issued a press release stating that she was "proud that we recently put new laws in place that will protect Iowans against unnecessary government mandates in our schools."[38]  On August 12, in defending the mask mandate, Governor Reynolds said that children who felt unsafe "still have options to do some online learning."[39]   On August 19, Governor Reynolds said that she was going to "hold strong . . . if we've got to go to court, we will do it" and, ignoring the numerous public studies the CDC cited in support of its mask mandate recommendation challenged, "Where's the data that the CDC is using to justify mask mandates?"[40]  On August 30, after the U.S. Department of Education announced an investigation into Iowa for potential civil rights violations given HF 847, Governor Reynolds issued a press release proclaiming, "In Iowa, we will continue to support individual liberty over government mandates."[41]   On September 2, Governor Reynolds said, "it doesn't really matter" whether the Iowa Department of Public Health recommended students wear

---

[37] *Hospital Data Summary, Regional Medical Coordination Center Dashboard*, Iowa Dep't of Pub. Health, https://coronavirus.iowa.gov/pages/rmcc-data.

[38] *Reynolds Statement on New COVID-19 Guidance from the Biden Administration*, Office of the Governor of Iowa (July 27, 2021), https://governor.iowa.gov/press-release/reynolds-statement-on-new-covid-19-guidance-from-the-biden-administration%C2%A0%C2%A0.

[39] Beth Malicki, *Gov. Reynolds on decision to prohibit school mask policies*, KCRG (Aug. 12, 2021), https://www.kcrg.com/2021/08/12/gov-reynolds-decision-prohibit-school-mask-policies/.

[40] Rod Boshart, *Iowa Gov. Kim Reynolds vows to 'hold strong' against mask mandates in schools*, Gazette (Aug. 19, 2021), https://www.thegazette.com/state-government/iowa-gov-kim-reynolds-vows-to-hold-strong-against-mask-mandates-in-schools/; Ian Richardson, *As Gov. Kim Reynolds shares uncertainty on masks, Iowa health experts say their benefit is clear*, Des Moines Reg. (Aug. 27, 2021), https://www.desmoinesregister.com/story/news/politics/2021/08/26/iowa-medical-experts-say-masks-work-covid-governor-kim-reynolds-wavers-delta-variant-transmission/8214830002/.

[41] *Gov. Reynolds issues a statement in response to the Biden Administration's latest letter*, Office of the Governor of Iowa (Aug. 30, 2021), https://governor.iowa.gov/press-release/%C2%A0gov-reynolds-issues-a-statement-in-response-to-the-biden-administration%E2%80%99s-latest.

masks in schools, because "it's the law at this point."[42]

49.     Director Lebo has not commented publicly on HF 847, including refusing to comment at State Board of Education meetings.[43]   But her Department has warned that "school districts that choose not to follow the ban could receive citations" and "be referred to the State Board of Education"; under state law, the Board of Education has the power to assume oversight over school districts, and districts can lose accreditation.[44]

<u>COVID-19 AS SCHOOLS REOPEN</u>

50.     Enforcement of HF 847 by state officials places all children and staff at risk. Children under twelve are ineligible to be vaccinated, and many live with disabilities that place them at a higher risk for severe illnesses or death due to COVID-19. While children twelve and older can be vaccinated, many are not, and those who are vaccinated may still spread COVID-19, including to younger children and others who either cannot be or are not vaccinated.

51.     Since schools reopened on August 25, 2021, the Des Moines Public School system has tracked 101 new cases among students, and forty-eight among staff.[45]   The Iowa City Community School District has similarly tracked seventy-one new cases among students, and

---

[42] Ian Richardson & Stephen Gruber-Miller, *Gov. Kim Reynolds declines to recommend masks for students: 'It doesn't really matter because it's a law'*, Des Moines Reg. (Sept. 2, 2021), https://www.desmoinesregister.com/story/news/politics/2021/09/02/kim-reynolds-declines-recommend-masks-iowa-students-citing-ban-school-mandates/5696537001/.

[43] *See, e.g.*, Katie Akin, *Parents plead with State Board of Education for school mask requirements,* Iowa Capital Dispatch (Aug. 5, 2021), https://iowacapitaldispatch.com/2021/08/05/parents-plead-with-state-board-of-education-for-school-mask-requirements/.

[44] Ian Richardson, *Can Iowa Schools Defy the State's COVID Mask Ban Like Florida and Texas Schools Are?* Des Moines Reg. (Aug. 16, 2021), https://www.desmoinesregister.com/story/news/politics/2021/08/16/what-backlash-could-schools-face-if-they-defy-iowas-mask-mandate-ban-kim-reynolds-cdc-covid/5512069001/.

[45] *Des Moines Public Schools COVID-19 Dashboard*, Des Moines Public Schools (Sept. 2, 2021 update), http://www.dmschools.org/covid19dashboard/.

twelve cases among staff.[46]  And Cedar Rapid Schools have reported twenty students have tested positive along with six school staff.[47]

52.     The AHSTW Community School District, which is located in southwestern Iowa, had to cancel its open house and delay the start of school until at least August 30, 2021, due to an outbreak among school staff that led to "multiple positives and many more exposures."[48]

53.     Numerous school districts have indicated that they would adopt universal mask policies if HF 847 did not prevent them from doing so.  For example, Des Moines District Superintendent Tom Ahart said that he would enforce a mask mandate if the school board approved one because "the right thing to do here seems pretty evident if the priority is protecting health and safety."[49] The Iowa City School Board tasked its attorney with investigating a legal challenge to HF 847, who determined that the school district officials "just don't have the tools we need right now other than simply defying the law."[50] Superintendent Matt Degner said that while the school would continue to support CDC recommendations for universal indoor masking regardless of vaccination status, "per Iowa law . . . we cannot enforce that face coverings are worn in our buildings or on school grounds at this time."[51]  In Cedar Rapids, the Linn County Board of Health

---

[46] *COVID-19 Dashboard*, Iowa City Community School District (Sept. 2, 2021 update), https://www.iowacityschools.org/Page/18796.
[47] Grace King, *Mask should be mandated to be worn in schools, Linn County board of health says*, Gazette (Aug. 30, 2021), https://www.thegazette.com/k/masks-should-be-mandated-to-be-worn-in-schools-linn-county-board-of-health-says/.
[48] *SW Iowa school district delays start of school due to COVID outbreak among staff members*, KETV (Aug. 24, 2021), https://www.kcrg.com/2021/08/24/sw-iowa-school-district-delays-starts-school-due-covid-outbreak-among-staff-members/.
[49] Sarah Kay LeBlanc, *Indianola officials join West Des Moines officials in defying federal order requiring masks on school buses*, Des Moines Reg. (Aug. 18, 2021), https://www.desmoinesregister.com/story/news/education/2021/08/18/west-des-moines-schools-snubs-federal-mask-mandate-buses-transportation-students-covid-delta-variant/8187705002/.
[50] Cleo Krejci, *Iowa City schools' lawyer explains why district hasn't challenged state on mask mandate ban,* Iowa City Press-Citizen (Aug. 25, 2021), https://www.press-citizen.com/story/news/education/k-12/2021/08/25/iowa-city-schools-district-school-board-considers-mask-mandate-covid-19-challenge-state-law/5580517001/.
[51] Cleo Krejci, *Iowa City school district will not enforce city government's mask mandate*, Iowa City Press-Citizen (Aug. 20, 2021), https://www.press-citizen.com/story/news/education/k-12/2021/08/20/iccsd-not-enforce-iowa-city-mask-mandate-when-school-starts/8209073002/.

is encouraging schools to require all children, teachers and staff to wear masks while in school buildings despite the ban on mask mandates.[52]

54.     Under the ADA and Rehabilitation Act, public-school districts must provide all children with disabilities an equal opportunity to benefit from a public education, which includes receiving their education in an integrated environment, without needless segregation.   The Governor's statement that that children who felt unsafe "still have options to do some online learning" is a violation of the integration mandate for students with disabilities.[53]   Children with disabilities are entitled to learn and interact with all other children, to receive the same education as all other children, and to not have to take unnecessary risks to their health in the process.

55.     The COVID-19 pandemic has not absolved Iowa schools from their obligations under the ADA or Rehabilitation Act.  Likewise, Iowa officials do not have the authority to order school districts to sidestep the requirements of federal law.

56.     By forbidding local school districts and public health authorities from having the ability to respond to the ongoing COVID-19 crisis and to require masks for their students and staff, HF 847 has made it impossible for school districts to provide a safe learning environment for students with disabilities at risk of severe illness from COVID-19. Students with disabilities who are unable to safely return to brick-and-mortar schools because of continued health concerns are being excluded from the public school system in violation of the ADA and Rehabilitation Act, and students with disabilities that put them at risk of severe illness from  COVID who are coming to school are forced to take greater, and unnecessary, risks to get their education, subjecting them to discrimination in violation of federal law.

---

[52] Grace King, *Masks should be mandated to be worn in schools, Linn County board of health says*, Gazette (Aug. 30, 2021), https://www.thegazette.com/k/masks-should-be-mandated-to-be-worn-in-schools-linn-county-board-of-health-says/.
[53] Beth Malicki, *supra* note 4.

57.     There are no viable alternatives for students with disabilities who cannot safely return to school in-person due to HF 847.  Some schools are not offering virtual learning; in other schools, virtual learning programs do not offer live instruction; and for most children with disabilities, virtual learning, even if available, is not a viable or adequate substitute for in person learning.

58.     Under state law, school attendance is compulsory for children of certain ages.  *See generally* Iowa Code § 299.1. The Defendant State Officials' actions have put parents in the impossible situation of having to choose between their child's heath and their child's education. Thus, the Defendants' actions will have the perverse effect of either placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system.

59.     With HF 847, the Defendant State Officials are violating Title II of the ADA, Section 504 of the Rehabilitation Act, and the Supremacy Clause of the United States Constitution. By refusing to allow basic and effective protocols to protect students with disabilities at risk of severe illness from COVID-19 infections, Iowa state officials have effectively excluded these students from participation in the public education system in violation of 42 U.S.C. § 12132, 29 U.S.C. § 794(a), 28 C.F.R. § 35.130, and 34 C.F.R. § 104.4,  have subjected these students to discrimination on the basis of their disabilities in violation of 28 C.F.R. § 35.130(b)(1)(i-iv, vii), 34 C.F.R. § 104.4(b) (1)(i-iv, vii), and have utilized methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities in violation of 28 C.F.R. § 35.130(b)(3), 34 C.F.R. § 104.4(b)(4).  Furthermore, complying with HF 847 precludes school districts from making the reasonable modification of requiring universal

masking for their students with disabilities, as required by 28 C.F.R. § 35.130(b)(7).

## HARM TO THE NAMED PLAINTIFFS

60.     Plaintiffs have children with disabilities at heightened risk for severe illness or death from COVID-19 or, in the case of The Arc, members with children facing such risks.  HF 847 removes from local school districts the option to even consider the reasonable modification of universal masking to meet the specific needs of their students.  By this action, Plaintiffs ask this Court to enjoin HF 847 so that school districts can comply with their obligations pursuant to the ADA and 504 of the Rehabilitation Act and needless suffering can be averted.

61.     The Defendant State Officials have directly harmed and continue to harm each of the named Plaintiffs whose children now have to risk their health and safety if they are to obtain desperately needed in-person instruction and services.

62.     <u>Heather Lynn Preston and M.P. and S.P. in the Des Moines Public School District</u>

    a.   M.P is eleven years old and has been diagnosed with Heterotaxy Syndrome.

    b.   Heterotaxy is an extremely rare condition where many organs in the body can be formed abnormally, in the wrong position, or even missing.

    c.   M.P. has several medical complications from this Heterotaxy diagnosis, including significant heart defects (Right Atrial Isomerism, Twin AV node Tachycardia, and Atrioventricular Septal Defect), chronic lung conditions, and an absent spleen.

    d.   S.P is eleven years old and has been diagnosed with hypertension due to small kidneys and seizures, along with several other emotional and mental disabilities.

    e.   Because of their age, M.P. and S.P. cannot be vaccinated.

    f.   M.P. attends Meredith Middle School in the Des Moines Public Schools and has a 504 plan.

g.   Children with heart defects, chronic lung conditions, and Heterotaxy, like M.P., are at a higher risk of severe illness should they contract COVID-19.

h.   S.P. attends Meredith Middle School in the Des Moines Public Schools and has a 504 plan.

i.   Children with hypertension and seizures, like S.P., are at a higher risk of severe illness should they contract COVID-19.

j.   Universal masking in the school would reduce the risk to M.P. and S.P. considerably and allow them to safely attend classes in person.

k.   Because the Defendants are preventing Des Moines public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant— Defendants are needlessly and illegally causing M.P. and S.P. to risk their health in order to get their education.

63.   <u>Lisa Hardisty Sithonnorath and A.S in the Des Moines Public School District</u>

a.   A.S. is five years old and has been diagnosed with Down syndrome and Hypothyroidism, and she has a previous history of viral induced asthma.

b.   Because of age, A.S. cannot be vaccinated.

c.   A.S. attends Jefferson Elementary School in the Des Moines Public Schools.

d.   Children with Down syndrome and asthma, like A.S., are at a higher risk of severe illness should they contract COVID-19.

e.   Universal masking in the school would reduce the risk to A.S. considerably and allow A.S. to safely attend classes in person.

f. Because the Defendants are preventing Des Moines public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing A.S. to risk her health in order to get her education.

64. <u>Charmaine Alexander and C.B. in the Johnston Community School District</u>

   a. C.B. is eleven years old and has been diagnosed with moderate to severe asthma

   b. Because of age, C.B. cannot be vaccinated.

   c. C.B. attends at Summit Middle School in the Johnston Community School District.

   d. C.B. has a 504 plan.

   e. Children with asthma, like C.B., are at a higher risk of severe illness should they contract COVID-19.

   f. Universal masking in the school would reduce C.B.'s risk considerably and allow C.B. to safely attend classes in person.

   g. Because the Defendants are preventing Johnston Community School District  from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing C.B.. to risk C.B.'s health in order to get an education.

65. <u>Lidija Geest and K.G. in the Davenport Community School District</u>

   a. K.G. is six years old and has been diagnosed with moderate to severe asthma.

   b. Because of age, K.G. cannot be vaccinated.

   c. K.G. attends Adams Elementary in the Davenport Community School District.

    d.  Children with moderate to severe asthma, like K.G., are at a higher risk of severe illness should they contract COVID-19.

    e.  Universal masking in the school would reduce K.G.'s risk considerably and allow K.G. to safely attend classes in person.

    f.  Because the Defendants are preventing Davenport Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing K.G. to risk K.G.'s health in order to get an education.

66.  <u>Erin Vercande and S.V. in the Decorah Community School District</u>

    a.  S.V. is ten years old and has a brain injury, cerebral palsy, and a history of strokes and epilepsy.

    b.  Because of age, S.V. cannot be vaccinated.

    c.  S.V. should be enrolled in Decorah Middle School in the Decorah Community School District.

    d.  S.V. has an Individual Health Plan.

    e.  Children like S.V. with neuromuscular diseases and strokes are at a higher risk of severe illness should they contract COVID-19.

    f.  S.V.'s treating neurologist has indicated that if he contacts COVID-19, he could be at risk for more severe break-through seizures and further brain damage.

    g.  His doctors have stated that for S.V. to return to school safely, everyone around him should observe strict COVID-19 safety protocols and wear a mask indoors.

h. S.V. is currently not attending school because sending him in person in an unmasked environment would be a very high risk given his medical conditions. It would also go against the recommendations of his doctors and the CDC.

i. Universal masking in the school would reduce S.V.'s risk considerably and allow S.V. to safely attend classes in person.

j. The Defendants' actions have forced S.V.'s parents to decide whether to return S.V. to school and risk his health or to leave the public school system.

k. Erin Vercande is a member of Arc of Iowa

67. <u>Jonathan Craig and E.C. and J.C. are in the Waterloo Community School District</u>

a. E.C. is five years old and has been diagnosed with Down syndrome, chronic seizures, and chronic respiratory problems.

b. J.C. is 11 years old and has been diagnosed with sickle cell anemia and functional asplenia.

c. Because of their age, E.C. and J.C. cannot be vaccinated.

d. E.C. and J.C. attend Highland Elementary School in the Waterloo Public Schools.

e. E.C. and J.C. have a 504 plan.

f. Children with Down syndrome and chronic respiratory problems, like E.C., and sickle cell anemia and functional asplenia, like J.C., are at a higher risk of severe illness should they contract COVID-19.

g. E.C.'s pediatrician has indicated that she is a medically complex child with increased risk for severe disease and respiratory compromise if she were to contract Covid-19.

h.  J.C.'s pediatrician has indicated due to his sickle cell anemia and functional asplenia he is considered to be an immune suppressed person.

i.  E.C. and J.C.'s pediatrician has stated that both children should continue distance learning at this time due to the risks involved in returning to school in person if there is not universal masking.

j.  E.C. and J.C. are not currently in school in person because sending them in person in an unmasked environment would be a very high risk given their medical conditions.  It would also go against the recommendations of their doctors and the CDC.

k.  The remote learning option does not provide the necessary supports, services, and accommodations.  E.C. has been issued a school computer, she has been unable do to online learning due to the extent of her disabilities.

l.  Universal masking in their school would reduce E.C. and J.C.'s risk considerably and allow them to safely attend classes in person.

m.  The Defendants' actions have forced E.C. and J.C.'s parents to decide between their children's education and their health.

68.  <u>Amanda Devereaux and P.D. in the Ankeny Community School District</u>

a.  P.D. is five years old and has been diagnosed with symptomatic congenital cytomegalovyria infection, polymicrogyria, epilepsy, and other disabilities.  P.D. was born with a brain malformation, which has caused intellectual and developmental delays to the extent that she operates at a one-year-old level.

b.  Because of age, P.D. cannot be vaccinated.

c.  P.D. attends Heritage Elementary School in the Ankeny Community School

District.

d.  Children like P.D. with polymicrogyria and symptomatic congenital cytomegalovirus infection are at a higher risk of severe illness should they contract COVID-19.

e.  P.D.'s infectious disease pediatrician has indicated that she is at higher risk for serious and fatal disease if she were to contract COVID-19.

f.  P.D.'s infectious disease pediatrician has stated P.D. should not be forced to stay home and be deprived of learning.  She should be able to attend school in person where all students and teachers are wearing masks.  It is not safe for her to attend school in person unless all teachers and students are wearing masks.

g.  P.D. is currently only attending school in person part-time (2/1/2 hours a day for 4 days a week) for her special education services, during which the district agreed that persons at the school would wear masks and practice social distancing.  But the district has refused to make this same accommodation for the bulk of P.D.'s instruction. Attending school full-time in person without universal masking would be a very high risk given P.D.'s medical conditions.

h.  Universal masking at the school would reduce P.D.'s risk considerably and allow P.D. to safely attend classes in person.

n.  Because the Defendants are preventing the Ankeny Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing P.D. to risk P.D.'s health in order to get an education.

a.   Amanda Devereaux is a member of Arc of Iowa.

69.   <u>Carrisa Froyum Roise and H.J.F.R. in the Denver Community School District</u>

a.   H.J.F.R. is ten years old and has been diagnosed with congenital central hypoventilation syndrome, which causes problems with breathing and requires him to use a ventilator when sleeping and sometimes during the day.

b.   Because of age, H.J.F.R. cannot be vaccinated.

c.   H.J.F.R. attends Denver Elementary School in the Denver Community School District.

d.   H.J.F.R. has a one-on-one nurse.

e.   Children like H.J.F.R. with congenital central hypoventilation syndrome are at a higher risk of severe illness should they contract COVID-19.

f.   Universal masking in the school would reduce H.J.F.R.'s risk considerably and allow H.J.F.R. to safely attend classes in person.

g.   Because the Defendants are preventing the Denver Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing H.J.F.R. to risk their health in order to get an education.

h.   Carrissa Froyum Roise is a member of Arc of Iowa.

70.   <u>Melissa Hadden and V.M.H. in the Council Bluffs Community School District</u>

a.   V.M.H. is three years old and has been diagnosed with heart disease, periventricular leukomalacia, autism, cerebral palsy, cortical digital impairments, and optic nerve hypoplasia.

b. Because of age, V.M.H. cannot be vaccinated.

c. V.M.H. attends Longfellow Elementary School in the Council Bluffs Community School District.

d. Children like V.M.H. with heart disease, periventricular leukomalacia, autism, and cerebral palsy are at a higher risk of severe illness should they contract COVID-19.

e. Universal masking in the school would reduce V.M.H.'s risk considerably and allow V.M.H. to safely attend classes in person.

f. Because the Defendants are preventing the Council Bluffs Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing V.M.H. to risk their health in order to get an education.

71. <u>Michelle Croft and J.J.B. in the Iowa City Community School District</u>

a. J.J.B. is nine years old and has been diagnosed with asthma, among other disabilities.

b. Because of his age, J.J.B. cannot be vaccinated.

c. J.J.B. attends Lemme Elementary School in the Iowa City Community School District.

d. J.J.B. has a 504 plan.

e. Children like J.J.B. with asthma are at a higher risk of severe illness should they contract COVID-19.

f. J.J.B.'s pediatrician has indicated that his asthma could be triggered if he were to contract COVID-19.

29

g.  Universal masking in the school would reduce J.J.B.'s risk considerably and allow J.J.B to safely attend classes in person.

h.   Because the Defendants are preventing the Iowa City Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing J.J.B. to risk their health in order to get an education.

i.  Michelle Croft is a member of Arc of Iowa.

72.  <u>Rebekah Stewart and E.M.S. in the Linn Mar Community School District</u>

a.  E.M.S. is ten years old and has been diagnosed with Williams Syndrome, which is a genetic condition that results in slow growth, heart problems, gastrointestinal issues, and learning disabilities.

b.  Because of her age, E.M.S. cannot be vaccinated.

c.  E.M.S. attends elementary school in the Linn Mar Community School District.

d.  Children like E.M.S. with Williams Syndrome are at a higher risk of severe illness should they contract COVID-19.

e.  Universal masking in the school would reduce E.M.S's risk considerably and allow E.M.S. to safely attend classes in person.

f.  Because the Defendants are preventing the Linn Mar Community School District from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—Defendants are needlessly and illegally causing E.M.S. to risk their health in order to get an education.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF TITLE II OF THE
### AMERICANS WITH DISABILITIES ACT

76.    Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

77.    The Defendants are public entities and are therefore subject to Title II of the ADA.

78.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1), (2).

79.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

80.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

81.    The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

82.    As a result of the Defendant State Official's implementation and enforcement of HF 847, which has denied these children the protection that they need to attend school in a safe environment, the Defendants have violated the regulations and provisions of the ADA as follows:

a.   The Defendants are excluding and/or causing other Defendants to exclude Plaintiffs from their public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130);

b.   The Defendants are failing and/or causing other Defendants to fail to make a reasonable modification of requiring universal masking in school in order to give students with disabilities equal access to their education (28 C.F.R. § 35.130(b)(7);

c.   The Defendants are failing and/or causing other Defendants to fail to make services, programs, and activities "readily accessible" to students with disabilities (28 C.F.R. § 35.150);

d.   The Defendants are administering a policy that (1) has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, or (2) perpetuates the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130(b)(3)(i), (iii).

e.   The Defendants are failing to permit a public entity to administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d).  Relegating students into a separate classroom or remote learning would violate this integration mandate.

83.    The Defendant State Officials do not have the authority to circumvent the ADA and

protections for students with disabilities through state legislation.

84.     Excluding children from the public-school classroom because of a disability is exactly the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

85.     As public entities and instrumentalities of the state, the Defendant School Districts are prohibited from providing "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. 35.130(b)(1)(iii).

**COUNT TWO**

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

86.     Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

87.     Plaintiffs are children with disabilities that substantially limit one or more major life activities and therefore are considered persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(20).

88.     The Plaintiffs otherwise qualify under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education and for the Defendants' services at all times material hereto.

89.     The Defendants are recipients of federal financial assistance.

90.     The Defendants are obligated to provide a free appropriate public education to each qualified individual with a disability who is in the recipient's jurisdiction. 34 C.F.R. § 104.33.

91.     The Defendants' policies, practices, and procedures—particularly the actions and

omissions described herein—violate the students' rights under Section 504 of the Rehabilitation Act by discriminating on the basis of disability.

92.     As a result of the implementation and enforcement of HF 847, Defendants have violated Section 504 of the Rehabilitation Act and its implementing regulations and/or caused Plaintiffs' School Districts to violate the regulations and provisions as follows:

> a.     The Defendants are excluding, and/or causing Plaintiffs' School Districts to exclude, Plaintiffs from the participation in public education in violation of 29 U.S.C. § 794(a); and 34 C.F.R. §§ 104.4(a),(b)(1)(i));
>
> b.     The Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability in violation of 29 U.S.C. § 794(a) and 34 C.F.R. §104.4(b)(1)(i);
>
> c.     The Defendants are administering a policy that has the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 34 C.F.R. § 104.4 (b)(4).
>
> d.     The Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  34 C.F.R. § 104.4(b)(2)

93.     The Defendants lack authority to enforce or implement laws that violate Section 504. Even in a pandemic, the Defendants are required to adhere to the robust protections contained in the Rehabilitation Act.

94.     HF 847, which functionally excludes many children with disabilities from the public classroom, cannot lawfully be enforced. Excluding children from the public-school classroom because of a disability is exactly the type of discrimination and segregation Section 504

of the Rehabilitation Act aims to prevent and specifically prohibit.

## **COUNT THREE**

**FEDERAL PREEMPTION UNDER THE AMERICAN RESCUE PLAN ACT OF 2021**

95.    Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

96.    Federal law is the "supreme Law of the Land," and must prevail over any contrary provision of state law. U.S. Const. art. VI, cl. 2. Under the doctrine of preemption, a state law is preempted by federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)).

97.    The United States Congress enacted the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat 4 (2021) ("ARPA") as a comprehensive legislative response to the COVID-19 pandemic. According to House Budget Committee Chairman John Yarmuth, the Act was enacted to "provide economic relief to nearly every American family and hard-working individual, get vaccines into the arms of millions of Americans, *and get our schools open safely*."[54]

98.    To that end, ARPA allocated huge sums of money to state school districts. Iowa school districts were allocated over $770 million in Elementary and Secondary School Emergency Relief (ESSER) to prepare for a safe return to in-person schooling. Section 2001(e)(2)(Q) of ARPA explicitly gives local school districts the authority to use these ARPA ESSER funds for "developing strategies and implementing public health protocols including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention for

---

[54] *House sends Yarmuth-Led American Rescue Plan Act to President Biden's Desk*, House Committee on the Budget (Mar. 10, 2021), https://budget.house.gov/news/press-releases/house-sends-yarmuth-led-american-rescue-plan-act-president-biden-s-desk..

the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff." *Id.* § 2001(e)(2)(Q). As discussed above, the CDC's guidance specifically recommends universal indoor masking in all K-12 schools.

99. The interim guidance for ESSER adopted by the U.S. Department of Education ("USDOE") sheds further light on the intent and purpose of ARPA. In directing school districts how their ARPA funds must be used, USDOE advised that districts must explain: "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC", specifically including "universal and correct wearing of masks." *See* Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21201 (April 22, 2021).

100. Although USDOE did not mandate that local school districts adopt CDC guidance, the department's interim guidance requires each district "describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance," which include both "[u]niversal and correct wearing of masks[.]" *Id.* The interim guidance further directs local school districts to pay special attention to "those students disproportionately impacted by the COVID-19 pandemic, including . . . children with disabilities." *Id.*

101. As USDOE noted in its August 18, 2021 letter to the Defendants Reynolds and Lebo, HF 847 is squarely at odds with the purpose of ARPA and stands as an obstacle to the accomplishment and execution of ARPA's full purposes and objectives.[55] Rather than affording discretion to local school boards to develop and implement safety protocols as envisioned by ARPA, HF 847 *prohibits* local school districts, including Defendant School Boards, from

---

[55] Letter from Miguel A. Cardona, Sec. of Educ., to Kim Reynolds, Governor & Ann Lebo, Education Director (Aug. 18, 2021), https://oese.ed.gov/offices/american-rescue-plan/american-rescue-plan-elementary-and-secondary-school-emergency-relief/21-006972-letter-from-secretary-cardona-iowa-final-signed/

implementing precisely the type of safe return-to-school policies ARPA expects. As explained by Secretary Cardona, HF 847 "restrict[s] the development of local health and safety policies and is at odds with the school district planning process embodied in the U.S. Department of Education's (Department's) interim final requirements."

102.     In the face of its direct conflict with federal law, HF 847 must fall. It is preempted by the American Rescue Plan Act.

## PRAYER FOR RELIEF

WHEREFORE, the PLAINTIFFS respectfully request this Court to:

1.  Declare that HF 847, and the Defendants' implementation thereof, violates the ADA;

2.  Declare that HF 847, and the Defendants' implementation thereof, subject the Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act;

3.  Declare that HF 847, and the Defendants' implementation thereof, is preempted by the American Rescue Plan Act;

4.  Issue a temporary restraining order enjoining the Defendants from enforcing HF 847 and thereby violating the ADA, Section 504 of the Rehabilitation Act, and ARPA;

5.  Preliminarily and permanently enjoin the Defendants from enforcing HF 847, and thereby violating the ADA, Section 504 of the Rehabilitation Act, and ARPA;

6.  Award Plaintiffs' attorneys' fees, costs and expenses incurred in this matter; and

7.  Provide any such further relief as the Court deems just and equitable.


Date: September 3, 2021


(SIGNATURE BLOCKS ON FOLLOWING PAGE)

**AMERICAN CIVIL LIBERTIES UNION OF IOWA**

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
**ACLU of Iowa Foundation Inc.**
505 Fifth Avenue, Suite 901
Des Moines, IA 50309-2316
Telephone: 515-243-3988
Facsimile: 515-243-8506
rita.bettis@aclu-ia.org

/s/ Shefali Aurora
Shefali Aurora, AT0012874
**ACLU of Iowa Foundation Inc.**
505 Fifth Avenue, Suite 901
Des Moines, IA 50309-2316
Telephone: 515-243-3988
Facsimile: 515-243-8506
shefali.aurora@aclu-ia.org

/s/Leah Patton
Leah Patton, AT0006022
**ACLU of Iowa Foundation Inc.**
505 Fifth Avenue, Suite 901
Des Moines, IA 50309-2316
Telephone: 515-243-3988
Facsimile: 515-243-8506
leah.patton@aclu-ia.org


**DISABILITY RIGHTS IOWA**

Cynthia A. Miller (AT0005382)
666 Walnut Street, Suite 1440
Des Moines, IA 50309
T: (515) 278-2502
E: cmiller@driowa.org

Catherine Johnson*  (AT0004006)
666 Walnut Street, Suite 1440
Des Moines, IA 50309
T: (515) 278-2502
E: cjohnson@driowa.org


**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Louise Melling*
125 Broad St.
New York, NY 10004
T: (212) 549-2637
E: lmelling@aclu.org

Susan Mizner*
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0781
E: smizner@aclu.org


**ARNOLD & PORTER KAYE SCHOLER LLP**

John A. Freedman*
Tara L. Williamson*
601 Massachusetts Ave, NW
Washington, DC 20001
T: 202.942.5316
E: john.freedman@arnoldporter.com


*Motion to proceed *pro hac vice* forthcoming

**THE ARC**

Shira Wakschlag*
The Arc of the United States
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: 202-534-3708
Facsimile: 202-534-3731
wakschlag@thearc.org
*pro hac vice admission pending


**TOM DUFF LAW FIRM**

/s/ THOMAS J. DUFF
THOMAS J. DUFF
/s/ JIM DUFF
JIM T. DUFF
DUFF LAW FIRM, PLC

The Galleria
4090 Westown Pkwy, Suite 102
West Des Moines, Iowa 50266
Telephone: (515) 224-4999
Fax: (515) 327-5401
Email : tom@tdufflaw.com
jim@tdufflaw.com
wendy@tdufflaw.com

*Attorneys for the Plaintiffs*