E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

**EXHIBIT B**

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FRANCES MIERZWA PARR, individually, as mother and next friend of M.C.P. and B.E.P., <br><br> Plaintiffs, <br><br> v. <br><br> IOWA DEPARTMENT OF EDUCATION et al, <br><br> Defendants. | Case No. EQCE086981 <br><br><br> **BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED PETITION** |

Defendants State of Iowa, Iowa Department of Education (IDOE), Iowa Department of Public Health (IDPH), Ann Lebo, Governor Kim Reynolds, and Kelly Garcia (collectively "the State") file the following brief in support of their motion to dismiss under Iowa Rule of Civil Procedure 1.421.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 3

MOTION TO DISMISS STANDARD ................................................................ 5

ARGUMENT ................................................................................................... 6

I.   Parr presents nonjusticiable issues that must be dismissed. ........................ 6

II.  Parr's constitutional and other challenges to section 280.31 all fail as a matter of law. ......................................................................................... 11

    A.  Parr's Equal Protection claim fails because she lacks standing, she does not identify any similarly situated comparators, and section 280.31 is rationally related to a legitimate state interest ...................................... 12

        1.  Parr lacks standing to bring her equal protection claim. ................. 13

        2.  School districts and accredited nonpublic schools  are not similarly situated to other institutions. ............................................................. 16

        3.  Section 280.21 is rationally related to legitimate state interests and Parr's equal protection claim thus fails. ............................................ 19

B.   Parr's due process claim fails because she lacks standing, she has no protected liberty or property interest, and section 280.31 provides access to the political process. ...................................................... 23

1.   Parr does not have standing to raise a due process claim. .............. 24

2.   Parr has no protected liberty or property interest that would support a due process claim. ......................................................... 27

3.   Parr's procedural due process claim fails because process is still available to Parr. ................................................................. 31

C.   A "violation of the doctrine of parens patriae" is not a cognizable claim because the doctrine does not provide authority to invalidate statutes or challenge state action. ............................................................ 31

D.   Parr fails to state a claim under the education clause in article IX, division 1, section 12 of the Iowa Constitution, both because the issue is textually committed to the legislative branch and because section 280.31 doesn't contravene the clause. .................................................. 34

E.   Parr lacks standing and fails to state a claim under article I, section 1 of the Iowa Constitution. ............................................................ 36

F.   Parr fails to state a claim under the Free Exercise Clause because she lacks standing and section 280.31 is neutral and generally applicable.  39

III.   The drastic remedy of mandamus cannot be used to implement a statewide mask mandate in schools ....................................................................... 42

A.   Judicial review under chapter 17A is the exclusive method to challenge action or inaction by IDOE, IDPH, Lebo, and Garcia. .......................... 42

B.   Judicial review is a plain, speedy, and adequate remedy that makes mandamus unavailable ................................................................... 44

C.   There is no established, clear and certain duty to issue a statewide school mask mandate. ................................................................... 46

D.   The State's considerable discretion regarding how to address a pandemic means a writ of mandamus ordering a specific action is inappropriate ................................................................................. 47

IV.   Parr's requests for declaratory and injunctive relief all fail. ......................... 50

A.   Declaratory and injunctive relief are unavailable because judicial review cannot be discarded at will in favor of common-law writs. ......... 50

B.   Parr did not exhaust administrative remedies by seeking a declaratory order from one or more applicable agencies before seeking judicial declaratory relief. ....................................................................... 51

E-FILED 2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

C.  Parr lacks standing to seek declaratory relief against any Defendant because even the declaration she seeks would not redress her asserted injury of "not having a mask mandate in place."....................................53

D.  Parr lacks standing to seek an injunction to prevent an "Anti-Mask Mandate." ................................................................................................54

CONCLUSION .....................................................................................................55

## INTRODUCTION

Plaintiff Frances Parr, the mother of two children enrolled in public school in Council Bluffs, seeks a mask mandate for all students and school personnel across Iowa. (2d Am. Pet. ¶ 48). She contends the State—along with two of its agencies (IDOE and IDPH), those agencies' respective directors (Lebo and Garcia), and Governor Reynolds—all have a specific duty to issue one. She also contends that a statute passed in 2021 restricting school districts' ability to issue their own mask mandates, *see* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Acts § 28 (to be codified at Iowa Code § 280.31), is unconstitutional or otherwise unlawful. (2d Am. Pet. ¶¶ 27–47). She seeks to invalidate section 280.31 and enjoin its enforcement on multiple grounds.

Assuredly, Parr—and many other Iowans—feel strongly about the matter, and this motion does not mean their opinions are invalid. "The proper forum for this debate is however not in the courts, but in the other branches of state government." *Exira Cmty. Sch. Dist. v. State*, 512 N.W.2d 787, 796 (Iowa 1994). Parr's *opinion* may not be invalid, but her lawsuit is. It's merely an attempt to establish (or change) policy through the court system rather than through policymakers. It is legally insufficient and must be dismissed for many reasons.

3

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

Parr's Second Amended Petition seeks to enjoin and invalidate section 280.31 on five constitutional grounds—due process, equal protection, free exercise, the Iowa Constitution's inalienable rights clause, and one of the Iowa Constitution's education clauses—as well as under the common law doctrine of *parens patriae*. (2d Am. Pet. ¶¶ 27–47). Parr also seeks (1) a writ of mandamus compelling a statewide school mask mandate (*Id.* ¶ 48); (2) a separate declaratory judgment establishing that the State is not *prohibited* from instituting a statewide school mask mandate (*Id.* ¶ 51); and (3) a separate injunction preventing the State from either "enforcing or issuing an anti-mask mandate." (*Id.* ¶ 53).

None of these claims or requests for relief should proceed. Parr attempts to link her dissatisfaction with the State's COVID-19 policy to various constitutional provisions and legal doctrines, but she fails to explain her claims adequately. Further, even if this Court interprets her Second Amended Petition generously, she doesn't state any claim upon which relief can be granted, for several reasons. First, she seeks relief using improper procedures. For example, the sole method to challenge agency action or inaction is judicial review under Chapter 17A; and mandamus is improper where there is an ordinary remedy at law and the action sought is discretionary. As to her constitutional claims, she lacks standing, as well as protected interests and other prerequisites. And neither the doctrine of *parens patriae* nor the education clause of the Iowa Constitution she cites support private actions.

Parr's Second Amended Petition also cannot proceed because it raises nonjusticiable claims. Parr disagrees with the Legislature's decision to enact section

280.31 and make mask-wearing in schools voluntary, but her disagreement does not create a claim upon which this Court can grant her relief. The question whether there should be a statewide school mask mandate is not a proper subject for a lawsuit.

Instead, it is a question for the other branches of government. Like the debate about nitrate levels in waterways in *Iowa Citizens for Community Improvement v. State,* or the debate about educational standards in *King v. State*, this debate about the correct response to an infectious disease properly belongs to the political branches of government. *See King v. State*, 818 N.W.2d 1, 5 (Iowa 2012); *see also Iowa Citizens for Cmty. Improvement v. State,* No. 19-1644, 2021 WL 2483412, at *14 (Iowa June 18, 2021). "[I]f these plaintiffs do not like how Iowa schools are run, they should turn to the ballot box, not the courts." *King*, 818 N.W.2d at 43 (Waterman, J., concurring specially). "It is not for courts to impose particular statewide educational standards by judicial decree." *Id.* at 40. The Court should dismiss this case.

## MOTION TO DISMISS STANDARD

Motions to dismiss test "the legal sufficiency of the challenged pleading." *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 194 (Iowa 2007). A motion to dismiss "accept[s] as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Shumate*, 846 N.W.2d at 507. A motion to dismiss must be granted "when the petition's allegations, taken as true, fail to state a claim upon which relief may be granted." *Id.*

With specific respect to mandamus, "[a] mandamus action is a special proceeding authorized by [Iowa Code] chapter 661." *Stafford v. Valley Cmty. Sch.*

*Dist.*, 298 N.W.2d 307, 309 (Iowa 1980). "Mandamus is not available to establish legal rights, but only to enforce legal rights that are clear and certain." *Id.* Just as with any other petition or claim, a defendant may move to dismiss a petition for mandamus. *See id.* (noting that the district court dismissed a petition for mandamus "[o]n defendants' motion").

Under these standards, the Court should dismiss Parr's petition.

## ARGUMENT

Parr brings six claims seeking to invalidate section 280.31; a claim for mandamus; and a separate claim seeking declaratory judgment and injunctive relief. None of these claims or requests for relief may proceed.

## I. Parr presents nonjusticiable issues that must be dismissed.

In this Petition, Parr asserts two basic complaints: that Iowa's response to the COVID-19 pandemic is wrong and that the Legislature and Governor are making decisions instead of local school boards. Both of these claims are nonjusticiable, because they involve policy decisions that should be made by the political branches of government, not the Courts.

Parr is asking this Court to choose a side in an ongoing policy debate about the correct way to respond to the COVID-19 pandemic. She wants this Court to reject the Legislature's policy decision that schoolchildren in Iowa will not be required to wear masks and the Governor's decision not to issue a statewide mask mandate. She contends the danger presented by the Delta variant of the COVID-19 virus requires it. The Court should dismiss Parr's claim because she presents nonjusticiable political

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

questions. See *Iowa Citizens,* 2021 WL 2483412, at *14 (applying the political question doctrine and declining to "entangle [the courts] in overseeing the political branches of government").

The concept of nonjusticiability overlaps with the political question doctrine. *See State ex rel. Dickey v. Besler*, 954 N.W.2d 425, 449 (Iowa 2021) (Appel, J., dissenting). And the political question doctrine, of course, does not mean "political" in a partisan sense. Rather, it excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the legislature or the executive branch. *King*, 818 N.W.2d at 16–17. The Iowa Legislature determined that schools should not require (although they can permit) students and staff to wear masks. The executive branch retains the authority to close schools and to react to changing public health threats. Iowa Code chapters 29C (emergency management and security), 135 (duties and powers of IDPH). The Court should not intervene in a policymaking process that is properly being carried out by the other two branches of Iowa government. *See King*, 818 N.W.2d at 5 (majority opinion) ("[S]pecific challenges to the educational policies of this state are properly directed to . . . elected representatives, rather than the courts.").

A political question may be found when one or more of the following considerations is present: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving the issue; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

(4) the impossibility of a court's undertaking independent resolution without expressing a lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Iowa Citizens,* 2021 WL 2483412, at *10.

Several of those considerations are present here, demonstrating that this case presents a nonjusticiable question. First, the Iowa Constitution commits the responsibility for emergency response to the Governor and to the executive branch, and the responsibility for education policy and funding to the Legislature. The Governor possesses "supreme executive power," a very broad grant of authority. Iowa Const. art. VI, § 1. The governor has the authority to respond to disasters through the emergency management and security statute, Iowa Code chapter 29C.  By issuing an emergency proclamation, the governor may prohibit public gatherings, suspend any regulatory statute, and use all available state government resources. Iowa Code §§ 29C.3(4)(1), 29C.6(6), (10).

Along similar lines, the field of education has been committed to the legislative branch of government. The Iowa Constitution specifically confers on the Legislature broad policymaking authority over education, because the General Assembly shall have power to "provide for the educational interest of the state in any other manner that to them shall seem best and proper." Iowa Const. art. IX, div. 1, § 15; *see Kinzer v. Dirs. of Indep. Sch. Dist.*, 105 N.W.2d 686, 687 (1906) (citing this constitutional provision and stating that the Legislature is expressly authorized to provide for the

educational interests of the state); *see also King*, 818 N.W.2d at 17; *Bunger v. Iowa High Sch. Athletic Ass'n*, 197 N.W.2d 555, 563 (Iowa 1972). The Legislature has the power to create or even eliminate a district entirely, "without constitutional impediment." *Exira*, 512 N.W.2d at 795. Educational policy decisions are within the Legislature's authority.

Second, there are no judicially discoverable and manageable standards for resolving this issue. Parr asserts that COVID-19 cases are increasing, the Delta variant is more contagious, and vaccines provide imperfect protection at this time. (2d Am. Pet. ¶¶ 8, 13, 15). Therefore, she argues, this Court should reject the Governor's and Legislature's policy choices on masks in schools and instead select hers. Even if the Court accepted this demand, how will the Court know when COVID is less or more dangerous? Does the Court's order requiring a mask mandate stay in place until some acceptable level of cases or transmission is reached? Or does it stay in place until there are no COVID cases at all? Until some percentage of children have been vaccinated? And, with respect to one of Parr's claims under the inalienable rights clause, what manageable judicial standards are there to measure whether a law infringes the right to pursue happiness? "In sum, these matters are not "claims of *legal* right, resolvable according to *legal* principles, [but] political questions that must find their resolution elsewhere." *Iowa Citizens*, 2021 WL 2483412, at *12.

Third and fourth, it is impossible for this Court to rule on this case without rejecting the Legislature's initial policy determination and making its own, therefore expressing a lack of respect to the other branches of government. *See State ex rel.*

9

*Dickey v. Besler*, 954 N.W.2d at 434 (majority opinion) (declining to hear suit because of separation of powers concerns). This analysis asks, is there a "required policy determination that is more appropriate for another branch that sets the stage for everything else? If so, courts should not get involved." *Iowa Citizens*, 2021 WL 2483412, at *13. The Legislature has the responsibility to make education policy decisions, and it has made a policy determination which sets the stage for this dispute. The decision is the Legislature's in the first instance and the Court should not get involved.

The Iowa Supreme Court recently relied upon the political question doctrine in two cases. In *Iowa Citizens for Community Improvement*, the Court declined to compel the Legislature to reduce the level of nitrates in Iowa waterways because it would involve the court in complicated policy debates that belonged in the Legislature. *Iowa Citizens*, 2021 WL 2483412, at *14.  And in *State ex rel. Dickey v. Besler*, the Court dismissed a quo warranto action challenging the appointment of a judge as untimely, because the responsibility to appoint judges lay with the executive branch, not the Court. *See State ex rel. Dickey v. Besler*, 954 N.W.2d at 437. The political question doctrine applies where nonjusticiable questions are presented. *See Iowa Citizens*, 2021 WL 2483412, at *14.  Applying the doctrine shows respect for the separation of powers and a reticence on the judiciary's part to exceed its institutional role just for the righteous notion that the Court should "hold the State accountable to the public." *Id*. The Legislature is accountable to the public and this Court must accordingly leave this policy debate with the Legislature, where it belongs.

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

The core of Parr's lawsuit is that she believes section 280.31 unfairly, improperly, or unwisely restricts school districts from taking one specific pandemic countermeasure. Her assertions boil down to a belief that, with respect to mask mandates, the Legislature improperly removed or overrode the notion of local control in educational matters. But the allocation of State versus local control, as it relates to education, is a nonjusticiable question. *See Iowa Citizens*, 2021 WL 2483412, at *14 (applying the political question doctrine and declining to "entangle [the courts] in overseeing the political branches of government"). The Legislature can decide in some instances "that local school board autonomy is preferable . . . to state mandates," *King v. State*, 818 N.W.2d 1, 29 (Iowa 2012), and it can also decide that state mandates are sometimes preferable. Both decisions are nonjusticiable questions**.**

## II.   Parr's constitutional and other challenges to section 280.31 all fail as a matter of law.

Section 280.31 was passed in May 2021 as part of House File 847. *See* Act of May 20, 2021, ch. 139, 2021 Iowa Acts § 28. The text of the bill relevant to this case states:

> The board of directors of a school district, the superintendent or chief administrating officer of a school or school district, and the authorities in charge of each accredited nonpublic school shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's or accredited nonpublic school's property unless the facial covering is necessary for a specific extracurricular or instructional purpose, or is required by section 280.10 or 280.11 or any other provision of law.[1]

---

[1] Iowa Code sections 280.10 and 280.11 require ear and eye protection to be worn in certain science laboratory, vocational, or industrial arts classes.

Parr contends section 280.31 violates (1) the doctrine of equal protection under both the Fourteenth Amendment and article I, section 6 of the Iowa Constitution (2d Am. Pet. ¶¶ 27–33); (2) the due process clause of the Fifth and Fourteenth Amendments and article I, section 9 of the Iowa Constitution (*Id.* ¶¶ 34–38); (3) the common law doctrine of parens patriae (*Id.* ¶¶ 39–44); and (4) a vestigial and inactive education clause of the Iowa Constitution, found in article IX, division 1, section 12 (*Id.* ¶¶ 45–47). Each claim fails as a matter of law.

### A.   Parr's Equal Protection claim fails because she lacks standing, she does not identify any similarly situated comparators, and section 280.31 is rationally related to a legitimate state interest.

In Iowa, statutes are cloaked with a presumption of constitutionality, and any challenger bears a heavy burden because they must prove unconstitutionality beyond a reasonable doubt. *Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 688 (Iowa 2002). Moreover, the challenger "must negate every reasonable basis upon which the statute could be upheld as constitutional." *Id.* Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, the Court must adopt that construction. *See Iowa State Educ. Ass'n v. State,* 928 N.W.2d 11, 15 (Iowa 2019).

Parr's claim that Iowa Code section 280.31 violates the equal protection clauses of the federal and Iowa constitutions fails because she lacks standing. But even if she had standing, schools are not similarly situated to the comparator institutions she has pled, and section 280.31 is rationally related to legitimate state interests.

### 1.   Parr lacks standing to bring her equal protection claim.

"Equal protection requires that people who are similarly situated be treated similarly." *Kelly v. State*, 525 N.W.2d 409, 411 (Iowa 1994). However, "only a member of the class subjected to discrimination may raise an equal protection claim." *Iowa Movers & Warehousemen's Ass'n v. Briggs*, 237 N.W.2d 759, 773 (Iowa 1976); *see also Mid-Am. Pipeline Co. v. Iowa State Commerce Comm'n*, 255 Iowa 1304, 1309, 125 N.W.2d 801, 804 (1964) (concluding a company was "not one of those injured by the discrimination, if such exists, and so may not raise the question"). Parr asserts section 280.31 creates differential treatment between schools and other locations such as gyms, casinos, and tanning salons. (2d Am. Pet. ¶ 32). But if that's the injury the statute purportedly imposes, Parr is not "among those who have sustained it." *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 476 (Iowa 2004). Put simply, Parr contends the statute improperly treats schools differently— but Parr is not a school. *See Mulder v. State*, 565 N.W.2d 348, 351 (Iowa 1997) (concluding it was "questionable whether [the plaintiff] has standing to raise an equal protection challenge" when the statute he challenged addressed insurers and he was "not an insurer"); *Gamel v. Veterans Mem'l Auditorium Comm'n*, 272 N.W.2d 472, 477 (Iowa 1978) (finding several plaintiffs, who were veterans, lacked standing to raise an equal protection challenge to a statute that they alleged improperly excluded *non-*veterans).

"Generally, a party may not assert the rights of others not before the court." *Krull v. Thermogas Co.*, 522 N.W.2d 607, 614 (Iowa 1994). "[S]tanding to bring actions on behalf of third parties still requires the litigant to establish a personal injury or

stake." *Godfrey v. State*, 752 N.W.2d 413, 424 (Iowa 2008). And Parr has no legally cognizable personal stake in the purported differential treatment between schools and other locations. Her displeasure that section 280.31 might make a school district unable to impose a school mask mandate does not mean the statute regulates *Parr herself* or subjects *her* to differential treatment. *See Iowa Life Ins. Co. v. Bd. of Supervisors*, 180 N.W. 721, 722–23 (Iowa 1921) ("The constitutionality of a statute cannot be questioned by one who is not prejudiced by its enforcement."). Therefore, she lacks standing to raise an equal protection challenge. *See, e.g.*, *Gamel*, 272 N.W.2d at 477; *Iowa Movers*, 237 N.W.2d at 771–73 (finding a company lacked standing to challenge a tax statute because the company was not "taxed by that section"); *Mid-Am. Pipeline*, 255 Iowa at 1309, 125 N.W.2d at 804.

Further, to assert third-party standing, a litigant must show that the parties not before the court are unable or unlikely to assert their own rights. *Godfrey*, 752 N.W.2d at 424; *see Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 567 (Iowa 1976) (holding that only criminal defendants—and not the Iowa Civil Liberties Union or lawyers representing the defendants—possessed standing to challenge a supervisory order addressing discovery and motion practice during criminal cases). Here, Parr cannot assert a school district's right to equal protection, because no such right exists. School districts do not have constitutional rights and may not bring this claim. *See Exira*, 512 N.W.2d at 790 (concluding a school district can't "mount a constitutional attack against a state statute"). This is the case because the Legislature has plenary authority over school policy and funding and may govern

14

districts as it sees fit. *Id.* at 793. The equal protection clause simply does not apply here.

Even if Parr's asserted injury is viewed differently—not as a claim that schools are treated differently but as an allegation that she personally will "suffer emotional harm if her children are forced to attend school without a mask mandate in place" (2d Am. Pet. ¶ 15), that still does not give her standing to challenge section 280.31. Standing does not exist where any injury is one step removed from the challenged action's or provision's direct effect. *See Citizens for Responsible Choices*, 686 N.W.2d at 475. In *Citizens for Responsible Choices*, a nonprofit organization objected to revenue bond financing for a public improvement project that included a recreational lake and public park. *See id.* at 472. The organization contended the financing was procedurally improper and was a misuse of a designated agricultural area. *See id.* When the defendants challenged the organization's standing, the organization asserted it would "be damaged by the project that the revenue bonds will make possible." *Id.* at 475. But the Iowa Supreme Court concluded the organization lacked standing because the issuance of the bonds themselves "would produce no adverse effect," and the "injury, if any, would come as a result of a project that is financed by the bonds." *Id.* That nexus was one step removed from the alleged harm, and was therefore not enough for standing.

This case is the other side of the coin. The causal chain in *Citizens for Responsible Choices* was bonds → action taken (construction) → purported injury, but standing would only exist to challenge the bonds if the bonds *directly* caused injury.

15

*See id.* Here, the causal chain Parr asserts is statute passed → action *not* taken (school district does not issue a school mask mandate) → purported emotional injury. The law itself does not directly cause the injury Parr asserts. That's not enough for standing, so Parr's equal protection claim must be dismissed.

### 2.    School districts and accredited nonpublic schools are not similarly situated to other institutions.

Many statutes impose classifications, but the equal protection clause does not require all laws to apply uniformly to all people. *See Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992); *see also Cook v. Dewey*, 233 Iowa 516, 519, 10 N.W.2d 8, 10 (1943) ("The constitution requires 'uniform operation throughout the State,' not uniformity of consequences resulting from such operation."). The Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution require that "similarly situated persons be treated alike under the law." *In re Det. of Williams,* 628 N.W.2d 447, 452 (Iowa 2001). The first step in determining whether a statute violates equal protection is to determine whether the statute distinguishes between similarly situated persons. *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008). If plaintiffs cannot show a similarly situated class as a preliminary matter, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause. *See, e.g., Timberland Partners XXI, LLP v. Iowa Dep't of Revenue,* 757 N.W.2d 172, 176–77 (Iowa 2008) (applying threshold analysis). The reason for this threshold inquiry is plain: "Dissimilar treatment of persons dissimilarly situated does not offend equal protection." *City of Coralville v. Iowa Utils. Bd.*, 750 N.W.2d 523, 531 (Iowa 2008).

Parr's claim fails this first step. She asserts that school districts are similarly situated to a laundry list of organizations: "child care centers, preschools, child development homes, child care homes, child residential facilities, colleges, gyms, casinos, tanning salons and institutions." (2d Am. Pet. ¶ 32). Iowa school districts and accredited nonpublic schools are not similarly situated to any of these entities; in fact, they are unique in many ways, as described below. And regardless, the similarly-situated inquiry involves specific circumstances, not just a general status as a building or a location. *Cf. New Midwest Rentals, LLC v. Iowa Dep't of Commerce*, 910 N.W.2d 643, 653 (Iowa Ct. App. 2018) (rejecting an equal protection challenge because the relevant classification was not all "Iowa retailer beer permittees," but all permittees with the same specific ownership circumstances as the appellant). Parr's "uniformity clause claim is in substance a misplaced argument for uniformity of consequences rather than uniformity of operation." *City of Coralville*, 750 N.W.2d at 530–31. Her equal protection challenge should be dismissed.

First, Iowa school districts are creatures of statute, and the Legislature retains plenary control over school funding and policy. *Waddell v. Bd. of Dirs.*, 175 N.W. 65, 67 (Iowa 1919). In *King*, the Iowa Supreme Court discussed at length the Legislature's authority to establish education policy, and to determine the extent to which local school districts should exercise control. *King*, 818 N.W.2d at 29 (majority opinion); *see also Exira*, 512 N.W.2d at 795. The Iowa Constitution does not contain any right to local control for school districts. *See Exira,* 512 N.W.2d at 795 (school districts have no constitutional rights). The Legislature can go so far as to eliminate

a school district without constitutional impediment. *Id.* Although the Legislature may, of course, pass laws which impact any of the other entities cited by Plaintiff, the Legislature's control over education policy is unique to schools.

Second, Iowa children of school age must attend school under Iowa's compulsory education statutes. Iowa's compulsory education statute, chapter 299, provides that a student of mandatory attendance age must attend public school, an accredited private school, or choose private instruction. Iowa Code § 299.1. The state has a clear right to set minimum educational standards for all its children and a corresponding responsibility to see to it that those standards are honored. *Johnson v. Charles City Cmty. Schs.,* 368 N.W.2d 74, 79 (Iowa 1985). These other indicia of plenary authority over education make Iowa's schools unique among even state institutions.

Finally, schools are not comparable to gyms, office buildings, casinos, or tanning salons.  The State of Iowa does not operate, fund, or set policy for gyms, office buildings, casinos, or tanning salons in the way it funds and operates schools. To state the obvious, there are few if any children in gyms, office buildings, casinos, or tanning salons, whereas the majority of people in school buildings are children. Other areas of Iowa law expressly rely on the notion that "children are different." *Miller v. Alabama*, 567 U.S. 460, 480 (2012); *see State v. Zarate*, 908 N.W.2d 831, 851 (Iowa 2018) (concluding "the legislature is in the best position" to recognize and implement a policy that children are different for some purposes). State policy for state-funded

and regulated schools may reasonably differ from state policy for private business focused on adults.

### 3. Section 280.21 is rationally related to legitimate state interests and Parr's equal protection claim thus fails.

When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude. *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985). State laws are subjected to various levels of scrutiny depending on the classification the laws draw and the kind of right the laws affect. If a statute affects a fundamental right or classifies individuals on the basis of race, alienage, or national origin, it is subjected to strict scrutiny review.  *Sanchez*, 692 N.W.2d at 817.  If no fundamental right or suspect class is at issue, rational basis review requires only that legislative categories be rationally related to a legitimate state interest. *Id.* No suspect class or fundamental right is at issue in this case, so rational basis is the appropriate level of scrutiny. Indeed, Parr agrees that rational basis review applies here, alleging that section 280.31 "serves no legitimate governmental interest." (2d Am. Pet. ¶ 29).

Because the State may show any reasonably conceivable state of facts that could provide a rational basis for the classification, courts can and do dismiss claims like Parr's on motions to dismiss.  It is not necessary to wait for further factual development in order to conduct a rational basis review on a motion to dismiss. *Gilmore v. Cty. of Douglas, State of Neb.,* 406 F.3d 935, 937 (8th Cir.2005); *Johnson v. City of Little Rock*, 164 F. Supp. 3d 1094, 1100 (E.D. Ark. 2016).

Section 280.31 is rationally related to a legitimate state interest and therefore, Parr's equal protection challenge must fail even if she has standing, and can show that school districts are treated differently from a similarly situated entity. Under rational basis review, statutes are presumed to be constitutional, and a statute must be upheld if the court can identify (1) a legitimate state interest and (2) any reasonably conceivable factual basis to support the policy the state chose to further it. *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993). Rational basis review requires only a plausible policy reason for a classification. *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). This Court need not determine whether section 280.31 actually achieves the interest—it is sufficient that the Legislature could reasonably believe that the law could obtain these ends in order for the statute to survive rational basis review. *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1020 (8th Cir. 2012) (explaining that the court need not determine whether the government's stated interest is actually achieved by the law, if the government reasonably could believe it to be true the law survives rational basis review). Rational relationship review is thus highly deferential to the Legislature. *Karsjens v. Piper*, 845 F.3d 394, 409 (8th Cir. 2017). And a law advances legitimate governmental interests "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Plaintiffs bear the burden of proving the law is invalid. *Karsjens*, 845 F.3d at 409.

First, section 280.31 furthers legitimate state interests. The state has a legitimate interest in promoting the effective education of Iowa students; in their

comfort and social development; and in their mental health. The State has a legitimate interest in the comfort, mental health, and workplace conditions of teachers and staff in schools.  The Iowa Supreme Court has held that the State has legitimate interests in education, including "equity in per-pupil funding, maintenance of existing rural school districts, and conservation of scarce classroom time and resources. *King v. State*, 818 N.W.2d 1, 29 (Iowa 2012). Promoting effective education for children is "realistically conceivable "as a legitimate state interest. *Miller v. Boone Cnty. Hosp.,* 394 N.W.2d 776, 779 (Iowa 1986); *King,* 818 N.W.2d at 29.

Second, Parr bears the burden of negating "every conceivable basis" which might support the classification at issue in section 280.31, and this she cannot do. *Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City*, 742 F.3d 807, 811 (8th Cir. 2013). The Legislature could have reasonably believed that section 280.31 was rationally related to its legitimate interest in students' development and education. They could have considered that masks obscure both a teacher's and a child's facial expressions and may impede communication and relationships between teachers and students. The Legislature could have decided that the potential academic and social harms for children associated with wearing masks outweighed the benefits of masks. The Legislature could have considered that the education students who have trouble hearing might be impeded by masks. The Legislature could rationally have considered that other developed countries, also facing the Delta variant of the COVID-19 virus, do not require children to wear masks in schools. *See*

*e.g.,* Dana Goldstein, *In Britain, Children Don't Wear Masks in Schools*, N.Y. Times, Aug. 27, 2021. The Legislature could rationally have considered that the World Health Organization does not recommend that children under 12 wear masks in all circumstances and states that "the benefits of wearing masks in children for COVID-19 control should be weighed against potential harm associated with wearing masks, including feasibility and discomfort, as well as social and communication concerns." World Health Organization, *Advice on the Use of Masks for Children in the Community in the Context of COVID-19*, Aug. 21, 2020, *available at* https://perma.cc/TTQ8-PNHU.

In addition, the Legislature could rationally have considered that the issue of masks in schools is a highly contentious and emotional one. Parents are naturally concerned for the safety of their children and have differing beliefs on the necessity and benefit of masks for children. This school year, like last year, begins amidst uncertainty and stress. The Legislature could have decided to remove this issue from the responsibilities of local school boards. If each district had to make its own decision, each district might face litigation brought by parents who disagreed, with the attendant effort and expense. Under section 280.31, each school district does not have to decide on its own whether to satisfy parents who wish their students to be masked, or to satisfy parents who do not, and districts have more time to devote to other important concerns.

Parr asserts that section 280.31 violates the constitution because "no educational or medical reason was given for passing the statute" and "the proposed

statute was not supported by any scientific or educational literature or studies." (2d Am. Pet. ¶ 29). The Legislature was not required to provide data or evidence to support its decision making and the State need not do so now to defend the statute. A state "has no obligation to produce evidence to sustain the rationality of a statutory classification because legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *AFSCME Iowa Council 61 v. State*, 928 N.W.2d 21, 37 (Iowa 2019).

Parr and others vehemently and genuinely disagree with the Legislature's decision and with authorities that do not recommend masks in schools. But people of Iowa govern themselves through their elected Legislature and courts are rightly reluctant to second-guess their decisions. Disagreements among citizens are part of life in a democracy, and the proper place for their resolution is the political process, not the courts. The Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes. *City of Cleburne,* 473 U.S. at 440. Through the Legislature, Iowans have made a policy choice about how to handle the issue of masks in schools. Since this decision is a rational one, the Court must affirm it and dismiss Parr's equal protection claim.

### B.   Parr's due process claim fails because she lacks standing, she has no protected liberty or property interest, and section 280.31 provides access to the political process.

Parr claims that section 280.31 violates the due process clauses of the federal and Iowa constitutions. (2d Am. Pet. ¶¶ 34–38). She appears to assert a procedural due process claim that her right to "fair procedures" before her school board, county,

and city is infringed by the statute. But Parr's claim fails because she lacks standing, has no protected liberty or property interest, and section 280.31 does not prevent Parr from participating in the political process.

### 1.   Parr does not have standing to raise a due process claim.

Parr lacks standing to raise her due process claim. The Second Amended Petition asserts that section 280.31 prevents Parr from attempting to convince her school board, city, or county to issue its own mask mandate. (2d Am. Pet. ¶¶ 37–38). That is a generalized grievance because it is no different from any other citizen's purported ability or inability to influence local authorities. It does not demonstrate standing. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 869–70 (Iowa 2005) (rejecting a claim of injury to the general public). Parr's allegation that the law deprives or impairs the *ability* to participate in public affairs "affects only the generalized interest of all citizens, and such an injury is abstract in nature, which is not sufficient for standing." *Id.* at 869.

Iowa's standing inquiry has two distinct prongs, each of which Parr must satisfy to proceed with a claim, and she can satisfy neither one. A complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected.'" *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013). The first element—the plaintiff has a specific personal or legal interest—is aligned with the general concept of standing that a party who advances a legal claim must have a special interest in the challenged action, 'as distinguished from a general interest.'" *Godfrey*, 752 N.W.2d at 419. The second requirement—the plaintiff must be injuriously affected—means the plaintiff must be 'injured in fact.'

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

*Id.* (citation omitted). "'Injury in fact' reflects the statutory requirement that a person be 'adversely affected' or 'aggrieved,' and it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973). "To satisfy the second element, the injury cannot be 'conjectural' or 'hypothetical,' but must be 'concrete' and 'actual or imminent.'" *Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 606 (Iowa 2012).

Parr does not have a special or personal interest in this litigation or any injury in fact, but pleads only a general interest that all Iowans share: that because section 280.31 changed what body has decision making authority over masks in schools (the Legislature rather than local school boards) all Iowans must change how they participate in the political process if they wish to advocate on this issue. *Alons* illustrates Parr's problem. There, the plaintiffs contended in part that "the public has an interest in preserving the judicial process." *Id.* They asserted the judicial process would be undermined or damaged if they were not allowed to challenge a district court's dissolution of a same-sex marriage. *See id.* But the Iowa Supreme Court rejected that contention. "Reduced to their simplest form," the plaintiffs' arguments did not show "that they have been injured in a special manner, different from that of the public generally," and instead asserted only an abstract injury, "which is not enough." *Id.* at 870.

Parr's claim is similar. Rather than the judicial process, Parr claims that her interest is in preserving the *political* process. And she asserts section 280.31 has undermined or damaged the ability to participate in that process effectively. But as in *Alons*, that purported injury is both abstract, and common to all. There is no individualized, personal interest that is specific to Parr. Reduced to its simplest form, the "injury" she asserts is not different from an injury any member of the public might assert. It is only a generalized grievance and an abstract injury, "which is not enough." *Id.*

Parr's claimed injury also resembles the claim of standing in a recent case where legislators asserted "the process of enacting [a bill] injured them," because the way the bill was debated and voted upon was improper. *Rush v. Reynolds*, No. 19–1109, 2020 WL 825953, at *5 (Iowa Ct. App. Feb. 19, 2020). The court rejected that claim of standing because it was common to all legislators, not just those specific plaintiffs. *See id.* at *6 (noting the procedural injury was "not unique or personal to [the plaintiffs] but instead [wa]s true of all members of the Iowa legislature"). The same is true here; Parr's claim that she is deprived of the ability to participate in the political process—even assuming a "deprivation" in the first place—is common to all constituents and is not unique to Parr. Parr does not assert a *specific*, *individualized* personal or legal interest, so she lacks standing to raise her due process claim.

Even if Parr's claimed injury—a changed political process—is viewed as a claim that her political advocacy is diluted or less effective, this claim would be too hypothetical and speculative to provide standing. *See Rush v. Reynolds*, 946 N.W.2d

543 (Iowa Ct. App. 2020). In *Rush*, the plaintiffs also included members of the state judicial nominating commission, who complained that their votes on the judicial nominating commission would be diluted because of changes the Legislature made to the process. The Court of Appeals concluded that this claimed injury was too uncertain and conjectural to confer standing. *Id.* at *5. Here, it is completely speculative for Parr to assert she is injured by the change wrought by section 280.31 to her options for participating in the political process. Perhaps her advocacy will be more effective at the state level than at the county or school board level. There is simply no way to know and this type of speculative complaint will not confer standing. *Id.*

### 2. Parr has no protected liberty or property interest that would support a due process claim.

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Constitution also provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. Iowa courts have generally considered the federal and state due process clauses to be identical in scope. *Nguyen v. State*, 878 N.W.2d 744, 755 (Iowa 2016). The Due Process Clauses involve two separate but related concepts: procedural due process and substantive due process. *Cty. of Sacramento v. Lewis,* 523 U.S. 833 (1998); *State v. Seering,* 701 N.W.2d 655, 662 (Iowa 2005) (superseded on other grounds by statute). The first, substantive due process, prevents the government from interfering with rights "implicit in the concept

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

of ordered liberty." *Seering,* 701 N.W.2d at 662 (quoting *United States v. Salerno,* 481 U.S. 739, 746(1987)). Its companion concept, procedural due process, requires that before there can be a deprivation of a protected interest, there must be notice and opportunity to be heard in a proceeding that is "adequate to safeguard the right for which the constitutional protection is invoked." *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys. of Iowa,* 526 N.W.2d 284, 291 (Iowa 1995).

Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445–46 *(8th Cir. 1995),* and the possession of a protected life, liberty, or property interest is a "condition precedent" to any due process claim. *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir. 1995). Where no such interest exists, there can be no due process violation. *Id.; Buhr v. Buffalo Pub. Sch. Dist. No. 38,* 509 F.2d 1196, 1202 (8th Cir.1974). Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a due process claim. *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). Parr asserts that her right to "fair procedures" before her school board, county, and city is infringed by section 280.31. She alleges no protected liberty or property interest, and therefore her due process claim must be dismissed. *Movers Warehouse, Inc.*, 71 F.3d at 718.

"Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989); *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011).

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

Liberty interests arise from the Federal Constitution and are '"deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Washington v. Glucksberg,* 521 U.S. 702 (1997).  Liberty interests include such rights as the freedom from bodily restraint, the right to contract, the right to marry and raise children, and the right to worship according to the dictates of a person's conscience. *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 572 (1972). They can also include less fundamental rights, such as the right to choose your home, to drive, and to contract. *King v. State*, 818 N.W.2d 1, 26 (Iowa 2012); *Bowers,* 638 N.W.2d at 691. But not every government act that impacts an individual or changes the choices available to them creates a recognizable liberty interest. *See City of Sioux City v. Jacobsma,* 862 N.W.2d 335, 345 (Iowa 2015) (automatic traffic enforcement does not infringe on liberty interest where plaintiff can still move freely and use vehicle).

Protected property interests "are created and their dimensions are defined" not by the Constitution but by an independent source such as state law. *Bowers v. Polk Cty. Bd. of Supervisor*s, 638 N.W.2d 682, 691 (Iowa 2002). A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law. *Schueller v. Goddard*, 631 F.3d 460, 462–63 (8th Cir. 2011). Property interests include traditional property such as real estate, but can also include professional licenses, welfare benefits, tenure, and certificates of need. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); *Slochower v. Board of Education*, 350 U.S. 551, (1956); *Greenwood Manor v. Iowa Dep't of Pub. Health, State Health Facilities Council*, 641 N.W.2d 823, 837–38 (Iowa 2002).

Parr does not allege that section 280.31 violates any protected liberty or property interests. She states that she has the right to a particular process, namely debating mask mandates with her local school board, and now can no longer pursue this process. (2d Am. Pet. ¶ 37). Parr has no protected liberty or property interest in debating a particular issue with a particular elected body. The Legislature may limit the authority of cities, counties, and school boards, and had done so in various ways before section 280.31 was enacted. *City of Des Moines v. Master Builders of Iowa,* 498 N.W.2d 702, 703–04 (Iowa 1993) (counties can act unless Legislature denies them authority); *Baker v. City of Iowa City,* 750 N.W.2d 93 (Iowa 2008) (city ordinance exceeds home rule authority); *Exira Cmty. Sch. Dist. v. State*, 512 N.W.2d 787, 793 (Iowa 1994) (districts are creatures of statute and the Legislature's control over them is plenary).

In addition, nothing in section 280.31 prohibits Parr from participating in the political process. She still retains her rights under the First Amendment to speak publicly on the issue of masks, and to participate in the "fair procedures" involved in debating and changing policy on that issue. All that has changed for Parr is what procedure she should participate in and to whom she should address her advocacy. Instead of advocating to a city, county, or school board, she should lobby the Legislature (to amend section 280.31) or the Governor (to invoke her authority to suspend statutes in an emergency under Iowa Code section 29C.6(6)). Parr has no protected liberty or property interest violated by Section 280.31 and therefore her due process claim must be dismissed.

> **3.    Parr's procedural due process claim fails because process is still available to Parr.**

Even if the Court recognizes Parr's ability to participate in fair procedures to consider mask mandates to be a protected liberty or property interest, any procedural due process claim brought here also fails because Parr has not been deprived of her right to participate in a fair process. Procedural due process requires "notice and opportunity to be heard in a proceeding that is adequate to safeguard the right for which the constitutional protection is invoked. *Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002). But no particular procedure violates due process merely because another method may seem fairer or wiser. *Id*. Parr can no longer advocate to her city, county, or school board about masks to be a protected interest, but she has not been deprived of the political process. The process available to her has changed. She can advocate to the Legislature or to the Governor.

> **C.    A "violation of the doctrine of parens patriae" is not a cognizable claim because the doctrine does not provide authority to invalidate statutes or challenge state action.**

Parr asserts that section 280.31 is unenforceable under the doctrine of *parens patriae*, because it puts students at risk of contracting COVID-19. (2d Am. Pet. ¶¶ 4–44). *Parens patriae* is a source of state power and authority, however, not a source of tort law or the basis of a private cause of action against the State. *Parens patriae,* meaning "parent of the people" is a common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) (holding that Puerto Rico has standing to bring suit on behalf of

injured citizens working abroad); *Lynch v. Nat'l Prescription Adm'rs, Inc.,* 787 F.3d 868, 872 (8th Cir. 2015). It also provides the State's authority to interfere with or supersede parents' traditional right to the care and education of their children through child welfare and juvenile justice laws. *Endress v. Iowa Dep't of Human Servs.,* 944 N.W.2d 71, 79 (Iowa 2020).

While the doctrine has long been recognized under Iowa law, it's never been recognized in the way Parr now seeks to use it. Instead, the doctrine merely acknowledges that children "are assumed to be subject to the control of their parents, and *if parental control falters*, the State must play its part as parens patriae." *Schall v. Martin*, 467 U.S. 253, 265 (1984) (emphasis added). Thus, the doctrine of parens patriae authorizes the State to take action or impose *restrictions* that can promote a child's welfare when a parent can't or won't do so—restrictions such as prohibiting or limiting child labor, *see* Iowa Code §§ 92.2–.8; compelling school attendance, *id.* § 299.1A; and even terminating the parent–child relationship, *see id.* § 232.116.

But it is a one-way valve and does not authorize private lawsuits like Parr's that assert the State has *insufficiently* protected a child's welfare. Parr does not contend—and given that her love for her children drove her to file this lawsuit, probably would not contend—that her own parental control is faltering. Accordingly, the State's actions or inactions have no legal significance under the doctrine of parens patriae as applied to Parr, because there is no reason for the State to need to "step in." Put simply, the doctrine is not a ground for invalidating legislation or *forcing* government action, as Parr seeks to do. *See In re S.G.*, 677 N.E.2d 920, 928 (Ill. 1997)

(concluding parens patriae does not "provide a basis to judicially invalidate" a statute); *In re Justin B.*, 799 S.E.2d 675, 680 (S.C. 2017) (concluding the doctrine of parens patriae is "a legislative policy, and not a basis on which we will strike down statutes").

Notably, the Iowa Supreme Court has squarely held that "a tort does not arise from the State's role as parens patriae." *Rittscher v. State*, 352 N.W.2d 247, 251 (Iowa 1984). In *Rittscher*, the plaintiff sought damages and asserted the State violated its parens patriae duty to protect a child by leaving her vulnerable to and unprotected from an inadequate or dangerous parent. *Id.* The Court, however, rejected the plaintiff's attempt to hold the State liable for purportedly "breaching" the parens patriae duty. *See id.* at 252 (concluding the district court "properly sustained [a] motion to dismiss" raising the no-cause-of-action defense). The same logic should apply to this case even though Parr does not bring any tort claims. Like the plaintiff in *Rittscher*, Parr asserts the State has left her children vulnerable—but to a virus rather than another person. *See id.* Although she does not seek money, she still seeks to have this Court tell the State it was wrong. But the doctrine of parens patriae is non-actionable in equity just as it was not actionable in tort in *Rittscher*. The doctrine cannot be applied to invalidate government action, only to justify it. *See S.G.*, 677 N.E.2d at 928 ("Although our courts possess some powers that are in the nature of *parens patriae*, that doctrine does not represent an independent judicial power to strike down legislation on grounds that it violates 'the best interest of the child.' "). And if Parr believes the State is not doing enough to *fulfill* the doctrine of parens

patriae, her solution is a political rather than a legal one. *See Justin B.*, 799 S.E.2d at 680 ("The manner in which the State should implement the policy behind the doctrine of *parens patriae* is a question for the Legislature, not the courts."). Parr's parens patriae "claim" must be dismissed.

> **D.   Parr fails to state a claim under the education clause in article IX, division 1, section 12 of the Iowa Constitution, both because the issue is textually committed to the legislative branch and because section 280.31 doesn't contravene the clause.**

Parr claims section 280.31 violates article IX, division 1, section 12 of the Iowa Constitution. (2d Am. Pet. ¶ 46). However, this provision is no longer substantively operable because it assigned authority over education in Iowa to a State Board of Education, which the Legislature abolished in 1864. *King*, 818 N.W.2d at 15. The provision currently demonstrates only that the Legislature has the authority to enact section 280.31 and other school policy statutes because it has assumed responsibility over education policy in Iowa. Finally, even if article IX, division 1, section 12 did provide the basis for a cause of action, nothing about section 280.31 contradicts the terms of the provision.

*King* explains the origins of Article IX:

> Article IX of the 1857 Constitution of the State of Iowa, entitled, "Education and School Lands," was enacted in two divisions. The first division of article IX, captioned "Education," established a state board of education and conferred on that board powers and duties relating to education policy. In particular, section 1 of that division provided, "The educational interest of the State, including Common Schools and other educational institutions, shall be under the management of a Board of Education...." Iowa Const. art. IX, div. 1, § 1.

*King*, 818 N.W.2d at 13. Section 15 "authorized the general assembly to eliminate the board of education at any time after 1863 and thereafter provide for

"the educational interest of the State in any other manner that to them shall seem best and proper." *Id.* at 15 (quoting Iowa Const. art. IX, div. 1, § 15)).

Section 12, cited by Parr here, provides that:

The Board of Education shall provide for the education of all the youths of the State, therefore, a system of Common Schools and such school shall be organized and kept in each school district at least three months each year. Any districts failing, for two consecutive years, to keep up a school as aforesaid may be deprived of their portion of the school fund.

Iowa Const. art. IX, div. 1, § 12. However, this provision of the original 1857 Iowa Constitution quickly became vestigial. "As it turned out, the legislature abolished the board of education at the earliest possible opportunity in 1864." *King*, 818 N.W.2d at 15; *see* 1864 Iowa Acts ch. 52, § 1. The consequence of abolishing the state board of education was that the Legislature assumed all responsibility for education policy. *Id.* The clause retains none of its original meaning. And the state's assumed responsibility and discretion in education policy does not support Parr's claim that its own recent enactment in Section 280.31 somehow violates this provision. In enacting 280.31, the Legislature *did* provide for "the educational interest of the State in any other manner that to them shall seem best and proper." Iowa Const. art. IX, div. 1, § 15.

Nevertheless, even if a claim under the Education Clause is justiciable, Parr's claim cannot proceed because section 280.31 doesn't violate the clause. The state is providing for schools for the "youths of the State" and they are in session for at least three months of the year. An early Iowa case relied on the Education Clause to strike down statutes and integrate Iowa schools because the word *all* meant the education had to be "provided equally to all children." *King*, 818 N.W.2d at 47 (Wiggins, J.,

35

dissenting); *see Clark v. Bd. of Dirs.*, 24 Iowa 266, 274 (1868). The Education Clause was dispositive because under the then-existing segregated state of affairs, there was a "total exclusion of colored children from our common schools." *Clark*, 24 Iowa at 272.

By contrast, section 280.31 makes no such exclusion. The statute may mean that students attend a school without a mask mandate. But it doesn't expel any student or deprive them of the *ability* to attend school, or choose to wear a mask themselves. That's what was material in *Clark*, but a similar effect is missing here. The State has still *provided* education for all youths in the State—even if that education doesn't look exactly as Parr would prefer. Section 280.31 does not violate the Education Clause.

### E. Parr lacks standing and fails to state a claim under article I, section 1 of the Iowa Constitution.

Parr asserts that section 280.31 violates the Iowa Constitution by violating Iowa citizens' right to pursue safety and happiness, and is not a reasonable exercise of the State's police power. (2d Am. Pet. ¶ 50–51). Parr's claim fails because she lacks standing to assert it, has no protected right to a mask mandate, and section 280.31 is a reasonable exercise of state power. *See City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 352 (Iowa 2015) (holding that lack of standing limits Jacobsma's claim and traffic control ordinance is not arbitrary).

First, Parr lacks standing to bring this claim, as she does to bring her other constitutional claims. She has not pled any individualized injury that is specific to her. Rather, she pleads that section 280.31 violates *all citizens'* right to pursue safety

and happiness by regulating *counties, municipalities, and school districts*—not individuals. (2d Am. Pet. ¶ 50). This is insufficient for standing in two ways. First, Parr does not allege any personalized injury, instead asserting *all citizens'* rights. This generalized grievance does not confer standing. *See Alons*, 698 N.W.2d at 869. Second, Parr recognizes that the statute regulates other entities and not her personally, meaning she asserts a chain link theory of standing—but that is inconsistent with and contrary to *Citizens for Responsible Choices*, 686 N.W.2d at 475, which holds there is no standing on such a one-step-removed basis.

Even if she had standing to assert this claim, Parr does not state a claim. Iowa courts use a two-pronged test to determine whether a statute violates article I, section 1. The test asks (1) whether the right asserted by the plaintiff is protected and (2) if it is, whether the statute is a reasonable exercise of the State's police power. *Gacke v. Pork Xtra, L.L.C.,* 684 N.W.2d 168, 176 (Iowa 2004). Parr cannot show a protected right, and the statute is a reasonable exercise of the state's police power.

Parr alleges that section 280.31 violates her right to have a municipality, county, or school district impose a mask mandate. (2d Am. Pet. ¶ 50). There is no protected right to have a school board, city, or county impose a mask mandate.[2] It is not certain that if these bodies could impose a mask mandate, they would do so.

---

[2] Moreover, section 280.31 does not affect the authority of a municipality or county in any way. *See* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Acts § 28 (to be codified at Iowa Code § 280.31). Section 280.31 only governs schools. *Id.* The Legislature amended two other statutes to prohibit counties and cities from taking certain actions with respect to facial coverings. *See id.* § 29 (to be codified at Iowa Code § 331.301(19)); *id.* § 30 (to be codified at Iowa Code § 364.3(14). But those statutes have not been challenged in this action.

Beyond the fact that there is no protected right to a mask mandate, there is no right to have a policy decision made at any particular level of government. As argued above, the authority of school boards, cities, and counties are limited in many ways by the Legislature and this does not offend the federal or Iowa constitutions. Rather, it is simply the way our government of divided powers functions. Cities, counties, and school boards have authority over some issues, but others, including the issue of masks in schools, are outside of that authority. Since Parr has not asserted any protected right, "there can be no inequality or injustice in the statute under consideration, because no right protected by the Constitution has been invaded." *Shaw v. City Council of Marshalltown*, 104 N.W. 1121, 1124 (Iowa 1905).

Even if Parr asserted a protected right, this constitutional provision requires only reasonableness, and section 280.31 is a reasonable exercise of the State's police power. *Atwood v. Vilsack*, 725 N.W.2d 641, 652 (Iowa 2006) (holding that article I, section 1 prevents only arbitrary, unreasonable legislative action); *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995) (holding that challenger must demonstrate law is unreasonable, arbitrary, and capricious). The analysis of reasonableness is "virtually identical" to the rational basis due process or equal protection tests. *City of Sioux City*, 862 N.W.2d at 352.

Here, as described above, the Legislature might have reasonably considered the burden on children imposed by wearing masks, the burden on staff in enforcing mask rules, the burden on school boards in deciding what to do about this issue in a heightened political climate, and thus decided that the issue should be decided by the

38

Legislature in this way. In addition, section 280.31 applies to all public and nonpublic schools, and does not impose any duties unequally on any particular students or districts. *See Gacke*, 684 N.W.2d at 179 (property owners bear unequal burden of statute granting immunity from nuisance). Parr cannot meet the high burden of invalidating a law "cloaked with a presumption of constitutionality" under this rational basis review. *State v. Seering*, 701 N.W.2d at 661.

> **F.     Parr fails to state a claim under the Free Exercise Clause because she lacks standing and section 280.31 is neutral and generally applicable.**

The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1876 (2021). However, Parr fails to state a claim under this clause because she lacks standing and section 280.31 is a neutral law of general applicability.

Parr's Second Amended Petition asserts section 280.31 violates the First Amendment's Free Exercise Clause, but she lacks standing to bring this claim. (2d Am. Pet. ¶¶ 52–60). Parr does not identify any direct injury to her own religious beliefs. She merely alleges section 280.31 burdens "Christian Schools" (*Id.* ¶ 57–58). But Parr is not a religious school. Under the Free Exercise Clause, litigants lack standing when they merely "assert a claim that the free exercise of religion *by others* has been infringed." *United States v. Top Sky*, 547 F.2d 486, 488–89 (9th Cir. 1976) (emphasis added).

Parr's children don't attend a religious school, either; she expressly pleads they are students in the Council Bluffs public school system. (2d Am. Pet. ¶ 1). Because Parr is not a religious school, does not plead that her children *attend* a religious school, and does not plead that her or her family's religious beliefs are impacted or infringed by the law she challenges, she has no standing to raise a free exercise claim. *See McGowan v. Maryland*, 366 U.S. 420, 429 (1961) (finding no standing to raise a free exercise claim when the plaintiffs did "not allege any infringement of *their own* religious freedoms" (emphasis added)); *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 73 (2d Cir. 2001) (finding plaintiffs lacked standing under the Free Exercise Clause because none of them "could meet the requirement that they assert violations of their own particular religious freedoms").

Even if Parr did have standing to bring a challenge to section 280.31 under the Free Exercise clause, she fails to state a claim. First, she fails to explain how section 280.31 impairs or injures her (or anyone's) religious practice. Unlike the plaintiff schools in the case she cites, Monclova Christian Academy, religious schools will not be closed. It is unclear how the inability to require students and staff to wear masks impedes religious practice.

Second, Parr fails to state a claim because the law is both facially neutral as to religion and generally applicable to religious and secular schools. The First Amendment's Free Exercise Clause does not prohibit a state from enforcing a regulatory law that is both neutral and generally applicable. *Mitchell Cty. v. Zimmerman*, 810 N.W.2d 1, 8 (Iowa 2012). Section 280.31 is clearly facially neutral

toward religion and makes no reference to it. Importantly, it is also generally applicable. In determining whether a statute is "generally applicable," courts examine whether a statute makes exceptions for secular interests or accommodates them in a way it does not for religious interests. In the landmark case Parr cites, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the City forbade animal killing only in religious observance, making exceptions for other contexts, thus accommodating secular interests but not religious ones. In *Mitchell County*, an Iowa case presenting a similar issue, the county enacted an ordinance forbidding steel-wheeled vehicles on county roads, which burdened Mennonites who drove steel-wheeled tractors, but made exceptions for school buses with ice grips and other metal wheeled vehicles. The court examined this ordinance under strict scrutiny and struck it down. *Mitchell County*, 810 N.W.2d at 18. No such concerns are implicated by section 280.31 or pled by Parr.

The Sixth Circuit case Parr cites in support of her Free Exercise claim is easily distinguished. *Monclova Christian Acad. v. Toledo-Lucas Cty. Health Dep't*, 984 F.3d 477 (6th Cir. 2020), *reh'g denied* (Jan. 6, 2021) In this *Monclova*, crucially, the parochial school plaintiffs appeared to present their own claims, and therefore had standing. *Id.* at 480 (plaintiffs emphasize that "a communal in-person environment" in school is critical to the exercise of their faith). The parochial schools were closed by the Toledo-Lucas County Health Department, while other public spaces, like gyms and offices, remained open. *Id.* at 479. The plaintiff religious schools were able to explain burdened their religious exercise. Here, no religious school or public schools

have been closed. *Id.* at 480. The situation Parr complains of here is drastically different. It is not clear that section 280.31 impacts anyone's religious exercise at all. There is a huge difference between an order forcing a school to close and a statute imposing a regulation about masks on an already highly regulated institution. It certainly has not impacted Parr's religious exercise, and the schools she claims to plead for do not appear before this Court.

## III.   The drastic remedy of mandamus cannot be used to implement a statewide mask mandate in schools.

Mandamus "is a drastic remedy to be applied only in exceptional circumstances." *Hewitt*, 356 N.W.2d at 233. Even assuming the COVID-19 pandemic constitutes exceptional circumstances, however, mandamus is not an available or appropriate procedural mechanism to resolve this specific dispute. As to some Defendants, another adequate (and exclusive) remedy exists, and regardless, Parr's petition facially does not satisfy the standards for mandamus relief.

### A.   Judicial review under chapter 17A is the exclusive method to challenge action or inaction by IDOE, IDPH, Lebo, and Garcia.

Judicial review under chapter 17A is "the exclusive means by which an aggrieved or adversely affected party may seek judicial review" of agency action or inaction. *Tindal v. Norman*, 427 N.W.2d 871, 872 (Iowa 1988). Exclusivity under chapter 17A is properly decided on a motion to dismiss. *Papadakis v. Iowa State Univ.*, 574 N.W.2d 258, 261 (Iowa 1997) (affirming a district court's decision to grant a motion dismiss on chapter 17A exclusivity grounds because all "the information

necessary to characterize [Iowa State University] as an 'agency' and the issue in dispute as 'agency action' appear[s] on the face of [the] petition").

If a controversy "seeks review of agency action," chapter 17A "must be adhered to." *Tindal*, 427 N.W.2d at 872; *accord Kerr v. Iowa Pub. Serv. Co.*, 274 N.W.2d 283, 287 (Iowa 1979) (concluding if a person challenges agency action, "the exclusivity of [chapter 17A's] judicial review provisions can not be disregarded"). So a natural question arises: how is the Court to tell if a controversy seeks review of agency action? The answer is straightforward.

Agency action includes "performance of any agency duty," the failure to perform an agency duty, "or a failure to act." Iowa Code § 17A.2(2). In turn, judicial review is an exclusive remedy if "the action or inaction of the agency in question bears a discernible relationship to the statutory mandate of the agency." *Ghost Player, L.L.C. v. State*, 860 N.W.2d 323, 328 (Iowa 2015). IDOE's statutory mandate includes "general supervision over the state system of education." Iowa Code § 256.1(1). IDPH exercises "general supervision over the public health." *Id.* § 135.11(1). IDPH may take measures "to prevent the transmission of infectious disease," *id.* § 135.144(3), which can include ordering temporary school closures, *see id.* § 135.144(13). Accordingly, the fact that neither agency has issued a statewide school mask mandate qualifies as agency action or inaction, and bears a discernible relationship to both agencies' statutory mandates and powers. Parr alleges she has made requests of these agencies that have been denied. (2d Am. Pet. ¶¶ 19–24). Judicial review is therefore the

exclusive remedy for challenging these agencies' decisions not to issue, or refusals to issue, a school mask mandate.

**B.   Judicial review is a plain, speedy, and adequate remedy that makes mandamus unavailable.**

"[M]andamus shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law." Iowa Code § 661.7; *accord Moderate Income Hous., Inc. v. Bd. of Review*, 393 N.W.2d 324, 325 (Iowa 1986). "As a general rule where a statutory remedy has been provided it will bar the right to mandamus." *Allgood v. City of Oskaloosa*, 231 Iowa 197, 199, 1 N.W.2d 211, 212 (1941). Here, because the statutory judicial review remedy is available and adequate—and indeed is *exclusive* with respect to IDOE, IDPH, Lebo, and Garcia— mandamus cannot issue.

Judicial review is available. A petition for judicial review may challenge any final agency action. *See* Iowa Code §§ 17A.19, 17A.23(2). IDOE and IDPH are both agencies under chapter 17A. *See id.* § 17A.2(1) (defining "agency" to include each department of the state); *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 342 (Iowa 2013) (concluding IDPH is an agency under Iowa Code chapter 17A); *Wellsburg-Steamboat Rock Cmty. Sch. Dist. v. Iowa Dep't of Educ.*, 523 N.W.2d 749, 749 (Iowa 1994) (referring to IDOE as "the agency" in a "chapter 17A judicial review proceeding"). And Parr cannot avoid this exclusive judicial review by trying to name the directors of the agencies—Director Lebo and Director Garcia—instead. Agency action includes agency inaction. *See* Iowa Code § 17A.2(2); *Lewis Cent. Educ. Ass'n v. Iowa Bd. of Educ. Exam'rs*, 625 N.W.2d 687, 692 (Iowa 2001) (concluding an agency's

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

"refusal to act is judicially reviewable"); *City of Waukee v. City Dev. Bd.*, 514 N.W.2d 83, 89 (Iowa 1994) ("[T]he term 'agency action' includes a decision not to act or the failure to act or perform a duty."). Accordingly, Parr's contention that IDOE, IDPH, Director Lebo, and Director Garcia have ignored or refused her requests to issue a school mask mandate are properly characterized as agency action—and therefore subject to challenge through judicial review under Iowa Code chapter 17A. And because that judicial review remedy is available, mandamus is in turn *not* available— as long as judicial review is "plain, speedy, and adequate." Iowa Code § 661.7.

Judicial review is indeed adequate. Certiorari is an adequate remedy "that precludes the use of a mandamus action." *Stafford*, 298 N.W.2d at 309. Certiorari is analogous to judicial review; indeed, "the judicial review provisions of section 17A.19 have," with respect to agency action, "*supplanted* review . . . by common-law writs such as certiorari." *Dawson v. Iowa Merit Emp't Comm'n*, 303 N.W.2d 158, 159 (Iowa 1981) (emphasis added). The right to *appeal* is also an adequate remedy that precludes mandamus. *See, e.g.*, *Hewitt*, 356 N.W.2d at 233; *Reed v. Gaylord*, 216 N.W.2d 327, 331–32 (Iowa 1974); *Lanphier v. Tracy Consol. Sch. Dist.*, 277 N.W. 740, 742 (Iowa 1938) (concluding a right of appeal meant the "remedy at law is adequate, and mandamus cannot be brought"). And appeal is analogous to judicial review because "in exercising judicial review of agency action," a district court "acts in an appellate capacity." *Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 45 (Iowa 2018). Further, even an administrative appeal under a chapter of the code "furnish[ed] a clear, speedy, convenient, complete and effective remedy" that made

mandamus unavailable. *Allgood*, 231 Iowa at 200, 1 N.W.2d at 212. Most importantly, however, the Legislature would not logically have created an exclusive judicial review remedy if that remedy would be inadequate for mandamus purposes.

Together, these authorities and principles demonstrate that judicial review is both available in this case and analogous (in terms of adequacy) to certiorari or other appeals that have made mandamus inappropriate in other cases. Accordingly, the Court must dismiss the mandamus claim as to the State, IDOE, IDPH, Director Lebo, and Director Garcia because another remedy is available, adequate, and exclusive. *See Stafford*, 298 N.W.2d at 309–10.

This "exclusivity defense" applies only to the State, IDOE, IDPH, Director Lebo, and Director Garcia—not the Governor. But Parr's mandamus claim must still be dismissed, against the Governor *and* the other Defendants, because even setting aside procedural infirmities, mandamus is substantively unavailable under the circumstances presented here.

### C. There is no established, clear and certain duty to issue a statewide school mask mandate.

"Mandamus is not available to establish legal rights" in the first instance. *Stafford*, 298 N.W.2d at 309. The mandamus plaintiff's "right to the performance of the act [s]he seeks to compel must be clear, certain and free from the possibility of any reasonable controversy." *Headid v. Rodman*, 179 N.W.2d 767, 770 (Iowa 1970). That is precisely where Parr's petition falters.

Parr sets out factual allegations asserting, for example, that "masks are a critical tool in the fight against" COVID-19. (2d Am. Pet. ¶ 12). But at most, these

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

facts establish Parr's belief that a statewide school mask mandate would be a good idea—not that one is legally *required*. Mandamus is not available to enforce policy preferences—only unambiguous legal requirements. And there is no unambiguous legal requirement to issue a mask mandate in the same way as, for example, there is a clear and certain duty for a district court clerk "to file and note all documents presented . . . for filing." *Dwyer v. Clerk of Dist. Ct.*, 404 N.W.2d 167, 170 (Iowa 1987). Indeed, Parr's petition illustrates the problem—it asserts a general duty to protect health and well-being, (2d Am. Pet. ¶¶ 18, 21, 23), but then expands that purported duty to include—without support—the specific duty *to issue a mask mandate*. (*Id.* ¶ 61). This disconnect is fatal to Parr's mandamus claim because Parr does not offer any source for this purportedly clear and certain duty.

Because mandamus only enforces existing legal rights and Parr does not identify any source for a purported clear and certain existing duty to issue a mask mandate, her mandamus claim must be dismissed.

**D. The State's considerable discretion regarding how to address a pandemic means a writ of mandamus ordering a specific action is inappropriate.**

"Where discretion is left to the inferior tribunal or person" sought to be compelled through mandamus, the writ "can only compel it to act, but cannot control such discretion." Iowa Code § 661.2. The State has considerable discretion to act during a disaster emergency. For example, the Governor may suspend statutes and rules "if strict compliance . . . would in any way prevent, hinder, or delay necessary action in coping with the emergency." *Id.* § 29C.6(6). The Governor may also cooperate

with the federal government, transfer personnel or government functions, direct evacuations, control ingress and egress, and even commandeer private property. *See id.* § 29C.6(9)–(13). During a public health disaster, IDPH, in conjunction with the Governor, may take measures to prevent the spread of disease, vaccinate people or order vaccinations, issue isolation and quarantine orders, and even close schools. *See id.* § 135.144(3), (6), (8), (13). Mask mandates are not specifically enumerated, but if the State can *close* schools entirely, it follows logically that lesser restrictions could also be imposed.

Linguistically, though, these powers are discretionary because they follow the word "may." *See Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 443 (Iowa 2017) ("When the legislature uses the term 'may' in a statute, it is usually permissive."); *see also* Iowa Code § 4.1(30)(*a*), (*c*). When a power is discretionary, that means the State or the relevant agency retains the ability not to use or invoke it. *See Kopecky*, 891 N.W.2d at 443–44 (concluding that the word "may" in the relevant statute meant the Iowa Racing and Gaming Commission could, but was not required to, issue gambling licenses following a referendum authorizing gambling games in a given county). And when a power is discretionary rather than a mandatory duty, and the State does not invoke the discretionary power, mandamus is not appropriate. *See Koenigs v. Mitchell Cty. Bd. of Supervisors*, 659 N.W.2d 589, 595 (Iowa 2003) ("Because the County does not have a duty to maintain the ditch, a mandamus action was not appropriate in this case.").

48

Discretion is also necessary from a practical standpoint. Discretion means the State's significant emergency powers can be tailored in each instance to the precise emergency the State is facing; or deployed aggressively and in widespread fashion at the risk of seeming like too much in hindsight; or used cautiously and with recognition of their significance; or invoked in any combination of those approaches as time passes and conditions change. Emergency powers are parts of a toolkit that can be utilized, or not, at the State's discretion. *See* Emily Berman, *The Roles of the State and Federal Governments in a Pandemic*, 11 J. Nat'l Security L. & Pol'y 61, 63 (2020) [hereinafter Berman] ("[E]ach state possesses multiple tools to wield against infectious-disease outbreaks."). Put simply, there is not any one-size-fits-all solution for a pandemic—and yet Parr's requested mandamus relief seeks to impose one.

*Chicago Central* illustrates the distinction. There, the Iowa Supreme Court recognized that "if a party believes a board of supervisors is not performing its statutory duty to keep a drainage improvement in repair, that party's remedy is a mandamus action to compel the board to perform its duty." *Chi. Cent.*, 816 N.W.2d at 374. But the Court further recognized that if a district court utilized mandamus and ordered "the board to make repairs, *how* the board chooses to make the repairs" remained within the board's discretion. *Id.* (emphasis added). Likewise here, even assuming a duty to protect health, mandamus cannot control *how* the State does so. *See Schaller v. State*, 537 N.W.2d 738, 744 (Iowa 1995) (noting that mandamus could not require the State specifically to "acquire either a fee title or a leasehold interest"

49

in property, and modifying a mandamus order to permit acquisition of an easement
if the agency so chose).

The State unquestionably has the power take pandemic countermeasures, but
which measures to take, when to take them, and how to implement them—and
indeed, even whether to take them in the first place—are all matters of discretion.
*See* Berman, 11 J. Nat'l Security L. & Pol'y at 64 (noting courts "have extended state
officials significant leeway in determining what is required to address public-health
risks"). Mandamus cannot control the exercise of discretion. Iowa Code § 661.2; *see
also Bellon v. Monroe Cty.*, 577 N.W.2d 877, 879 (Iowa Ct. App. 1998) (rejecting
mandamus relief when the county had "discretion in both classifying county roads
and in determining the level of maintenance for a road").

Because Parr's petition seeks to control the State's discretion by requiring it to
take a specific (and optional) action, the petition cannot move forward and the case
must be dismissed.

## IV.   Parr's requests for declaratory and injunctive relief all fail.

Beyond her mandamus claim, Parr also seeks separate declaratory and
injunctive relief apart from her requests to invalidate section 280.31. These claims
must be dismissed too.

### A.   Declaratory and injunctive relief are unavailable because judicial review cannot be discarded at will in favor of common-law writs.

Judicial review is the exclusive method for reviewing actions taken (or not
taken) by IDOE, IDPH, Lebo, and Garcia. Iowa Code § 17A.19. "There is no basis on

which to conclude the 'exclusive means' language in section 17A.19 is mitigated by an exception for common-law writs such as certiorari, *declaratory judgment, or injunction.*" *Salsbury Labs.*, 276 N.W.2d at 835 (emphasis added); *see also Wright*, 254 Iowa at 351, 117 N.W.2d at 525 (noting the Iowa Supreme Court has approved "denial of declaratory relief because of the existence of another remedy . . . where the other remedy is intended to be exclusive"). Because chapter 17A provides the exclusive remedy, declaratory relief is unavailable and must be denied. Chapter 17A contains no exception for declaratory judgment or injunction. *Salsbury Labs.*, 276 N.W.2d at 835. Parr's requests for declaratory and injunctive relief must be dismissed.

### B.   Parr did not exhaust administrative remedies by seeking a declaratory order from one or more applicable agencies before seeking judicial declaratory relief.

This court lacks authority to hear Parr's requests for declaratory relief against IDOE, IDPH, Director Lebo, and Director Garcia. "[W]hen a party initiates a district court declaratory judgment action to obtain an adjudication entrusted exclusively in the first instance to an administrative agency, the action *must be dismissed* unless it is indistinguishable in substance from a petition for judicial review and all of the jurisdictional prerequisites for judicial review of agency action . . . have been met." *City of Des Moines v. Des Moines Police Bargaining Unit Ass'n*, 360 N.W.2d 729, 730 (Iowa 1985) (emphasis added). The Court "lacks authority to entertain particular declaratory judgment suits in which its jurisdiction has not been properly invoked." *Id.*

The Court's jurisdiction has not been properly invoked here. Parr seeks a declaration that Iowa Code section 280.31 "does not prevent . . . a universal mask mandate for all Iowa [s]tudents and school personnel." (2d Am. Pet. ¶ 64).   IDOE has the power to "[i]nterpret the school laws." Iowa Code § 256.9(16). Iowa Code chapter 17A contains a mechanism "intended to allow a ruling on any species of law, however denominated, that is administered by the agency." *City of Des Moines*, 360 N.W.2d at 731. That mechanism is a petition for declaratory order. One way IDOE can interpret the school laws in accordance with its statutory authorization is to rule on petitions for declaratory order, which "[a]ny person" can file. Iowa Code § 17A.9(1)(*a*).

"[T]he legislature intended declaratory orders to serve as a practical alternative to judicial declaratory judgments." *Iowa Ins. Inst. v. Core Grp.*, 867 N.W.2d 58, 65 (Iowa 2015); *see also Sierra Club*, 832 N.W.2d at 646 (noting the declaratory order process is intended "to replace the court-provided remedy of declaratory judgments"). The law "require[s] exhaustion of the declaratory ruling procedure before resort to the courts." *City of Des Moines*, 360 N.W.2d at 733; *accord Sierra Club*, 832 N.W.2d at 648 (concluding "the exhaustion doctrine bars" a petition for declaratory judgment against an agency when the petitioner did not "first seek a declaratory order"). Parr's request for declaratory judgment runs squarely into *Sierra Club* because she did not file a request for declaratory order with any agency before seeking declaratory relief in this lawsuit. The declaratory relief portion of this case is not properly before the Court and must be dismissed. *See Sierra Club*, 832 N.W.2d at 648.

**C.    Parr lacks standing to seek declaratory relief against any Defendant because even the declaration she seeks would not redress her asserted injury of "not having a mask mandate in place."**

Parr asks this Court to order the State to issue a school mask mandate. (2d Am. Pet. ¶ 61). Her request for declaratory relief is different, though: she seeks a declaration that Iowa law does not *prevent* the State from issuing a school mask mandate. (*Id.* ¶ 64). In other words, her goal is to have a mask mandate in place. But there is a step missing. Even a favorable ruling—a ruling that concludes Iowa law *doesn't* prevent the State from issuing a school mask mandate—does not rectify her concern that there isn't one in place. Whether the State *can* issue a school mask mandate is a different question from whether it *must*. "[T]raceability and redressability are a part of standing in Iowa." *Iowa Citizens*, ___ N.W.2d at ___, 2021 WL 2483412, at *6. Parr's request for declaratory relief fails the redressability element of standing and cannot proceed.

Parr's request for this Court to step in and issue a mask mandate when the State has not done so to her satisfaction closely resembles the assertions made in *Iowa Citizens for Community Improvement*. There, the plaintiffs sought to force the State to enact legislation addressing water quality in a different or more thorough manner than it had previously done. *Id.* at ___, 2021 WL 2483412, at *1. The Iowa Supreme Court concluded even a favorable court decision would not redress the plaintiffs' claimed injuries, and dismissed the case for lack of standing. *See id.*

"Think about it this way: If the court can't fix your problem, if the judicial action you seek won't redress it, then you are only asking for an advisory opinion."

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

*Id.* at ___, 2021 WL 2483412, at *7. Parr's request for declaratory relief runs squarely into this simple explanation. Parr's asserted problem is that the State has not issued a statewide school mask mandate. But even granting the declaratory relief she seeks won't impose one—only clarify that there is no statutory *barrier* to doing so. That is "only asking for an advisory opinion," *id.*, and accordingly cannot proceed. Declaratory relief must be connected to the harms the plaintiff alleges. *See id.* at ___, 2021 WL 2483412, at *10. Without a connection that would redress the plaintiff's alleged harm, "standing is absent in this case." *Id.*

### D. Parr lacks standing to seek an injunction to prevent an "Anti-Mask Mandate."

Parr's request for injunctive relief seeks to prevent the State "from issuing an anti-mask mandate." (2d Am. Pet. ¶ 66). But there is no indication, and not even any allegation, that an anti-mask mandate is threatened or imminent. In other words, "[t]his action . . . is brought upon a mere contingency." *Dodge v. City of Council Bluffs*, 10 N.W. 886, 889 (Iowa 1881). Equitable relief such as an injunction aims "to prevent injuries which are imminent, not merely possible." *Id.* In other words, any harm Parr claims she will suffer from a speculative future "anti-mask mandate" is "anticipatory, which . . . is not sufficient for standing." *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 870 (Iowa 2005); *accord Lessenger v. City of Harlan*, 168 N.W. 803, 807 (Iowa 1918) ("Unless damage to the plaintiff is . . . reasonably apprehended, [s]he has no ground

E-FILED  2021 SEP 08 11:43 AM POLK - CLERK OF DISTRICT COURT

on which to base an injunction."). Without standing to seek the precise injunction her petition pleads, Parr's request for injunctive relief must be dismissed.

Parr's petition also alleges the State's "refusal to address the existence of anti-mask mandates." (2d Am. Pet. ¶ 66). If her aim in so pleading is to strike down an "anti-mask mandate" she asserts is already in place, an injunction cannot do so. Past injuries do not justify the forward-looking remedy of injunctive relief. *See, e.g.*, *Dobrovolny*, 173 N.W.2d at 841; *Iowa Natural Res. Council*, 261 Iowa at 1292, 158 N.W.2d at 115; *Universal Loan*, 237 N.W. at 437 (Iowa 1931) ("When . . . the acts sought to be enjoined had been performed at the time the action for injunction was commenced, the petition is properly dismissable.").

## CONCLUSION

"[S]pecific challenges to the educational policies of this state are properly directed to . . . elected representatives, rather than the courts." *King*, 818 N.W.2d at 5 (majority opinion). Parr's desire for a statewide school mask mandate is an issue "currently being debated throughout our state," but "the democratic process is best suited for resolution of those debates and can best accommodate the competing concerns of the many interested parties." *Id.* at 36. This Court is not the place—and Parr's lawsuit as pled is not the appropriate method or vehicle—for resolving it.

The State respectfully requests that the Court dismiss this case, assess all costs to Parr, and award any other relief appropriate under the circumstances.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

*/s/ David M. Ranscht*
DAVID M. RANSCHT

*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ

*/s/ Jordan G. Esbrook*
JORDAN G. ESBROOK
Assistant Attorneys General
Iowa Department of Justice
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone: (515) 281-7175
Fax: (515) 281-4209
david.ranscht@ag.iowa.gov
sam.langholz@ag.iowa.gov
jordan.esbrook@ag.iowa.gov

ATTORNEYS FOR DEFENDANTS

| PROOF OF SERVICE |
| --- |
| The undersigned certifies that the foregoing instrument was served upon all parties of record by delivery in the following manner on September 8, 2021: |

| ☐ U.S. Mail | ☐ FAX |
| ☐ Hand Delivery | ☐ Overnight Courier |
| ☐ Federal Express | ☐ Other |
| ☒ EDMS | |

Signature: */s/ Samuel P. Langholz*