IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| THE ARC OF IOWA et al., | Case No. 4:21-CV-00264-RP-SBJ |
| Plaintiffs, | |
| v. | **DEFENDANTS GOVERNOR KIM REYNOLDS AND ANN LEBO'S RESISTANCE TO MOTION FOR PRELIMINARY INJUNCTION** |
| KIM REYNOLDS, in her official capacity as Governor of Iowa, et al. | |
| Defendants. | |

COME NOW Defendants Governor Kim Reynolds and Ann Lebo (collectively,

"the State") and submit this Resistance to Motion for Preliminary Injunction.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 2

STANDARD FOR PRELIMINARY INJUNCTION ..................................................... 4

ARGUMENT ..................................................................................................... 6

    I.   Plaintiffs are not harmed by section 280.31 because it doesn't prevent schools from complying with federal law and enjoining its enforcement doesn't redress Plaintiffs' alleged harms because such relief doesn't provide a universal mask mandate. ................................................................. 6

    II.   Plaintiffs are unlikely to succeed on the merits of their claims because neither federal disability law nor the American Rescue Plan Act of 2021 requires universal mask mandates in schools or requires schools to have the discretion to implement such mandates.................................................. 9

        A.   Federal disability law doesn't require schools to impose—or to have the discretion to impose—universal mask mandates.................. 9

            1.   Section 280.31's prohibition on school districts adopting universal mask mandates is a neutral nondiscriminatory policy. ...................................................................... 9

            2.   A universal mask mandate in schools is not a reasonable modification and other reasonable modifications exist.......... 11

3.   Plaintiffs failed to exhaust their administrative remedies under the IDEA.................................................................... 15

B.   ARPA doesn't require schools to impose—or have the discretion to impose—universal mask mandates. .................................... 19

III. The balance of the harms and the public interest do not support enjoining a duly enacted statute that has been in effect for nearly four months that upsets the status quo and causes unnecessary confusion and conflict throughout Iowa.............................................................................. 23

CONCLUSION.................................................................................................. 25

# INTRODUCTION

Nearly four months ago, the Legislature passed, and Governor Reynolds signed, legislation enacting section 280.31 of the Iowa Code into law. *See* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Act § 28 (to be codified at Iowa Code § 280.31). That statute became effective immediately, *see id.* § 31, and provides:

> The board of directors of a school district, the superintendent or chief administering officer of a school or school district, and the authorities in charge of each accredited nonpublic school shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's or accredited nonpublic school's property unless the facial covering is necessary for a specific extracurricular or instructional purpose, or is required by section 280.10 or 280.11 or any other provision of law.

*Id.* § 28.

Plaintiffs sued Governor Reynolds, Iowa Department of Education Director Ann Lebo, and ten school districts, alleging that section 280.31 violates title II of the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act, and the American Rescue Plan Act of 2021 ("ARPA"). Compl., Doc. 1 ¶ 76–102. And this Court granted their requested temporary restraining order enjoining all Defendants "from enforcing Iowa Code section 280.31 banning local public school districts from

utilizing their discretion to mandate masks for students, staff, teachers, and visitors." TRO Order at 29; *see also* Compl., Doc. 1, at 37 ¶ 4.

But the extraordinary remedy of preliminary injunctive relief sought by Plaintiffs remains unnecessary and inappropriate. Enforcement of section 280.31 is not the source of Plaintiffs alleged harms and enjoining it will not redress them. Section 280.31 doesn't prevent schools from complying with federal law and enjoining its enforcement won't necessarily provide them a universal mask mandate.

Even looking past these defects, Plaintiffs are unlikely to succeed on the merits of their novel claims. Section 280.31 is a neutral, nondiscriminatory State policy set in statute and thus doesn't violate federal disability law. Universal mask mandates in schools are not a reasonable modification to this policy because it would be an undue burden, fundamentally alter the nature of the State's education program, and infringe on the rights of others. And Plaintiffs are barred from asserting these claims because they haven't exhausted administrative remedies or properly pursued reasonable modifications for their disabilities.

Plaintiffs' alternative claim based on ARPA also fails. Neither the text of the ARPA statute nor the agency guidance requires schools to impose—or have the discretion to impose—universal mask mandates. And interpreting either to impose such a requirement would raise serious constitutional concerns.

Finally, the balance of the harms and the public interest do not support enjoining a duly enacted statute that has been in effect for nearly four months,

upsetting the status quo, and causing unnecessary confusion and conflict throughout Iowa.

Plaintiffs are understandably concerned about the health and education of their children. But this lawsuit is not the proper tool to accomplish their goals. Instead, they could seek appropriate reasonable modifications from their schools to protect their health and meet their educational needs. Or they could advocate for increased public health measures or changes to section 280.31 to their elected Governor and legislators. The law does not provide them the relief they seek. Plaintiffs' request for a preliminary injunction should be denied and the temporary restraining order should be allowed to expire.[1]

## STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The power to grant a preliminary injunction has been called "an awesome power" that "necessarily requires the Court to analyze the record carefully to determine whether Plaintiff has shown that it will be irreparably harmed absent the issuance of the requested relief."

---

[1] Because this Court issued the temporary restraining order on September 13 and provided it "shall remain in full force and effect until the Court enters an Order on Plaintiffs' request for a preliminary injunction," this Court must rule on Plaintiffs' request on or before September 27, when the 14-day time limit on temporary restraining orders expires. *See* Fed. R. Civ. P. 65(b)(2). This time limit applies even to a temporary restraining order—like this one—that was entered after a hearing. *See Quinn v. Missouri*, 839 F.2d 425, 426 (8th Cir. 1988); *Waste Mgmt., Inc. v. Defenbaugh*, 534 F.2d 126, 129 (8th Cir. 1976) (holding that a temporary restraining order that had been issued after an evidentiary hearing had "extended beyond the permissible time limit . . . must be treated as if it were a preliminary injunction"); *see also Chicago United Indus. V. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006); *Nutrasweet Co. v. Vit-Mar Enters.*, 112 F.3d 689, 692–94 (3d Cir. 1997).

*Mediacom Communications Corp. v. Sinclair Broad. Group, Inc.*, 460 F. Supp. 2d 1012, 1017 (S.D. Iowa 2006).

Courts in the Eighth Circuit apply a four-part test—generally called the *Dataphase* factors—to determine whether preliminary injunctive relief is appropriate. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir. 1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (1981) (en banc)). The four *Dataphase* factors are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Id.* Ordinarily, "[n]o single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

But when a preliminary injunction seeks to "enjoin the implementation of a duly enacted state statute," a district court must "make a threshold finding that a party is likely to prevail on the merits." *Planned Parenthood Minn., N.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc). Only if a plaintiff makes this threshold showing should the court "then proceed to weigh the other *Dataphase* factors." *Id.* at 732. This "more rigorous standard" is intended "to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis." *Id.* at 733.

## ARGUMENT

**I.    Plaintiffs are not harmed by section 280.31 because it doesn't prevent schools from complying with federal law and enjoining its enforcement doesn't redress Plaintiffs' alleged harms because such relief doesn't provide a universal mask mandate.**

Section 280.31 doesn't prohibit any actions of a school where "the facial covering . . . is required by . . . any other provision of law." Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Act § 28 (to be codified at Iowa Code § 280.31). So if Plaintiffs are correct that federal law requires some facial coverings in schools, section 280.31 doesn't prohibit it. No injunction of the statute's enforcement is required. A school already has it within its power to comply with any requirement of federal law.

To be sure, as discussed below in Part II, the State disputes that the ADA, the Rehabilitation Act, or ARPA impose any federal requirement that a universal mask mandate be imposed in all Iowa schools—or that they require local school decisionmakers to have the discretion to impose such universal mandates rather than the Governor. And presumably Iowa schools and their lawyers have come to the same conclusion since none acted to impose a district-wide, or building-wide universal mask mandate based on some requirement of federal law before this Court's temporary restraining order. But it any event, there's no need to enjoin enforcement of section 280.31.

Plaintiffs' requested preliminary injunction isn't just unnecessary—it's also insufficient to redress their alleged irreparable harms. They assert that their irreparable harms are "heightened risk of exposure" to COVID-19 if they attend in-person school or "loss of educational opportunities" if the students are removed from

school. Mem. of Authorities in Support of Mtn. for PI & TRO, Doc. 17, at 13–14. And they believe that "[i]f everyone were wearing a mask," these harms would be avoided and "their children would be safe." *Id.* at 12.

But Plaintiffs are not asking this court for an injunction requiring everyone in their children's schools to wear a mask. They seek only to enjoin Governor Reynolds and Director Lebo from enforcing section 280.31. Compl., Doc. 1, at 37 ¶ 4. That won't remedy their claimed harm. It's dependent on the actions of independently elected school boards to decide whether they will in fact implement a universal mask mandate in their school districts like Plaintiffs hope. This lack of redressability is an Article III standing concern with the relief that Plaintiffs seek. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring showing that injury is "fairly . . . trace[able] to the challenged action of the defendant"). And it shows that a preliminary injunction granting such relief is inappropriate.

True, since this Court issued its temporary restraining order, some schools attended by some Plaintiffs have imposed a universal mask mandate. *See, e.g.*, Press Release, *Des Moines Public Schools Will Reinstate Mask Mandate* (Sept. 14, 2021), https://perma.cc/CB3R-NBG6; Anthony Watt, *"A Safe Learning Environment: Inside the Davenport School District's Debate to Mask Up*, Quad-City Times (Sept. 16, 2021), https://perma.cc/RJ8N-HXPQ. But the mask mandates might not be maintained— that depends on actions of third parties not being required by court order to provide

such a mandate. Defendant Linn Mar Community School District decided to impose a mandate only for students sixth grade and younger and set it to expire 60 days after vaccines are available for children under twelve. *See* Trevor Oates, *Linn-Mar School Board Approves Mask Mandate for PK-6 Students*, KWWL (Sept. 16, 2021), https://perma.cc/MG3B-VVRU. And other districts have decided not to impose mandates or are delaying any decision, even after the order, showing that this injunction didn't remedy their harms. *See* Scott Carpenter, *Johnston School Board Tables Decision to Institute a Mask Mandate*, KCCI (Sept. 15, 2021), https://perma.cc/8X2L-LH6Z; Teresa Kay Albertson, *Ankeny School Board Debates Mask Mandate as Crowd Voices Concerns about 'Body Autonomy', 'Freedom of Choice,'* Des Moines Reg. (Sept. 14, 2021), https://perma.cc/SH6S-AMNP; *see also Mask Mandate Fails to Pass at Special Sioux City School Board Meeting*, Radio Iowa (Sept. 16, 2021), https://perma.cc/PR5H-VWXE; Taj Simmons, *Waukee School Board Votes in Opposition of Mask Mandate Within the District,* WHO 13 (Sept. 16, 2021), https://perma.cc/55XJ-YKH9.

Plaintiffs' requested injunction is divorced from their alleged harm and any likely valid legal claim. Because of this lack of standing, they are unlikely to succeed on the merits and fail to show the injunction will remedy irreparable harm. Their request for a preliminary injunction should be denied.

II.     **Plaintiffs are unlikely to succeed on the merits of their claims because neither federal disability law nor the American Rescue Plan Act of 2021 requires universal mask mandates in schools or requires schools to have the discretion to implement such mandates.**

Plaintiffs assert that section 280.31 violates three federal laws: title II of the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act, and the American Rescue Plan Act of 2021 ("ARPA"). Their pleading and briefing is unclear as to whether they assert that these federal laws require universal mask mandates in schools or merely that federal law requires school districts—rather than the Governor—to have discretion to impose such mandates. At the hearing on the temporary restraining order, counsel for Plaintiffs asserted it is only the latter, despite most of the Complaint and Declarations being devoted to showing the alleged need for universal mask mandates in schools. But regardless of the precise formulation of the claims, they fail. Neither federal disability law nor the American Rescue Plan Act of 2021 requires universal mask mandates in schools or requires schools to have the discretion to implement such mandates.

A.     **Federal disability law doesn't require schools to impose—or to have the discretion to impose—universal mask mandates.**

1.     **Section 280.31's prohibition on school districts adopting universal mask mandates is a neutral nondiscriminatory policy.**

Courts typically analyze disability discrimination claims under title II of the ADA and section 504 of the Rehabilitation Act together. *See, e.g.*, *Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754, 756 (8th Cir. 1998). Under both statutes, "a plaintiff must show that he was a qualified individual with a disability and that he was denied the benefits of a program, activity, or services by reason of that disability." *Id.* (citing

42 U.S.C. § 12132; 29 U.S.C. § 794(a)). And under both, when the denial occurs because of a neutral nondiscriminatory policy rather than because of a plaintiff's disability, no violation arises. *See Davis*, 138 F.3d at 756–57. It matters not whether the plaintiff "question the wisdom" of the policy. *Id.* at 756. The policy doesn't violate the federal statutes where it "applies to all students regardless of disability and rests on concerns unrelated to disabilities or misperceptions about them." *Id.* (cleaned up); *see also Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971–72 (8th Cir. 1999); *DeBord v. Bd. of Educ.*, 126 F.3d 1102, 1105–06 (8th Cir. 1997).

The Eighth Circuit has thus held that following a policy that all students in an intra-district transfer program must provide their own transportation is not disability discrimination. *See Timothy H.*, 178 F.3d at 972. Nor is following a policy to administer medication in schools only consistent with the maximum dosage recommended by the Physician's Desk Reference. *See Davis*, 138 F.3d at 756; *DeBord*, 126 F.3d at 1105–06. And these were just *policies* of school districts—not a duly enacted statute setting statewide education policy that is entitled to even greater respect.

Section 280.31 establishes a uniform nondiscriminatory policy that unless required by other law or a specific instructional or educational purpose, local schools cannot require students, employees, or visitors to wear face coverings. There's been no suggestion that the statute was adopted to single out individuals with disabilities. And it imposes no restriction on individuals—whether disabled or not—at all. To be clear, *all* students, employees, and visitors remain free to wear face coverings or take

any other health precautions they (or their parents) choose. The statute is mainly an allocation of decision-making authority entirely disconnected from disabilities. After passage of section 280.31, a universal mask mandate as a public health precaution can only be imposed by the Governor as a part of her emergency powers during a public health disaster, rather than by a school district. *See* Iowa Code §§ 135.144(3), 29C.6.

The alleged denial of Plaintiff's desired universal mask mandates in their children's schools, and their further alleged denial of education, is not caused because of their disability. If it's caused at all, it's because of this neutral, nondiscriminatory statute. And since title II of the ADA and the Rehabilitation Act do not override neutral local school district policies, they also do not provide a basis to override this statutory product of Iowa's democratic process.

### 2. A universal mask mandate in schools is not a reasonable modification and other reasonable modifications exist.

In granting the temporary restraining order, this Court concluded that Defendants are required to make "reasonable modifications" and that "[a] universal masking requirement instituted by a school is a reasonable modification." TRO Ruling at 26. But the Eighth Circuit has not decided "whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory." *Davis*, 138 F.3d at 757; *see also DeBord*, 126 F.3d at 1106; *see also* CERT; *cf. Alexander v. Sandoval*, 532 U.S. 275, 284-86 (2001) (holding that similar Title VI does not create private cause of action for

disparate-impact discrimination claims). So Plaintiffs can hardly be likely to succeed on a claim where the law is unsettled.

But even if reasonable modifications are required, a universal mask mandate is not a reasonable modification. A modification that imposes an undue administrative burden or a fundamental alternation in the nature of the State's education program is not reasonable. *See Davis*, 138 F.3d at 757 (holding that request to deviate from medication policy wasn't reasonable because it would "impose undue financial and administrative burdens on the district by requiring it to determine the safety of the dosage and the likelihood of future harm and liability in each individual case"); *Timothy H*, 178 F.3d at 972–73 (holding that request to establish a special free bus route would be "an undue financial burden and a fundamental alteration in the nature of the intra-district transfer program"); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929–30 (8th Cir. 1994) (holding that request to participate in high school baseball program as a nineteen year-old despite uniform age limit was not reasonable modification because it would "constitute a fundamental alteration in the nature of the baseball program" given its intent to protect younger athletes, have fair competition, and discouraging delays in education).

Modifying the uniform policy established by section 280.13 to impose a universal mask mandate in schools—or permitting schools to make those decisions—would be an undue burden and fundamentally alter the nature of the educational program established by the State. Modifying the policy to give schools discretion would void the Legislature's policy decision to take the highly contentious and

emotional issue of masks in schools from the responsibility of local schools, allowing that local leadership to devote their time to under important concerns. And imposing a universal mask mandate would impose the administrative and potential financial and legal burdens of enforcing a mask mandate on all students, distracting teachers and school administrators from their educational duties. It also can have negative educational and social consequences. *See* World Health Organization, *Advice on the Use of Masks for Children in the Community in the Context of COVID-19*, Aug. 21, 2020, *available at* https://perma.cc/TTQ8-PNHU (stating that "the benefits of wearing masks in children for COVID-19 control should be weighed against potential harm associated with wearing masks, including feasibility and discomfort, as well as social and communication concerns").

A universal mask mandate is also not a reasonable modification because it requires infringing on the rights of third parties—other students, employees, and visitors. In the employment context, the Eighth Circuit has repeatedly recognized that ADA doesn't require "accommodations that would violate the rights of other employees" and doesn't impose "obligation to terminate other employees or violate a collective bargaining agreement." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995); *see also Buckles v. First Data Resources, Inc.*, 176 F.3d 1098, 1100–02 (8th Cir. 1999) (rejecting "irritant-free work environment" as a reasonable accommodation for employee with severe sensitivity to strong smells); *Mason v. Frank*, 32 F.3d 315, 319 (1994) (holding that an accommodation isn't reasonable if it "would violate the rights of other employees under a legitimate collective bargaining agreement").

Plaintiffs' desired modification of a universal mask mandate is an imposition on the rights of all the other students and visitors to the school. And that is not reasonable.

That's all the more so here, where there are disability interests on both sides of the debate. Imposing a universal mandatory mask requirement can harm disabled students with social communication issues, such as those with autism, because it prevents the students from advancing "social skills and understanding the express of those around [the student] due to [the] fellow students and teachers wearing masks." Gronau Dec. (attached) ¶ 6; *see also* Givens Dec. (attached) ¶¶ 9–10. It can also harm disabled students with anxiety. *See* Gronau Dec. ¶¶ 4–6. And those who struggle with speech and pronunciation. *See* Givens Dec. ¶ 11. And those with asthma. Givens Dec. ¶¶ 7–8. And those with severe and painful sensory processing issues. *See* Parker Dec. (attached) ¶¶ 4–6, 12 (describing how wearing a mask feels like skin is "on fire or poked with sharp needles" creating "a 'traffic jam' in her brain and she essentially becomes 'paralyzed' in that moment)

Even the U.S. Department of Education acknowledges that any universal mask mandates in schools must attempt to provide reasonable accommodations. *See* U.S. Dep't of Educ., *Questions and Answers on Civil Rights and School Reopening in the COVID-19 Environment, available at* https://perma.cc/G88U-32SD, at 8–9. The Legislature could conclude that where there are interests such as these on both sides that it would remove the issue of universal mask mandates from local schools. And modifying this decision to permit (or require) universal mandates is a fundamental alternation and undue burden. It's not reasonable.

Plaintiffs could seek other modifications that would be reasonable. And section 280.31 doesn't prevent schools from engaging with students to provide such modifications. Those could include, for example, greater personal protective equipment for the student (such as a higher quality N95 mask), greater social distancing, or perhaps if justified by the particular facts even limited masking of teachers or students while interacting closely with the individual. Some Plaintiffs assert that they have asked for such modifications, but the schools aren't providing or following through on the agreement.[2] *See* Preston Dec., Doc. 3-11, ¶ 18; Geest Dec., Doc. 3-12, ¶¶ 9–12; Roise Dec., Doc. 3-5, ¶ 10; Devereaux Dec., Doc. 3-10, ¶ 10. But if this is so, that's a harm being caused by the school, not enforcement of section 280.31 by the State. And such a failure doesn't support a claim against the State or this requested preliminary injunction.

### 3. Plaintiffs failed to exhaust their administrative remedies under the IDEA.

This Court need not even reach these questions about the scope of federal disability law because Plaintiffs have failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). This dooms their claims.

The IDEA ensures that children with disabilities receive a "free appropriate public education," known as a FAPE. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. at 743, 748 (2017). And the IDEA sets up a comprehensive procedure to provide a FAPE,

---

[2] Failing to request a modification poses another reason some Plaintiffs claims are unlikely to succeed. *Cf. Ballard v. Rubin*, 284 F.3d 957, 960–61 (8th Cir. 2002).

starting with the development of an individualized education program ("an IEP") and then progressing through an administrative process to resolve disputes between a school and a family that can ultimately lead to a hearing before a neutral administrative law judge and then judicial review in state or federal court. *See id.* at 748–49; *see also* Iowa Code §§ 256B.2(2), 256B.4, 256B.6; Iowa Admin. Code r. 281-41.321–.328 (IEP process), 281-41.506 (mediations); 281-41.507–.518 (due-process hearings).

While Plaintiffs sue under title II of the ADA and section 504 of the Rehabilitation Act—rather than under IDEA—they must still exhaust the administrative remedies provided by the IDEA if they are "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*); *see also Fry*, 137 S. Ct. at 750 ("[A] plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures."). This "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education." *Fry*, 137 S. Ct. at 754. If the suit claims discrimination in a way that does not result in denial of a FAPE, then exhaustion is not required "because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE. *Id.* at 755. In conducting this analysis, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*; *see also J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948–49 (8th Cir. 2017) (holding that gravamen of claim was denial of FAPE where parent alleged

disabled student was in physical restraints for half of his school days and thus
"'denied . . . because of his disability, participation in and the benefits of a public
education'" (quoting the complaint)).

Plaintiffs allege that the lack of a universal mask mandate—or perhaps the
lack of their schools authority to be able to consider such a mandate—is excluding
them from receiving their education. *See* Compl, Doc. 1, ¶ 56 ("Students with
disabilities who are unable to safely return to brick-and-mortar schools because of
continued health concerns are being excluded from the public school system . . . .");
*id.* ¶ 59 ("Iowa state officials have effectively excluded these students from
participation in the public education system . . . ."); *id.* ¶ 58 ("Thus the Defendants'
actions will have the perverse effect of either placing children with disabilities in
imminent danger or unlawfully forcing those children out of the public school
system."); *id.* ¶ 57 (complaining of lack of "virtual learning" and that "virtual learning,
even if available, is not a viable or adequate substitute for in person learning."

*id.* ¶ 54 (complaining that "Children with disabilities are entitled to learn and
interact with all other children, to receive the same education as all other children");
*id.* ¶ 1 (alleging schools cannot comply with section 280.31 and still provide "equal
access to their education"); *id.* ¶ 2 (alleging student risk harm to health or harm to
"their education and development"); ¶¶ 38–40 (alleging various educational harms
to disabled students because of the pandemic). Their claimed discrimination is thus
an injury that is allegedly denying them a FAPE and that could be remedied by
granting relief under the IDEA. Exhaustion was required.

In its TRO ruling, this Court concluded otherwise by considering two hypothetical questions: Could they have brought this claim against an entity other than a school? And could a teacher or visitor bring a similar claim? TRO Ruling at 17–18. But the Eighth Circuit has explained that it's improper to approach this question at a "higher level of generality" *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587 (8th Cir. 2018); *see also Fry*, 137 S. Ct. at 759 (Alito, J., concurring) (explaining that the hypotheticals are "false clues" that "are likely to confuse and lead courts astray" given the overlapping coverage of the statutes).

Given that Plaintiff's claims are driven by the focus on the importance of education for their children and their exclusion from receiving that education, the proper level of comparison is whether a teacher or visitor could bring a claim that they're being forced to choose between their health or receiving an equal education— and they could not. Nor could the students bring that same claim against a different entity, like a county courthouse or public library. But at bottom, asking the true question demanded by the statute and *Fry*, students could get the relief they're asking for—accommodation to their disabilities so they can receive a FAPE through the IDEA administrative process.

Because Plaintiffs have not exhausted their administrative remedies under the IDEA their claims under the ADA or the Rehabilitation Act are subject to dismissal as a matter of law and they are thus unlikely to succeed on these claims.

**B.      ARPA doesn't require schools to impose—or have the discretion to impose—universal mask mandates.**

As an alternative basis for enjoining section 280.31, Plaintiffs contend that it conflicts with the American Rescue Plan Act of 2021 ("ARPA"). Compl. Doc. 1, ¶¶ 95–102. They argue that the statute, agency guidance, and a letter from the Secretary of Education are "squarely at odds" with section 280.31 because it "*prohibits* local school districts, including Defendant School Boards, from implementing precisely the type of safe return-to-school policies ARPA expects." *Id.* ¶ 101. But ARPA says nothing of the sort. Neither does the agency guidance. And interpreting either to impose such a requirement would raise serious constitutional concerns. Plaintiffs are unlikely to succeed on this claim.

Plaintiffs rely on section 2001(e)(2)(Q) of ARPA as the source of this purported requirement. PI Brief, Doc. 17, at 25. Section 2001 establishes a $123 billion Elementary and Secondary School Emergency Relief Fund and sets certain requirements for allocation of the funds to the States and then to local schools. It imposes two mandates on schools—that they publicly post "a plan for the safe return to in-person instruction and continuity of services" and that they "shall reserve not less than 20 percent of such funds to address learning loss." American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat 4, § 2001(e)(1), (i). And then it provides that they "shall use the remaining funds for any of" a list of 18 alternative purposes. *Id.* § 2001(e)(2). These include, for example: "Purchasing supplies to sanitize and clean the facilities," *id.* § 2001(e)(2)(I); "Planning for, coordinating, and implementing activities during long-term closures," *id.* § 2001(e)(2)(J); and "repair, replacement,

and upgrade projects to improve the indoor air quality in school facilities." *Id.* § 2001(e)(2)(P).

The provision relied on by Plaintiffs is one of these 18 alternative purposes. It provides the appropriated funds *could* be used for:

> Developing strategies and implementing public health protocols including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff.

*Id.* § 2001(e)(2)(Q). Nothing in section 2001 *requires* a school or a State to chose to spend any of the federal funds it receives for this purpose rather than any of the other 16 authorized purposes. So even if its text could be interpreted to impose some limited requirement for any funded strategies and protocols "in line" with CDC guidance "to the greatest extent practicable," it would only apply if when funds are used for that purpose.[3] It would make no more sense to turn that single alternative into a blanket mandate than it would to say that the other quoted provisions require schools to close long-term or replace their HVAC systems.

The agency guidance from the U.S. Department of Education fares no better.[4] Plaintiffs point to Interim Final Requirements established by the Department elaborate on the statutory requirement that schools adopt a plan for safe return to in-person learning by requiring schools to include "how it will maintain the health

---

[3] Indeed, even applying the statute's terms, it's not at all clear that it would be "practicable" for a school to violate another law, such as section 280.31.

[4] The correspondence from the Secretary of Education has no force of law and is irrelevant to any preemption analysis.

and safety of students, educators, and other school and LEA staff, and the extent to which it has adopted policies, and a description of any such policies, on each of the CDC's safety recommendations including Universal and correct wearing of masks." Dep't of Educ. Interim Final Requirements, *American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund*, 86 Fed. Reg. 21,195, 21200 (Apr. 22, 2021); *see also* PI Brief, Doc. 17, at 25–26.

Yet this language as well merely requires a school to *describe* what it is doing. As the Department's guidance itself acknowledges, "[t]he requirement does not mandate that [a school] adopt the CDC guidance, but only requires that the [school] describe in its plan the extent to which it has adopted the key prevention and mitigations strategies." 86 Fed. Reg. 21,195, 21,201. A school can follow this requirement without violating section 280.31.

Neither ARPA nor the agency guidance imposes any requirement that schools have authority to impose universal mask mandates. The analysis could stop there. But if there were any doubt, the Constitution removes it. While Congress has the power to impose requirements on the States through its spending power, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This is because "[t]he legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts the terms of the 'contract'" for the federal funds. *Id.* "By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the

consequences of their participation." *Id.*; *see also South Dakota v. Dole*, 483 U.S. 203, 208 (1987).

Section 2001(e)(2)(Q) does not clearly and unambiguously alert States that school districts must have discretionary authority to impose universal mask mandates. Neither does the agency guidance—and in any event only *Congress*, not an agency, impose the unambiguous requirement. *See Va Dep't of Educ. v. Riley*, 106 F.3d 559, 567 (4th Cir. 1997) (en banc) (rejecting use of agency regulation to provide constitutionally required clarity in spending-clause challenge); *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021) ("Relying on regulations to present the clear condition, therefore, is an acknowledgment that Congress's condition was not unambiguous, so that method of analysis would not meet the requirements of *Dole*).

Education and protection of the public health is also at the core of the State's—rather than the federal government's—domain. And the Supreme Court requires "Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, No. 21A23, 2021 WL 3783142, at *3 (U.S. Aug. 26, 2021). And under the Tenth Amendment, the federal government cannot intrude on the State's power to structure its internal division of governmental power to school districts. *See Hunter v. Pittsburgh*, 207 U.S. 161, 178 (1907) ("The number, nature, and duration of the powers conferred upon these [political subdivisions] and the territory over which they shall be exercised rests in the absolute discretion of the state.").

At bottom, this Court cannot imply the requirement alleged by Plaintiffs consistent with these constitutional demands.[5]

III.    **The balance of the harms and the public interest do not support enjoining a duly enacted statute that has been in effect for nearly four months that upsets the status quo and causes unnecessary confusion and conflict throughout Iowa.**

Section 280.31 has been in effect since May 20, 2021. *See* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Act § 28 (to be codified at Iowa Code § 280.31). Over these past four months, Plaintiffs have thus been on notice that schools are now generally prohibited from mandating face coverings. They have known that classes would be resuming in August. And more than two months ago, it was publicly known that the Delta Variant of COVID-19 was the dominant strain in the United States. *See* Emily Anthes, *Delta, as Expected, Is Now the Dominant Virus Variant in the U.S., the C.D.C. Estimates*, N.Y. Times, July 7, 2021, *available at* https://perma.cc/BL3W-2DBC.

Yet they filed this lawsuit just two weeks ago and immediately sought the extraordinary remedies of a temporary restraining order and preliminary injunction. Their delay in suing counsels against concluding that enjoining section 280.31 is truly an emergency that cannot wait while this proceeding progresses to full consideration of the merits of their claims. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence."). This is all the more so, when they are unlikely to succeed in this suit.

---

[5] These same constitutional concerns also counsel against interpreting federal disability law as Plaintiffs' suggest to so intrude into the states' domain.

A preliminary injunction—like the temporary restraining order currently in place—would continue to upset the status quo rather maintain it. Schools were providing education to their students with section 280.31 in effect, in many cases for several weeks before this Court's temporary restraining order ruling. Suddenly enjoining that law—as predicted, *see* TRO Resistance, Doc. 21, at 7—has reopened the debate in each school board and management team as to whether to adjust masking requirements in their school, creating significant unnecessary confusion and conflict that will continue until the injunction is dissolved. *See* Tim Johnson, *Shouting, Police Officers and Tears: Bluffs School Board Meeting Turns into an Anti-Mask Demonstration*, The Daily Nonpareil, (Sept. 14, 2021), https://perma.cc/D9N3-HSS5; (Sept. 14, 2021), Teresa Kay Albertson, *Ankeny School Board Debates Mask Mandate as Crowd Voices Concerns about 'Body Autonomy', 'Freedom of Choice,'* Des Moines Reg. (Sept. 14, 2021), https://perma.cc/SH6S-AMNP. Even schools that would choose not to adopt a mask mandate will question whether they are now violating federal law given the implications of this Court's order.

And while Plaintiffs only seek injunction of enforcement of section 280.31, the necessary implications of this Court holding that they are entitled to such an injunction based on any of the federal laws are much broader. If a universal mask mandate is a reasonable modification, is every school district in the state violating federal disability law if it does not impose a universal mask mandate?  For that matter, is every government entity or recipient of federal funds required to do so in all its buildings?  And every employer or public accommodation that is subject to the

ADA?   This cannot be.  Yet these questions are now present and will continue percolating so long as section 280.31 is enjoined by this Court on the basis of federal disability law.

"[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see also Planned Parenthood Minn., N.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc). And so too are those parents, including those of disabled students, who made decisions in reliance on section 280.31's prohibition on local schools imposing universal mask mandates. *See* Gronau Dec. (attached); Givens Dec. (attached) Parker Dec. (attached).

The balance of the harms and the public interest do not support continuing to enjoin section 280.31.[6]

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' Motion for a Preliminary Injunction and allow the temporary restraining order to expire.

---

[6] If this Court nevertheless grants Plaintiffs' motion for a preliminary injunction, Rule 65(c) *requires* the court to set a bond. *See* R. Civ. P. 65(c) (authorizing issuance of preliminary injunction "*only if* the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongly enjoined") (emphasis added)); *see also Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Absent other evidence from the school district Defendants, a bond of $25,000 would likely be appropriate under the circumstances to cover the potential costs and attorney fees incurred by all Defendants in response to the injunction.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

JEFFREY S. THOMPSON
Solicitor General

*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ
Assistant Attorney General
Iowa Department of Justice
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone: (515) 281-5164
Fax: (515) 281-4209
sam.langholz@ag.iowa.gov
jeffrey.thompson@ag.iowa.gov

ATTORNEYS FOR DEFENDANTS
GOVERNOR KIM REYNOLDS AND
ANN LEBO

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon all parties of record by delivery in the following manner on September 17, 2021:

☐ U.S. Mail          ☐ Email
☐ Hand Delivery      ☐ Overnight Courier
☐ Federal Express    ☐ Other
☒ CM/ECF

Signature: */s/ Samuel P. Langholz*