IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| THE ARC OF IOWA; CHARMAINE ALEXANDER, Individually and on Behalf of C.B.; JOHNATHAN CRAIG, Individually and on Behalf of E.C. and J.C.; MICHELLE CROFT, Individually and on Behalf of J.J.B.; AMANDA DEVEREAUX, Individually and on Behalf of P.D.; CARISSA FROYUM ROISE, Individually and on Behalf of H.J.F.R.; LIDIJA GEEST, Individually and on Behalf of K.G.; MELISSA HADDEN, Individually and on Behalf of V.M.H.; HEATHER LYNN PRESTON, Individually and on Behalf of M.P. and S.P.; LISA HARDISTY SITHONNORATH, Individually and on Behalf of A.S.; REBEKAH STEWART, Individually on Behalf of E.M.S.; ERIN VERCANDE, Individually and on Behalf of S.V.;<br><br>Plaintiffs,<br><br>v.<br><br>KIM REYNOLDS, In her Official Capacity as Governor of Iowa; ANN LEBO, In her Official Capacity as Director of the Iowa Department of Education; ANKENY COMMUNITY SCHOOL DISTRICT; COUNCIL BLUFFS COMMUNITY SCHOOL DISTRICT; DAVENPORT COMMUNITY SCHOOL DISTRICT; DECORAH COMMUNITY SCHOOL DISTRICT; DENVER COMMUNITY SCHOOL DISTRICT; DES MOINES PUBLIC SCHOOLS; IOWA CITY COMMUNITY SCHOOL DISTRICT; JOHNSTON COMMUNITY SCHOOL DISTRICT; LINN MAR COMMUNITY SCHOOL DISTRICT; WATERLOO COMMUNITY SCHOOL DISTRICT;<br><br>Defendants | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | 4:21-cv-00264<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

Before the Court is Plaintiffs' Complaint for Declaratory and Injunctive Relief against all

Defendants, and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction,

both filed on September 3, 2021.  ECF Nos. 1, 3.  After an adversarial hearing on Plaintiffs'

Motion, the Court issued a Temporary Restraining Order (TRO) enjoining Defendants from

enforcing Iowa Code section 280.31 banning local public school districts from utilizing their

discretion to mandate masks for students, staff, teachers, and visitors.  *See generally* ECF No. 32.

On September 21, Defendants Governor Kim Reynolds and Director of the Iowa Department of

Education Ann Lebo responded to Plaintiffs' request for a preliminary injunction, ECF No. 42,

and filed a Supplemental Response in support of their proposed bond amount on September 24,

ECF No. 46.  On September 26, Plaintiffs filed their Reply to their Motion for a Preliminary

Injunction.  ECF No. 48.  On September 27, the Court granted Plaintiffs' Motion for 14-day

Extension of TRO to allow for sufficient time to review the parties' numerous filings.  ECF

No. 49.  The Court also permitted the American Academy of Pediatrics (AAP) and the Iowa

Chapter of the AAP to file a brief as *Amici Curiae*.  ECF Nos. 58, 59.  The parties agree further

oral argument is not necessary, and the Court agrees after reviewing the parties' submissions.

Therefore, the matter is fully submitted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Just after midnight on May 20, 2021, Governor Reynolds signed a bill introduced and

passed by the Iowa Legislature mere hours earlier that included a provision banning local school

districts from implementing universal mask policies on school property.  Act of May 20, 2021

(H.F. 847), ch. 139, 2021 Iowa Act § 28 (to be codified at Iowa Code § 280.31).  The law

provides that school districts in Iowa "shall not adopt, enforce, or implement a policy that

---

[1] In its TRO, the Court recounted at length the facts of this case.  ECF No. 32 at 3–13.  The Court adopts its earlier factual findings and incorporates them by reference here.

requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's . . . property." Iowa Code § 280.31. The law includes an exception allowing school districts to require masks be worn when "necessary for a specific extracurricular or instructional purpose" or when a mask "is required by . . . any . . . provision of law." *Id.* Despite there being less than two weeks left of school for most of Iowa's students, the law went into effect immediately.

After COVID-19 vaccines became widely available, the number of new cases began to drop in Iowa until eventually case numbers were at their lowest in early July 2021. ECF No. 1 at 9 ¶ 32. Around that same time, however, the Delta variant became the dominant variant of COVID-19 in the United States. *See* ECF No. 42 at 23 (citing Emily Anthes, *Delta, as Expected, Is Now the Dominant Virus Variant in the U.S., the C.D.C. Estimates*, N.Y. Times (July 14, 2021), https://www.nytimes.com/2021/07/07/health/delta-variant-cdc.html). Ever since then, the number of new cases has risen sharply, especially among children. ECF No. 1 at 9–10. Iowa currently has the highest rate of COVID-19 cases and hospitalizations it has seen in 2021. ECF No. 48-2 ¶ 21.

The number of pediatric COVID-19 cases has exploded since school started. As of September 30, pediatric cases represented over sixteen percent of the total U.S. cases, with nearly 5.9 million children testing positive since the pandemic began.[2] *Children and COVID-19: State-Level Data Report*, Am. Acad. Pediatrics, https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/ (Oct. 4, 2021). Nearly 850,000 pediatric cases were added in the month of September, with over 173,000 added in the final week. *Id.* Twenty percent of all pediatric cases since the beginning of the pandemic

---

[2] The Court has taken the liberty of updating the numbers cited in the *Amici*'s brief.

were diagnosed in the first month of school this year.  ECF No. 59 at 5.  The number of children

who have been hospitalized due to COVID-19 has also substantially increased since the start of

school.  *Id.*  More children have died each week this school year than in any other week of the

pandemic but one.  *Id.*  Unfathomably, one hundred and forty-two children died between the

AAP's reports of August 12 and September 30, bringing the total number of COVID-19 deaths

of children to 520.  *Children and COVID-19: State Data Report* at App'x Tab. 2C, Children's

Hosp. Ass'n & Am. Acad. Pediatrics (Sept. 30, 2021), https://downloads.aap.org/AAP/PDF/

AAP%20and%20CHA%20-%20Children%20and%20COVID19%20State%20Data%20Report

%209.30%20FINAL.pdf.  Iowa is not immune to this recent surge in pediatric cases.  On

September 22, the state reached a record high with more than twenty-five percent of Iowa's new

reported cases being in children.  ECF No. 48-2 ¶ 24.  Several schools in Iowa have reported

more positive cases in the first few weeks of school than during the entire previous academic

year.  *Id.* ¶ 26(a).

Although hospitalizations and death rates are low among children, *see Children and

COVID-19: State-Level Data Report*, *supra*, children are at risk for other severe complications

related to COVID-19, ECF No. 59 at 6.  Children may suffer from multisystem inflammatory

syndrome (MIS-C) and can experience serious long-term symptoms affecting their lungs, hearts,

and brains and can also impact their neurological development.  *Id.* at 6–7.  The disease presents

even greater risks for children with underlying health conditions.  *Id.* at 7.

For these reasons, the Centers for Disease Control and Prevention (CDC) and the AAP

recommend "universal indoor masking for all teachers, staff, students, and visitors to K-12

schools, regardless of vaccination status."  ECF No. 3-1 ¶ 22 (quoting *Guidance for Covid-19

Prevention in K-12 Schools*, Ctrs. for Disease Control & Prevention (Aug. 5, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html);

*see* ECF No. 59 at 11 ("Among the prevention measures we recommend (such as immunization

of all eligible individuals and adequate and timely COVID-19 testing), one of the most important

is that **'[a]ll students older than 2 years and all school staff should wear face masks at**

**school (unless medical or developmental conditions prohibit use).'**" (quoting *COVID-19*

*Guidance for Safe Schools*, Am. Acad. Pediatrics (July 18, 2021), https://www.aap.org/en/

pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-

considerations-return-to-in-person-education-in-schools).  Universal masking policies are

especially important to protect medically vulnerable children because they "reduce[] community

transmission, thus reducing the likelihood that an infected person will come in contact with a

child with special health needs, and reduces the likelihood of transmission to the child if an

infected person does come into contact with an especially vulnerable child."  ECF No. 59 at 4,

12.  Both the CDC and the AAP recognize there are rare circumstances in which people with

disabilities should be excused from wearing a mask.  *See Guidance for Covid-19 Prevention in*

*K-12 Schools*, *supra* at 4–5; ECF No. 59 at 19.

 As noted in the TRO, universal masking is necessary to reduce the spread of the virus.

*See* ECF No. 32 at 19.  This is so because "[m]asks are primarily intended to reduce the emission

of virus-laden droplets . . . , which is especially relevant for asymptomatic or presymptomatic

infected wearers who feel well and may be unaware of their infectiousness to others, and who are

estimated to account for more than 50% of transmissions."  *Science Brief: Community Use of*

*Cloth Masks to Control the Spread of SARS-CoV-2*, Ctrs. for Disease Control & Prevention (May

7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-

sars-cov2.html.  Moreover, research shows multi-layer cloth masks are effective at reducing

transmission.  ECF No. 59 at 13 ("Cloth masks not only effectively block most large droplets (i.e., 20-30 microns and larger) but they can also block the exhalation of fine droplets and particles (also often referred to as aerosols) smaller than 10 microns . . . .  Multi-layer cloth masks can both block up to 50-70% of these fine droplets and particles and limit the forward spread of those that are not captured.  Upwards of 80% blockage has been achieved in human experiments that have measured blocking of all respiratory droplets, with cloth masks in some studies performing on par with surgical masks as barriers for source control." (quoting *Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, *supra* at 5 (footnotes omitted))).  This research shows it is simply insufficient for only those with special health needs to wear masks to be protected.

Recent studies conducted in schools demonstrate that universal masking policies are effective at preventing COVID-19 outbreaks.  *See* ECF No. 48-2 ¶¶ 6 (citing a study released by the CDC on September 24 that found schools without mask requirements in Arizona were 3.5 times more likely to have an outbreak of COVID-19 than those with mask requirements), 7 (finding similar results in Colorado where the state Department of Public Health and Environment found that case rates in schools without mask requirements were approximately twenty percent higher than in schools with mask requirements); ECF No. 59 at 15 nn.34 & 36 (citing additional studies); *see also* ECF No. 48-2 ¶ 8 (citing a study released by the CDC on September 24 that showed pediatric COVID-19 case rates were much lower in counties with school mask requirements than in counties without mask requirements).  There are no scientific studies to support the claim that wearing masks causes physical harm to children.  *Id.* ¶¶ 15–16; ECF No. 59 at 17.  And according to Plaintiffs' expert Dr. David Lewkowicz, "concern regarding the impact of masks on children's cognitive development do[es] not justify a

prohibition on masking in schools as necessary to reduce the transmission of COVID-19 among school children." ECF No. 48-3 ¶ 9; *see also* ECF No. 59 at 17 (stating there is no "scientific basis" to support "claims that mask[] policies are harmful to . . . children's social or language skills, or for children with anxiety").

Plaintiffs filed this action on behalf of disabled or immunocompromised children in Iowa alleging the mask mandate ban violates their civil rights under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132, and section 504 of the Rehabilitation Act of 1973, § 794(a). Plaintiffs further claim Iowa Code section 280.31 is preempted by the ADA, the Rehabilitation Act, and the American Rescue Plan Act of 2021 (ARPA), Pub. L. No. 117-2, 135 Stat. 4 (2021).

On September 13, this Court issued a TRO enjoining Defendants from enforcing Iowa Code section 281.30. ECF No. 32. Within days, at least twenty-four school districts around Iowa implemented mask mandates, including eight of the ten Defendant school districts.[3] ECF Nos. 48-2 ¶¶ 2, 3; 48-8 ¶ 3. School districts both small and large have imposed universal mask mandates. *See* ECF No. 48-2 ¶ 3. Because the TRO restored local public school district's discretion to act in the best interests of public health, approximately thirty percent of Iowa's students are once again covered by a school masking policy. *Id.* ¶ 4.

## II.  LEGAL STANDARD

Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.[4] The primary purpose of issuing a preliminary injunction is to preserve the status quo and prevent

---

[3] Additionally, Defendant Waterloo Community School District implemented a one-week mask mandate for elementary school students and teachers. ECF No. 48-2 ¶ 3(f).

[4] There are two types of preliminary injunctions: prohibitory and mandatory. *Miljas v. Greg Cohen Promotions, LLC*, No. 4:20-cv-00320-SMR, 2021 WL 2627457, at *11 n.6 (S.D. Iowa Apr. 30, 2021). "A prohibitory injunction 'restrains' a party from taking specified actions whereas a mandatory

irreparable harm until a court can make a final decision on the merits after a final hearing. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974); *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

In the Eighth Circuit, courts apply the same standards to a motion for a TRO as to a motion for a preliminary injunction. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989). The Court evaluates four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (quoting *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)). "[W]hen the [g]overnment is

---

injunction 'orders a responsible party to "take action."'" *Id.* (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)); 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2942 (3d ed. 2021). Here, Plaintiffs seek a prohibitory injunction.

the opposing party," the balance of the equities and the public interest factors merge.  *Nken v.*

*Holder*, 556 U.S. 418, 435 (2009).  Plaintiffs bear the burden of establishing the propriety of a

preliminary injunction by a preponderance of the evidence.  *Watkins Inc. v. Lewis*, 346 F.3d 841,

844 (8th Cir. 2003).

## III.  ANALYSIS

The Court permitted the parties and *Amici* to submit additional declarations and

overlength briefs to allow the Court to fully consider the issues before it.  Having thoroughly

reviewed the parties' submissions, as well as the *amicus* brief, the Court reaffirms and

incorporates the findings and conclusions of its TRO[5] and addresses the parties' additional

arguments below.

Defendants Reynolds and Lebo continue to argue Plaintiffs do not have standing to bring

this action because the injunctive relief Plaintiffs seek will not redress their alleged injuries.

Defendants further argue that preliminary injunctive relief is not necessary because the savings

clause in Iowa Code section 280.31 operates to allow school districts to comply with federal law

if the school districts conclude that federal law requires masks to be worn in schools.  On the

other side of that argument, they dispute federal law requires that masks be worn in schools or

that school districts have discretion to make masking decisions at the local level.  Defendants

also argue Plaintiffs cannot bring their claims because they have not administratively exhausted

their remedies.  Additionally, they argue Plaintiffs are unlikely to succeed on the merits of their

claims because section 280.31 is a neutral, nondiscriminatory law that does not violate federal

---

[5] The Court notes that all findings of fact and conclusions of law contained within its TRO and this Order are preliminary and made solely for purposes of resolving Plaintiffs' pending Motion for Preliminary Injunction.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

disability law.  They contend universal mask mandates are not a reasonable modification but

rather an undue burden that fundamentally alter the nature of Iowa's education program and

infringe on the rights of others.  Defendants also argue Plaintiffs' claim based on the ARPA fails

because the ARPA does not require schools to mandate universal masking or to have the

discretion to do so.  Finally, Defendants argue the balance of the harms and the public interest do

not support enjoining section 280.31 four months after it was enacted because doing so would

upset the status quo and cause unnecessary confusion and conflict throughout the state.

Defendant Iowa City Community School District does not resist the grant of preliminary

injunctive relief enjoining enforcement of Iowa Code section 280.31.  ECF No. 48-17 ¶ 2.  The

other Defendant school districts have thus far declined to take a position.  ECF No. 37 at 47.

The AAP and the Iowa Chapter of the AAP have filed an *amicus* brief in support of

Plaintiffs' request for a preliminary injunction.  ECF No. 59.

## *A. Standing*

As a threshold matter, Defendants Reynolds and Lebo argue Plaintiffs do not have

standing to bring this case because the requested injunctive relief does not redress their alleged

injuries.  The Court previously determined that Plaintiffs have satisfied Article III standing

requirements at this preliminary stage of the litigation.  ECF No. 32 at 16–17.  The Court renews

that conclusion here.

"To establish standing, a plaintiff must show that he has suffered an injury in fact that is

fairly traceable to the challenged conduct of the defendant and will likely be redressed by a

favorable decision." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th

Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants

Reynolds and Lebo do not dispute Plaintiffs satisfy the first two requirements for standing—that

Plaintiffs have suffered an injury in fact or that it is fairly traceable to Defendants' conduct in enforcing Iowa Code section 280.31.  Instead, they contend Plaintiffs' requested relief—an injunction of the enforcement of section 280.31—cannot redress their alleged injuries because a preliminary injunction will not force school districts to impose universal mask mandates.  That is true.  An injunction of the enforcement of section 280.31 will not require local schools to adopt universal masking policies, but it will grant local public school districts the discretion to adopt universal masking policies in their schools to protect their disabled students.

In its TRO, the Court noted that during the 2020–2021 school year, numerous school districts around the state, including all of the named Defendant school districts, had mask mandates.  ECF No. 32 at 17 n.4.  In concluding that it was not "merely speculative" that Plaintiffs' requested injunctive relief would redress their alleged injuries, the Court relied on this information as well as Defendant Iowa City's assertion that it would meet as soon as it could following the issuance of a TRO to consider a mask mandate.  *Id.* at 16–17.  The swift action of several school districts across the state in implementing school-wide mask mandates confirms the Court was correct.  Many of the largest school districts in the state, as well as several smaller districts, quickly acted to adopt universal masking policies to ensure the protection of almost one-third of Iowa's public school children.  ECF No. 48-2 ¶¶ 3, 4.  Most of the Individual Plaintiffs acknowledge that with universal masking policies in effect in their children's schools, their children can now engage in in-person learning without sacrificing their safety or education.  ECF Nos. 48-5 ¶¶ 5–6; 48-6 ¶ 7; 48-7 ¶¶ 6–8; 48-10 ¶¶ 4, 6; 48-11 ¶ 10; 48-13 ¶ 5; 48-14 ¶¶ 3, 5.  Thus, Plaintiffs have clearly shown they have a concrete and particularized injury in fact, that is fairly traceable to Defendants' enforcement of section 280.31, and that their requested relief will likely redress their alleged injuries.

### B. Necessity

Defendants argue the Court does not need to grant preliminary injunctive relief in this case because the savings clause in Iowa Code section 280.31 permits school districts to impose universal masking policies if the school districts conclude that federal law requires them.  Prior to the entry of the TRO, schools in Iowa did not believe they were allowed to implement mask mandates under the savings clause.  *See* ECF Nos. 28-5 ("I am aware that pursuant to Iowa Code [s]ection 280.31, that as a member of the Council Bluffs Community School District, I am not able to issue a facial covering/mask mandate for students and school personnel in the Council Bluffs Community Schools."); 28-6 ("I am aware that pursuant to Iowa Code [s]ection 280.31, that as a member of the Urbandale Community School District, I am not able to issue a facial covering/mask mandate for students and school personnel in the Urbandale Community Schools."); *see also* 28-4 (advising schools that the law "prohibits a school district from adopting or enforcing a policy that requires employees, students, or the public to wear a mask while on school property").  It was not until after the Court entered the TRO that schools understood they could adopt mask mandates.  *See* ECF No. 48-17 ("The [Iowa City Community School] District believes that absent the Court's [TRO] of September 13, 2021, restraining enforcement of § 280.31, that Code section did not permit the District to require masks, or required the District to do so at the peril of the District and Administrators, e.g. potential loss of accreditation and licensure.").  And then a whole wave of schools adopted masking policies.  ECF No. 48-2 ¶¶ 2, 3.  Thus, this argument is unavailing.[6]

---

[6] The argument also flies in the face in Governor Reynolds's public statements that she would "hold strong" and vigorously enforce section 280.31.  *See* ECF No. 1 at 16.

### C.  Administrative Exhaustion

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*,
ensures that physically or intellectually disabled students receive necessary special education
services by requiring states to provide a free appropriate public education (FAPE).  "Under the
IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary
vehicle' for providing each child with the promised FAPE."  *Fry v. Napoleon Cmty. Schs.*, 580
U.S. ___, ___, 137 S. Ct. 743, 749 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).
Congress expressly permits a plaintiff to bring claims for the denial of a FAPE under the IDEA
as well as Title II of the ADA and section 504 of the Rehabilitation Act so long as the plaintiff
first exhausts his or her administrative remedies under the IDEA.  20 U.S.C. § 1415(*l*).  But
when "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's
procedures is not required" because "the plaintiff could not get any relief from those
procedures."  *Fry*, 137 S. Ct. at 754.  Courts must look to the "gravamen" of the plaintiff's
complaint in determining whether the relief sought falls under the IDEA, and therefore requires
administrative exhaustion.  *Id.* at 755.  In making this determination, courts must ask first
whether "the plaintiff [could] have brought essentially the same claim if the alleged conduct had
occurred at a public facility that was *not* a school."  *Id.* at 756.  Second, courts must ask "could
an *adult* at the school . . . have pressed essentially the same grievance?"  *Id.*  When the answer is
"yes" to both questions, then the claim is not one for the denial of a FAPE under the IDEA and
there is no exhaustion requirement.  *Id.*

In its TRO, the Court answered both questions in the affirmative, observing "Plaintiffs
could bring their claims for the alleged discriminatory conduct occurring at another public
facility, like a library" and "[a]n adult, such as a teacher or a staff member at a public school,

could also bring the claims alleged by Plaintiffs." ECF No. 32 at 18. Thus, the Court concluded

Plaintiffs need not fulfill the administrative exhaustion requirement of the IDEA because "the

gravamen of Plaintiffs' Complaint is not for the denial of a FAPE." *Id.*

In their Resistance to Plaintiffs' Motion filed after the Court issued the TRO, Defendants

Reynolds and Lebo continue to argue Plaintiffs cannot bring their claims before this Court

because they have failed to first exhaust the IDEA's administrative process. They contend that,

because Plaintiffs claim enforcement of section 280.31 effectively excludes their disabled

children from receiving an education, it necessarily alleges a denial of a FAPE. But, as the

Supreme Court recognized in *Fry*, "even when the suit arises directly from a school's treatment

of a child with a disability—and so could be said to relate in some way to [the child's]

education"—the "school's conduct toward [the] child . . . might injure [the child] in ways

unrelated to a FAPE." 137 S. Ct. at 754. That is the case here, where although Plaintiffs' claims

relate to the children's education, Plaintiffs do not seek the type of special education services that

the IDEA guarantees. Rather, Plaintiffs seek to allow their public school districts the discretion

to impose mask mandates and provide their children with "non-discriminatory access to public

institutions" under the ADA and the Rehabilitation Act. *Id.* at 756. Plaintiffs allege they have

been excluded from participating in or denied the benefits of the programs, services, or activities

of a public entity based upon their disabilities. Their claims are properly brought under Title II

of the ADA and section 504 of the Rehabilitation Act and there is no reason for them to

participate in the IDEA's administrative process.

### D. Threat of Irreparable Harm

The Court determined in its TRO that the preliminary evidence demonstrates that

Plaintiffs' children are likely to suffer an irreparable injury unless Defendants are enjoined from

enforcing Iowa Code section 280.31.  ECF No. 32 at 18–22.  In their Resistance, Defendants

Reynolds and Lebo do not dispute this holding and have offered no evidence to contradict it.

The Court will not disturb its prior determination.

### E.  Likelihood of Success on the Merits

The Court's conclusion in its TRO that Plaintiffs sufficiently established a likelihood of

success on the merits under the ADA and the Rehabilitation Act remains undisturbed.[7]  *See* ECF

No. 32 at 25–27.  However, because Defendants Reynolds and Lebo did not address this issue

prior to the entry of the TRO, the Court addresses their arguments here.

In its TRO, the Court determined Plaintiffs' children are qualified individuals with

disabilities who "meet[] the essential eligibility requirements for the receipt of services or the

participation in programs or activities" their schools provide.  28 C.F.R. § 35.104; *see Pottgen*,

40 F.3d at 929.  The Court held "Defendants appear to be failing to make school programs,

services, and activities 'readily accessible' to disabled students, in violation of 28 C.F.R.

§ 35.150,7 by making in-person learning at schools available only under conditions that are

dangerous to children with disabilities."  ECF No. 32 at 25.  The Court further held that, "by

enforcing the ban, Defendants appear to be violating the ADA's requirement that schools must

provide 'reasonable modifications' to disabled students in order to provide them with equal

access to school programs, services, and activities."  *Id.* at 26.  Finally, the Court held

"Defendants appear to be failing to permit schools from administering programs, services, and

activities in the 'most integrated setting' appropriate to the needs of qualified disabled students."

---

[7] The Court again declines to consider Plaintiffs' likelihood of success on their ARPA claim.  *See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) ("The plaintiff 'need only establish a likelihood of succeeding on the merits of any one of [its] claims.'" (quoting *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 250 (D.D.C. 2003))).

*Id.*  Thus, the Court concluded Plaintiffs were likely to succeed on their claims under Title II of the ADA and section 504 of the Rehabilitation Act.

Defendants Reynolds and Lebo do not dispute that Plaintiffs' children have disabilities and meet the essential eligibility requirements to receive a free education from their public schools.  Defendants also do not dispute that section 280.31 prevents school districts from making their programs, services, and activities "readily accessible" to students with disabilities, as required by 28 C.F.R. § 35.150, or from providing education in the "most integrated setting appropriate to the needs of qualified individuals with disabilities," as required by 28 C.F.R. § 35.130(d).[8]  Instead, Defendants argue the Court was wrong in concluding that universal masking policies in schools are a reasonable modification.

Under the ADA, "public entit[ies] shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless [they] can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).  Section 504's regulations similarly require public entities to make reasonable accommodations to ensure meaningful access to the benefit that public entity provides.  *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1104–05 (8th Cir. 1997).  In other words, these regulations require public schools to make reasonable accommodations for students with disabilities in order to provide them with meaningful access to education.  A modification "is not reasonable if it either imposes 'undue

---

[8] It is enough that the Court concludes Plaintiffs will likely succeed on the merits of their claims for these two reasons that are undisputed by Defendants because any argument not raised is waived. Nevertheless, the Court addresses Defendants' argument regarding whether universal masking policies are a reasonable modification to provide a complete record of the Court's considerations for appellate review.

financial and administrative burdens' . . . or requires 'a fundamental alteration in the nature of [the] program.'"  *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987) (citations omitted); *Pottgen*, 40 F.3d at 930.

Plaintiffs propose that universal masking policies are a reasonable modification that will allow their children the meaningful access to education that they seek.  The Court agrees.  The recommendations by the CDC and the AAP and other medical organizations support this conclusion.  Defendants have provided no evidence showing that universal mask mandates impose "undue financial and administrative burdens" on schools or that such policies fundamentally alter the services schools provide.  *See Hahn ex rel. Barta v. Linn Cnty.*, 130 F. Supp. 2d 1036, 1051–52 (N.D. Iowa 2001) (quoting 28 C.F.R. § 35.164).  On the contrary, Defendant Iowa City Community School District submits that "[r]equiring masks on District property is a reasonable requirement that does not interfere with education in the District."  ECF No. 48-17.  To be sure, there likely are small burdens associated with implementing and enforcing a universal masking policy.  Schools probably provide disposable masks to students, staff, and visitors who do not bring them, which is likely a financial burden.  And there are probably administrative burdens involved as well in enforcing a mask mandate, namely reviewing applications for exemptions, communicating those decisions to students' families, and enforcing a mask policy.  But Defendants have not presented any evidence that these are *undue* burdens that are especially taxing on school districts.  If they were, the school districts could choose not to adopt mask policies.  Enjoining section 280.31 gives school districts back that discretion.  Additionally, universal masking policies do not fundamentally alter the educational services that schools provide.  Masks enable students to engage in in-person learning.  And "there is no known evidence that use of face masks interferes with speech and language

development or social communication."  ECF No. 59 at 16 (quoting *Do Masks Delay Speech and*

*Language Development?*, Am. Acad. Pediatrics (Aug. 26, 2021),

https://www.healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Do-face-

masks-interfere-with-language-development.aspx).  Nor is there any evidence that mask-wearing

is linked to psychological or emotional harm, except maybe in circumstances in which "parents

or community members perpetuate false claims that masks are harmful."  *Id.* at 17–18.

Defendants Reynolds and Lebo also contend universal masking requirements are not

reasonable modifications because they "infring[e] on the rights of third parties—other students,

employees, and visitors."  ECF No. 42 at 13.  But courts have routinely upheld the ability of

schools to implement health requirements that intrude on individuals' rights.  *See, e.g.*, *Jacobson*

*v. Massachusetts*, 197 U.S. 11, 26 (1905) ("[T]he liberty secured by the Constitution of the

United States to every person within its jurisdiction does not import an absolute right in each

person to be, at all times and in all circumstances, wholly freed from restraint.  There are

manifold restraints to which every person is necessarily subject for the common good."); *Boone*

*v. Boozman*, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002) (upholding Arkansas's school

immunization requirements).  Defendants submit declarations by five parents whose children

Defendants assert will potentially be harmed by a school's universal masking policy.  *See* ECF

Nos. 42-1; 42-2; 42-3; 45-1; 45-2.  Three parents state their children have medical, behavioral, or

other reasons their children cannot wear masks at school.  ECF Nos. 42-1; 42-2; 42-3.  One

parent states she requested and received exemptions from wearing masks at school for her two

children last year and has requested exemptions for her children again this year.  ECF No. 42-2

¶¶ 5, 8, 11.  Another parent states that if her school adopts a universal mask mandate, which it

since has, she "would strongly consider seeking an exemption."  ECF No. 42-3 ¶ 14.  The third

parent can likely seek an exemption for her child as well.  The final two parents state their children are deaf and have cochlear implants to assist them with hearing.  ECF Nos. 45-1 ¶ 3; 45-2 ¶ 3.  The parents state their children rely on facial expressions and lip reading to help them understand their teachers, classmates, and sign language interpreter.  ECF Nos. 45-1 ¶ 6; 45-2 ¶ 8.  These parents' concerns are valid.  Their children's education is important.  But the relief Plaintiffs seek in this case—and that the Court grants in issuing a preliminary injunction—does not require universal mask mandates in schools and certainly not without exception.  Most, if not all, schools with universal masking policies provide medical exemptions for children and staff.  *See* Ian Richardson & Samantha Hernandez, *Do I or My Child Qualify for a Religious Exemption from Masks and COVID Vaccines?  Here's What Iowa Law Says.*, Des Moines Reg. (Sept. 30, 2021, 10:10 AM), https://www.desmoinesregister.com/story/news/education/2021/09/29/covid-iowa-mask-mandates-vaccine-requirements-religious-exemptions-law-schools/5827767001.  Moreover, the declarations submitted by Defendants prove that the schools these children are enrolled in can and do work with these individual families to ensure their children have equal access to education.

Defendants Reynolds and Lebo also argue section 280.31 establishes a neutral, nondiscriminatory policy, that, if anything, is the cause of Plaintiffs' children being excluded from participation in or denied the benefits of the children's schools' programs, services, or activities, rather than Plaintiffs' children being denied participation or benefits because of their disabilities.  Thus, Defendants contend, there is no violation of the ADA or the Rehabilitation Act because section 280.31 "'applies to all students regardless of disability' and rests on concerns 'unrelated to disabilities or misperceptions about them.'"  *Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754, 756 (8th Cir. 1998) (quoting *DeBord*, 126 F.3d at 1105).

Defendants' argument misses the mark.  Although it is true that the enactment of section 280.31 prohibits school districts from implementing universal mask mandates to protect their students, it is because of Plaintiffs' children's disabilities that they are excluded from participation in or denied the benefits of the children's schools' programs, services, or activities by not being able to engage in in-person learning, which is especially crucial for children with disabilities.  *See* ECF No. 48-4 ¶¶ 17–23.  Moreover, as determined above, universal masking policies are a reasonable modification, which public schools are required to provide.[9]  *See* 28 C.F.R. § 35.130(b)(7); *Alexander*, 469 U.S. at 301; *see also Weinreich* v. *L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997) (noting reasonable modifications are required when an individual with a disability is denied meaningful access to a benefit because of his or her disability).

The Court reaffirms its earlier conclusion that Iowa Code section 280.31 seems to conflict with the ADA and section 504 of the Rehabilitation Act because it excludes disabled children from participating in and denies them the benefits of public schools' programs, services, and activities to which they are entitled.  Thus, section 280.31 appears to "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  The Supremacy Clause requires that federal law prevail over a conflicting state law.  The Court therefore concludes Plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits of their claims.

---

[9] As Defendants suggest, school districts may determine there are other reasonable modifications that would enable students with disabilities to engage in in-person learning.  But the availability of other reasonable accommodations that students with disabilities may request does not necessarily mean that universal masking policies are unreasonable.

### F. Balancing the Weight of the Injuries and Public Interest

Balancing the weight of the injuries involves assessing the harm a plaintiff would suffer without an injunction against the harm to other interested parties if the injunction is issued. *Baker Elec. Co-op.*, 28 F.3d at 1473; *Pavek v. Simon*, 467 F. Supp. 3d 718, 761 (D. Minn. 2020). "[C]ourt[s] should flexibly weigh the case's particular circumstances to determine 'whether . . . justice requires the court to intervene to preserve the status quo . . . .'" *Calvin Klein Cosms. Corp.*, 815 F.2d at 503 (quoting *Dataphase Sys., Inc.*, 640 F.2d at 113). The public-interest factor requires courts to consider the interest of the public when deciding whether to issue a preliminary injunction. *Dataphase Sys., Inc.*, 640 F.2d at 114.

As noted in the TRO, "[courts] are mindful of the general principle that courts will not second-guess the public health and safety decisions of state legislatures acting within their traditional police powers." *Sak v. City of Aurelia*, 832 F. Supp. 2d 1026, 1047 (N.D. Iowa 2011) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)). But when Congress passes antidiscrimination laws like "the ADA which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to [e]nsure that the mandate of federal law is achieved." *Id.* (quoting *Crowder*, 81 F.3d at 1485). In other words, the national public interest in enforcing the ADA wins out over the state's interest in enforcing Iowa Code section 280.31.

Defendants Reynolds and Lebo contend a preliminary injunction entered now—over four months after section 280.31 became effective—is not in the public interest because it would upset the status quo and cause confusion. Any delay in bringing a motion for a preliminary injunction can undermine the strength of a party's request for injunctive relief. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) (noting that "delay alone may justify the denial of a preliminary injunction when the delay is inexplainable in light of a

plaintiff's knowledge of the conduct of the defendant").  However, the Court is not persuaded

that there was any meaningful delay in this case or that any such delay was unjustifiable or

inexplainable.  The provision codified at Iowa Code section 280.31 was introduced in the state

legislature and signed by Governor Reynolds in less than a day and enacted with less than two

weeks left of the 2020–2021 school year.  Iowa's COVID-19 case numbers then dropped off

until they were at their lowest levels since the start of the pandemic.  It was at that point the

Delta variant began to cause a resurgence beginning in July, and case numbers have risen sharply

since.  But as seemingly happens with everything in this worldwide crisis, it was hard to predict

what the Delta variant would mean for Iowa families and the start of the new school year.

Plaintiffs brought this action approximately two weeks into the start of the new school year when

it was clear Defendants intended to enforce section 2801.31 and immediately requested

emergency injunctive relief.  The Court concludes Plaintiffs have thus demonstrated "reasonable

diligence" in seeking a preliminary injunction.  *See Benisek v. Lamone*, 585 U.S. ___, ___, 138

S. Ct. 1942, 1944 (2018).

Further, the Court concludes that issuing an injunction will maintain the status quo rather

than disrupt it.  "The status quo is the last uncontested status which preceded the pending

controversy."  *Minn. Mining & Mfg. Co. v. Meter ex rel. NLRB*, 385 F.2d 265, 273 (8th Cir.

1967) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir.

1958)).  The relevant status is not that which "'immediately preced[es] the litigation' because

that approach would allow any party opposing a preliminary injunction to create a new status

quo and impose a heightened burden 'merely by changing its conduct toward the adverse party.'"

*Kansas v. United States*, 192 F. Supp. 3d 1184, 1209 (D. Kan. 2016), *aff'd in part sub nom.*

*Kansas ex rel. Kansas Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226 (10th Cir.

2017) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155

(10th Cir. 2001)).  Rather, it is the status that "existed prior to the effective date of the challenged

[law]." *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1332 (7th Cir. 1980) (Pell, J., concurring in

part) (citing *Westinghouse Elec. Corp.*, 256 F.2d at 808).  In this case, the status quo to be

preserved is that "prior to the enactment of [Iowa Code section 280.31] when school districts had

the discretionary authority to mandate masks." *Disability Rights S.C. v. McMaster*, No. 3:21-cv-

02728-MGL, 2021 WL 4444841, at *4 (D.S.C. Sept. 28, 2021).  A preliminary injunction is

necessary in this case to restore the status quo ante. *See Aggarao v. MOL Ship Mgmt. Co.*, 675

F.3d 355, 378 (4th Cir. 2012) ("'[I]t is sometimes necessary to require a party who has recently

disturbed the status quo to reverse its actions,' [because] '[s]uch an injunction restores, rather

than disturbs, the status quo ante.'" (third alteration in original) (quoting *O Centro Espirita*

*Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004))).

    The Court similarly rejects Defendants' uncertainty and confusion argument.

"Regardless of the resolution of the preliminary injunction issue, uncertainty will exist until the

district court decides this dispute on the merits." *Baker Elec. Co-op, Inc.*, 28 F.3d at 1474.  The

Iowa Legislature and Defendant Reynolds caused confusion when they enacted section 280.31 in

the middle of the night with only two weeks remaining in the school year.  Up until that point,

local school districts were able to utilize their discretion to determine what was best for their

students.  Defendants have failed to present any evidence that enjoining their enforcement of

section 280.31 has caused any confusion.  And even if it has, any confusion that is caused by

returning discretion to the school districts as it was for most of last year, even if only temporary,

is minimal and does not weigh in favor of denying Plaintiffs' request for a preliminary

injunction.

It is in the public's interest to allow local public school districts to exercise their discretion to adopt universal masking policies in an effort to inhibit the spread of COVID-19 and protect the children in their schools.  Many schools with universal masking policies permit exemptions for medical reasons and some even provide for religious exemptions.  *See* Richardson & Hernandez, *supra* at 19.  There is no indication from Defendants that requests for exemptions from parents are being unfairly denied.  Moreover, there is little harm to Defendants in enjoining section 280.31 and permitting the individual public school districts to return to the ways in which they were operating prior to its passage by leaving a universal mask mandate to their discretion.  It is no great burden for individual school boards to make these types of decisions for the children within their districts.  *See* ECF Nos. 28-5; 28-6.

Accordingly, upon careful consideration of the totality of the circumstances, the Court reaffirms its prior conclusion that the balance of equities and public interest weigh in favor of maintaining the status quo.  As discussed above and in the TRO, Plaintiffs have shown a strong likelihood of succeeding on their claims that enforcement of Iowa Code section 280.31 violates Title II of the ADA and section 504 of the Rehabilitation Act.

### G.  Security

Because the Court finds that it is proper, upon balancing the *Dataphase* factors in the circumstances presented here, to issue a preliminary injunction, the Court turns to the question of security for its issuance.  Rule 65(c) requires the Court to consider whether Plaintiffs should provide security in an amount sufficient "to pay the costs and damages sustained by any party found to have been wrongfully enjoined."  Fed. R. Civ. P. 65(c); *see also Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 373 (8th Cir. 1991) (noting that security should be imposed "in an amount that fairly protects the [defendants] should it be ultimately found that the

[defendants] ha[ve] been wrongfully enjoined"). The bond amount rests within this Court's "sound discretion." *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). Many courts in this Circuit have interpreted Rule 65(c) to require a bond in every case in which a preliminary injunction is issued—even if only for a nominal amount. *See, e.g.*, *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 979 (N.D. Iowa 2006). However, the Eighth Circuit has approved waiving Rule 65(c)'s bond requirement under certain circumstances so long as the Court considers the issue and "make[s] the necessary findings in support of its determination." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991)); *see also Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978) (finding error, not because the trial court failed to require a bond in any particular amount, but because the court failed to exercise the discretion required by Rule 65(c) of considering the question of requiring a bond)). Defendants, as "[t]he party requesting a bond[,] bear[] the burden of establishing a rational basis for the amount of the proposed bond." *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007).

In a footnote, Defendants Reynolds and Lebo contend Rule 65(c) requires the Court to set a bond in this case. Defendants argue the appropriate amount for a bond under the circumstances is "$25,000 . . . to cover the potential costs and attorney fees incurred by all Defendants in response to the injunction." ECF No. 42 at 25 n.6. The Court asked Defendants to supplement the record and provide evidence supporting the proposed bond amount. *See* ECF No. 46 ¶ 1. In their Supplemental Response, Defendants state they would incur costs totaling $19,380, including $2,420 for appellate filing fees and printed briefs and appendices and at least $16,800 in attorney fees. *See id.* ¶¶ 4–7. Defendants further assert the school district Defendants will

also incur legal and administrative costs if the Court issues a preliminary injunction and that the

State has an interest in ensuring these costs are considered.  *Id.* ¶ 8.  Defendant school districts

have largely declined to participate in the proceedings thus far and have provided no evidence as

to any costs or damages they might incur as a result of a wrongly issued injunction.

Plaintiffs respond by asking the Court to waive the security ordinarily required under

Rule 65(c).  Plaintiffs assert the bond requirement should be waived given the important civil

rights and public interests at issue in this case and because the majority of the proposed bond

amount is to cover attorney fees, which Plaintiffs assert are not recoverable under Rule 65(c) or

the governing civil rights statutes.  Alternatively, Plaintiffs contend that, if the Court determines

a bond is required, the amount should be nominal.

The costs associated with filing an appeal and printing briefs and appendices are minimal.

Moreover, attorney fees incurred in litigating an injunction are not recoverable as damages.  *See*

*Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011) (citing *Tullock v. Mulvane*,

184 U.S. 497, 509–14 (1902)); *see also Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988)

("Attorney's fees are not recoverable as damages in an action on an injunction bond."),

*abrogated on other grounds by Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991); *Fireman's Fund*

*Ins. Co. v. S.E.K. Constr. Co.*, 436 F.2d 1345, 1352 (10th Cir. 1971) ("Under [Rule 65(c)]

attorneys' fees . . . are not recoverable.").  Defendants have not provided the Court with any

other evidence of damages or costs they might incur if it is later determined they were wrongly

enjoined.  The Court, having considered whether a bond is necessary in this case, concludes that,

under the circumstances, it is proper to waive the bond requirement here because of the

important public interest in the enforcement of the ADA and the Rehabilitation Act and the

minimal potential costs Defendants might incur in appealing the Court's Order.  For these reasons, the Court declines to require Plaintiffs to post security in this case.

## IV.  CONCLUSION

After considering the *Dataphase* factors, the Court grants Plaintiffs' request for a preliminary injunction.  Again, the Court recognizes issuing a preliminary injunction is an extraordinary remedy, however, given the current trajectory of pediatric COVID-19 cases in Iowa since the start of the school year, the irreparable harm that could befall the children involved in this case, Plaintiffs' likelihood of success on the merits, the grave harm to Plaintiffs if Iowa Code section 280.31 is not enjoined, and the important public interests at stake, such an extreme remedy is necessary.  The Court waives Rule 65(c)'s security requirement in this case.

IT IS THEREFORE ORDERED THAT:

1.  Defendants Governor Reynolds, Director Lebo, and the school districts are ENJOINED from enforcing Iowa Code section 280.31 banning local public school districts from utilizing their discretion to mandate masks for students, staff, teachers, and members of the public.

2.  Notwithstanding the provisions of Rule 65(c), the Court waives any requirement for Plaintiffs to post a bond or security in this case.

The Court declines to stay this ruling or hold it in abeyance should an appeal of this Order be filed.

IT IS SO ORDERED.

Dated this 8th day of October, 2021.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT