# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3268

_____

The Arc of Iowa; Charmaine Alexander, Individually and on behalf of C.B.;
Johnathan Craig, Individually and on behalf of E.C. on behalf of J.C.; Michelle
Croft, Individually and on behalf of J.J.B.; Amanda Devereaux, Individually and
on behalf of P.D.; Carissa Froyum Roise, Individually and on behalf of H.J.F.R.;
Lidija Geest, Individually and on behalf of K.G.; Melissa Hadden, Individually and
on behalf of V.M.H.; Lisa Hardisty Sithonnorath, Individually and on behalf of
A.S.; Heather Lynn Preston, Individually and on behalf of M.P. on behalf of S.P.;
Rebekah Stewart, Individually and on behalf of E.M.S.; Erin Vercande,
Individually and on behalf of S.V.

*Plaintiffs - Appellees*

v.

Kimberly Reynolds, In her official capacity as Governor of Iowa; Ann Lebo, In her
official capacity as Director of the Iowa Department of Education

*Defendants - Appellants*

Ankeny Community School District; Council Bluffs Community School District;
Davenport Community School District; Decorah Community School District;
Denver Community School District; Des Moines Public Schools; Iowa City
Community School District; Johnston Community School District; Linn Mar
Community School District; Waterloo Community School District

*Defendant*s

------------------------------

American Academy of Pediatrics; American Academy of Pediatrics, Iowa Chapter

*Amici on Behalf of Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: November 18, 2021
Filed: January 25, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

Plaintiffs, the Arc of Iowa and Iowa parents whose children have serious disabilities that place them at heightened risk of severe injury or death from COVID-19, sued to enjoin enforcement of Iowa's law prohibiting mask requirements in schools. The district court ruled that the law violated the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. It granted a preliminary injunction completely enjoining the law.

Having jurisdiction under 28 U.S.C. § 1292(a)(1), this Court holds that Plaintiffs are entitled to a preliminary injunction because mask requirements are reasonable accommodations required by federal disability law to protect the rights of Plaintiffs' children. However, the injunction imposed by the district court sweeps more broadly than necessary to remedy Plaintiffs' injuries. This Court therefore vacates, in part, and remands to allow the district court to enter a tailored injunction that prohibits Defendants from preventing or delaying reasonable accommodations and ensures that Plaintiffs' schools may provide such reasonable accommodations.

I.

In early 2020, many schools and school districts in Iowa moved to remote learning in response to the COVID-19 pandemic. When they later reopened for in-person classes, the Iowa Department of Education recommended mask-wearing at

schools, and many districts imposed broad mask mandates.  On May 20, 2021, Iowa Governor Kim Reynolds signed into law Iowa Code Section 280.31, prohibiting schools and school districts from requiring anyone wear masks on school grounds unless otherwise required by law.  In response, all Iowa schools and school districts with mask mandates ended them.  One district expressly stated it would have maintained mask requirements but for Section 280.31.

Where some Plaintiffs previously sent their children to schools with mask mandates, many withdrew their children due to the health risks, or were forced to send their children despite the risks due to no viable alternative.

Plaintiffs sued on September 3, 2021, under the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at scattered sections of 42 U.S.C.); Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701-18; and the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4.  Plaintiffs named as Defendants Governor Reynolds, who vowed to enforce Section 280.31, and Ann Lebo, the Director of the Iowa Department of Education, which also stated it would enforce the new law.  Plaintiffs also named as Defendants the ten school districts they attend.  Plaintiffs primarily seek as relief (1) declaration that the Defendants' enforcement of Section 280.31 violates the ADA and RA; (2) declaration that ARPA preempts the Iowa law and Defendants' enforcement; and (3) a permanent injunction stopping "Defendants from enforcing [Section 280.31] and thereby violating the ADA, Section 504 of the Rehabilitation Act, and ARPA."  **Compl.** at 37, DCD 1.

The district court granted a temporary restraining order against the law on September 13, 2021.  The court granted a preliminary injunction on October 8, 2021.  Once Section 280.31 was enjoined, 24 school districts—including most of Plaintiffs'—reimposed some form of mask requirements.   Only Defendants Reynolds and Lebo appeal the district court's entry of the preliminary injunction.  They argue Plaintiffs lack standing, failed to exhaust administrative remedies, and that the district court abused its discretion in granting the preliminary injunction.

This Court reviews de novo Plaintiffs' standing, ***Miller v. Thurston***, 967 F.3d 727, 734 (8th Cir. 2020), and exhaustion of administrative remedies, ***J.M. v. Francis Howell Sch. Dist.***, 850 F.3d 944, 947 (8th Cir. 2017).  This Court reviews the grant of a preliminary injunction for abuse of discretion.  ***Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC***, 953 F.3d 1041, 1044 (8th Cir. 2020).

## II.

Plaintiffs have standing.  "[A]t least one plaintiff must have standing to sue." ***Dep't of Com. v. New York***, 139 S. Ct. 2551, 2565 (2019).  To have standing, a plaintiff must (1) "suffer[] an injury in fact," (2) "fairly traceable to the challenged conduct of the defendant," and (3) "likely to be redressed by a favorable judicial decision."  ***Sarasota Wine Mkt., LLC v. Schmitt***, 987 F.3d 1171, 1178 (8th Cir. 2021) (quotations omitted).  Standing is measured at the commencement of the suit; it cannot be created retroactively.  *See **Lujan v. Defs. of Wildlife***, 504 U.S. 555, 569-70 nn.4 & 5 (1992); ***Iowa League of Cities v. EPA***, 711 F.3d 844, 869 (8th Cir. 2013).

## A.

Plaintiffs have demonstrated an adequate injury in fact.  "Parents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children." ***Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis***, 894 F.3d 959, 965-66 (8th Cir. 2018).  This includes parents who "allege an injury to their children's educational interests and opportunities." ***Id.*** at 965.

Plaintiffs documented that Section 280.31's ban on mask requirements forces them to forgo critical educational opportunities, including in-person learning with their peers.  For example, one Plaintiff's child, "S.V.," "has a brain injury, cerebral palsy, and a history of strokes and epilepsy." **Compl.** ¶ 15, DCD 1.  His doctors warned that contracting COVID-19 would create a "risk of severe complications,"

including "more severe seizures and further brain damage."  **Vercande Decl.** ¶ 11, DCD 3-6.  Because of his conditions and cognitive limitations, "he is nonverbal" and "cannot follow instructions easily" which makes it "much more difficult for him to adhere to . . . wearing a mask . . . so it is even more important that others wear a mask . . . around him."  **Id.** ¶ 12.  Staff at his school wore masks to ensure his safety, but that policy ended when Section 280.31 took effect and his parents removed him from school to ensure his safety.  **Id.** ¶¶ 13-16.  Not attending in-person poses a "risk to [students'] physical, psychological, emotional and developmental well-being."  **Waddell Expert Decl.** ¶ 7, DCD 3-1.  Remote learning in many school districts also does not provide "even nominally equivalent educational services" to in-class education.  **Srinivas Expert Decl.** ¶ 28, DCD 3-2.  *See* **Basham Expert Decl.** ¶¶ 17-23, DCD 48-4 (detailing how online learning fails some disabled students).

Other Plaintiffs demonstrated a substantial risk of bodily harm, which independently satisfies the injury requirement.  *See Dep't of Commerce*, 139 S. Ct. at 2565 (recognizing injury requirement may be fulfilled by potential future injury if "there is a substantial risk that the harm will occur" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))).  *See also Liddell*, 894 F.3d at 965 (holding allegations of likely future harm from adversary winning a motion were "neither conjectural nor hypothetical and [were] sufficiently imminent to constitute an injury in fact").  For example, one Plaintiff's son, "H.J.F.R.," has "congenital central hypoventilation syndrome," which causes breathing problems and forces him to use a ventilator when sleeping.  **Roise Decl.** ¶ 3, DCD 3-5.  Because contracting COVID-19 places him at "higher risk of severe complications," and the vast majority of students and staff did not wear masks at his school after Section 280.31 was enacted, his parents removed him from school last year.  **Id.** ¶¶ 3, 9.  This was feasible because the school offered remote classes last year.  **Id.** ¶¶ 8, 13.  This year, the school stopped offering remote classes, forcing his parents to send him to school in-person, where most children and some of his teachers are unmasked and there is no "social distancing."  **Id.** ¶¶ 11, 13-14.  Another Plaintiff's son, "K.G.," has asthma, **Geest Decl.** ¶ 4, DCD 3-12, which also presents a high risk for severe illness from COVID-19.  **Waddell Expert Decl.** ¶ 17, DCD 3-1.  K.G.'s asthma sometimes

requires a "school nurse [to] administer [his] inhaler" but "she does not wear a mask," the school rejected a request to have her wear a mask, and his teacher also does not "wear[] a mask when interacting with him one-on-one." **Geest Decl. ¶¶** 4-5, 10, DCD 3-12.  His gym "instructor even made [him] take off his mask to run indoors." *Id.* ¶ 10.

These facts are different than those in *E.T. v. Paxton*, 19 F.4th 760 (5th Cir. 2021).  There, the plaintiffs challenged an executive order that prohibited mask requirements in Texas schools on the grounds that it violated federal disability law. ***E.T.***, 19 F.4th at 763-64.  The Fifth Circuit held that the plaintiffs "likely failed to demonstrate standing" because other possible accommodations—such as voluntary masking, vaccination, and social distancing—meant that the plaintiffs had not shown that they faced an "either/or" choice between being "either forced out of in-person learning altogether or" taking greater health risks than their peers.  *Id.* at 765-66, *quoting **E.T. v. Morath***, No. 1:21-CV-717-LY, 2021 WL 5236553, at *14 (W.D. Tex. Nov. 10, 2021).

Even assuming that the establishment of an "either/or" choice is a meaningful way to assess injury-in-fact for present purposes, Plaintiffs here have shown they are forced into that very situation.  In fact, H.J.F.R. faces an even starker choice because his school offers no remote-learning option and other interventions have failed:  take extreme health risks or receive no education at all.  Voluntary masking has achieved little, given the behavior of his classmates and teachers.  Vaccinations against COVID-19 are voluntary.  *See* Iowa Dep't of Pub. Health, **COVID-19 and K-12 School Update for Fall 2021/Winter 2022**, *available at* https://idph.iowa.gov/Portals/1/userfiles/282/Updated_Guidance_1.pdf (last visited Jan. 20, 2022).  "The children and teachers in H.J.F.R's class are not socially distancing." **Roise Decl.** ¶ 11, DCD 3-5.  Alternative interventions have proven insufficient; Defendants do not argue otherwise.  Without some mask requirements, H.J.F.R. must take great health risks in order to receive an education.  Similarly, a mask requirement for K.G.'s nurse, when administering his inhaler, and for his teachers, when interacting one-on-one, appear the only option.  Defendants'

threatened enforcement has forced Plaintiffs into an "either/or" choice, and provides an adequate injury.[1]

## B.

Defendants do not contest that heightened risk of severe injury or death from COVID-19, or inferior remote learning constitute injuries sufficient to provide standing. *See generally* **Reynolds Br.** at 23-25.  Rather, they argue that "Plaintiffs are not harmed by 280.31 because it permits schools to mandate facial coverings

---

[1]An injury in fact must be "'concrete and particularized' and 'actual or imminent.'" ***Liddell***, 894 F.3d at 965, *quoting **Spokeo, Inc. v. Robins***, 578 U.S. 330, 339 (2016).  Defendants have not challenged these aspects of Plaintiffs' injuries, so this Court does not belabor them.  Indeed, the preceding facts reflect the concrete and particularized nature of Plaintiffs' injuries.  Further, their injuries are imminent because "there is a substantial risk that the harm will occur." ***Driehaus***, 573 U.S. at 158, *quoting **Clapper v. Amnesty Int'l USA***, 568 U.S. 398, 414 n.5 (2013).  Unlike those cases where plaintiffs relied on a series of speculative inferences unsupported by empirical evidence, Plaintiffs here thoroughly documented their substantial risk of contracting COVID-19 and incurring serious illness. *Compare **Clapper***, 568 U.S. at 411-14 (finding injury not imminent where it required five different, necessary assumptions, but plaintiffs could "only speculate" as to the likelihood of each and "substantially undermine[d] their standing" by "fail[ing] to offer any evidence" to support the first assumption), *and **In re SuperValu, Inc.***, 870 F.3d 763, 771 (8th Cir. 2017) (holding complaint did not adequately allege substantial risk of injury where it asserted harm from risk of identity theft due to stolen credit-card data but lacked "more detailed factual support" than a single, unhelpful, decade-old report on identity-theft that had found "most [data] breaches have not resulted in . . . identity theft"), *with* Waddell Expert Decl. ¶¶ 1-9, 17-27, DCD 3-1 (documenting rates of COVID-19 Delta variant transmission in Iowa, impact on children, risks due to preexisting conditions, and efficacy of masking to prevent transmission), Srinivas Expert Decl. ¶ 24, DCD 3-1 (discussing study predicting between 91% and 75% of students would be infected with COVID-19 within three months without adequate preventative measures, including masks), *and* Srinivas Expert Decl. ¶¶ 7-9, DCD 48-2 (discussing further evidence of heightened transmission risk in schools without mask requirements).

when required by federal law" but also assert that federal law does not require this, so Plaintiffs have not shown traceability.  *Id.* at 23.  Defendants are incorrect.

Plaintiffs' injuries are fairly traceable to Section 280.31.  "An injury is fairly traceable to a challenged statute when there is a causal connection between the two." *Sarasota Wine Mkt., LLC*, 987 F.3d at 1178, *quoting Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019).  "Proximate causation is not a requirement of Article III standing."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).  Traceability "requires no more than de facto causality."  *Dep't of Com.*, 139 S. Ct. at 2566, *quoting Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.).  *See Block*, 793 F.2d at 1309 (holding plaintiff had standing to sue government for harms caused by possibly "irrational" third-party response to government action because, although irrationality may have been relevant to the merits and "legal cause" of injury, it was "irrelevant" to standing, which requires only "de facto causality").  Thus, a plaintiff has standing to sue for injuries caused by "the predictable effect of Government action on the decisions of third parties."  *Dep't of Com.*, 139 S. Ct. at 2566.  *See also Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 714 (6th Cir. 2015) ("In the nebulous land of 'fairly traceable,' where causation means more than speculative but less than but-for, the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions satisfies the requisite standard.").

Here, Plaintiffs' schools' decision to stop requiring students and staff to wear masks on school grounds were a predictable effect of the enforcement of Section 280.31 threatened by Defendants Reynolds and Lebo.  These Defendants interpret the law to completely prohibit schools from requiring anyone wear masks on their property and interpret federal law to never require masks in schools.  The Iowa Department of Education, which Defendant Lebo heads, has threatened violators of the law with referral to the State Board of Education, which even can take control of districts and strip them of accreditation.  *See* **Prelim. Inj. Order** at 17, DCD 60; **TRO** at 7, 17, DCD 32.  *See also* **Pls.' Prelim. Inj. Br.** at 7-8 & n.25, DCD 17, *citing* Ian Richardson, ***Can Iowa Schools Defy the State's COVID Mask Ban Like***

*Florida and Texas Schools Are?* Des Moines Reg. (Aug. 16, 2021), *available at* https://www.desmoinesregister.com/story/news/politics/2021/08/16/what-backlashcould-schools-face-if-they-defy-iowas-mask-mandate-ban-kim-reynolds-cdc-covid/5512069001/.   Some Iowa schools and school districts previously had mask requirements. After Section 280.31, none of them did, including Plaintiffs' schools.  *See* **Pls.' Decls.**, DCDs 3-3 to -13 (describing lack of mask requirements in schools).  Defendants themselves acknowledge that each "school may fear that it will be subject to enforcement action by the State and not want to risk waiting until [imposing a mask mandate and litigating the issue] to find out if the State is correct in its interpretation of federal disability law." **Reynolds Br.** at 25.

Plaintiffs' injuries are the foreseeable result of Defendants' threatened enforcement of Section 280.31:  the schools and school districts have gone without mask mandates because of the law and the threat of enforcement, and Plaintiffs have been forced to choose between their children's lives and the quality of their education.  Plaintiffs have shown traceability because their injuries are caused by "the predictable effect of Government action on the decisions of third parties." ***Dep't of Com.***, 139 S. Ct. at 2566.

## C.

Plaintiffs' injuries are likely to be redressed by a favorable judicial decision. The redressability element of standing requires only that it be "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." ***Lujan***, 504 U.S. at 561 (quotations omitted).  *See **Liddell***, 894 F.3d at 966.  A plaintiff may satisfy redressability by "show[ing] that a favorable decision will relieve a discrete injury" but "need not show that a favorable decision will relieve his every injury." ***Massachusetts v. EPA***, 549 U.S. 497, 525 (2007), *quoting **Larson v. Valente***, 456 U.S. 228, 244 n.15 (1982).  When a plaintiff's "injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," "causation and redressability ordinarily hinge on the response of the . . . third party," and the

plaintiff must show that third party will act "in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.

Plaintiffs have established redressability for three reasons. First, the facts showed that many schools, including Plaintiffs', stopped their mask requirements only when Section 280.31 became effective. This establishes causation and the strong inference that enjoining Section 280.31 will lead these schools to return to some form of mask requirements. Second, some of Plaintiffs' schools previously had mask requirements for people around their children to ensure their safety. This suggests the schools recognized the need to accommodate Plaintiffs' disabilities and, if the ADA or RA require some masking, that schools will implement mask requirements to avoid violating federal disability law. Third, when the district court entered the preliminary injunction, 24 different Iowa school districts implemented mask requirements, affecting roughly 30% of Iowa students. **Srinivas Expert Decl.** ¶¶ 3-4, DCD 48-2. This includes eight of the ten districts attended by Plaintiffs. *Compare id.* ¶ 3 (listing districts that reimplemented mask requirements), *with* **Pls.' Decls.**, DCDs 3-3 to 3-13 (identifying Plaintiffs' districts). This corroborates that Plaintiffs' injuries will be redressed by enjoining Defendants' enforcement of Section 280.31.

Defendants cite Supreme Court precedent to assert that redressability is "too speculative," **Reply** at 12-13, but redress here differs from those cases because it does not depend on a third party with unconstrained discretion. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344-45 (2006) (finding taxpayers lacked redressability where establishing it "require[d] speculating" what the legislature would do but "the courts cannot presume either to control or predict" the legislature's use of its "broad and legitimate discretion" (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989))); *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42-43 (1976) (holding plaintiffs who sued IRS lacked standing where they hoped reversal of IRS rule would "'discourage' hospitals from denying their services to" plaintiffs, but whether hospitals had denied services based on the existing rule remained unclear and, even if the rule were reversed, hospitals would remain free to

not provide services to plaintiffs). Here, the Defendant school districts have scant discretion. If federal law requires schools impose some mask requirements to accommodate disabled students, then these Defendants, including Plaintiffs' own school districts, likely would provide those accommodations.

Defendants also err in claiming that only an "injunction requiring everyone in [Plaintiffs'] children's schools to wear a mask" would redress their injury. **Reynolds Br.** at 26. Plaintiffs' core injury is that their schools, under Section 280.31 as enforced, could not enact any mask requirements that would help ensure their children's safety during in-person learning. The children's circumstances and needs are varied; some cannot wear masks. *See, e.g.*, **Vercande Decl.** ¶¶ 11-16, DCD 3-6 (explaining child's limited ability to follow instructions means that he cannot wear a mask so his school previously had the staff members that help him wear masks); **Sithonnorath Decl.** ¶¶ 6, 11, DCD 3-7 (stating child's Down syndrome makes it difficult for her to consistently wear a mask so others' mask-wearing is critical). Enjoining the current enforcement allows schools to craft mask requirements tailored to Plaintiffs' children's needs and those of other students who may require accommodations related to masks. In contrast, an absolute universal mask mandate might violate disability law by forcing students unable to wear masks due to disabilities—including some of Plaintiffs' children—to do so. Thus, Plaintiffs sought to enjoin Defendants from enforcing of Section 280.31 to prohibit any mask requirements, and did not seek to impose specific masking requirements on their schools, *see* **Compl.** at 37, DCD 1.

Plaintiffs have standing: they established injuries that are fairly traceable to Defendants' conduct and likely to be redressed by a favorable judicial decision.

III.

Plaintiffs need not administratively exhaust under the Individuals with Disabilities Education Act because its exhaustion requirement does not apply to their claims.

-11-

The Individuals with Disabilities Education Act ("IDEA"), Pub. L. No. 101-476, 104 Stat. 1142 (codified as amended in scattered sections of 20 U.S.C.), guarantees a "free appropriate public education" ("FAPE") to "all children with disabilities . . . between the ages of 3 and 21." **20 U.S.C. § 1412(a)(1)(A)**. A "FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." ***Fry v. Napoleon Cmty. Schs.***, 137 S. Ct. 743, 748-49 (2017), *quoting* **20 U.S.C. §§ 1401(9), (26), (29)**. The primary means of providing a child with a FAPE is an "individualized education program" ("IEP"), which documents the child's "current levels of academic achievement, specifies measurable annual goals for how she can make progress in the general education curriculum, and lists the special education and related services to be provided so that she can advance appropriately toward those goals." ***Id.*** at 749 (cleaned up), *citing* **20 U.S.C. § 1414(d)(1)(A)(i)**.

The IDEA requires administrative exhaustion even for some non-IDEA suits. The IDEA does not restrict the "rights, procedures, and remedies available under . . . the American with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities" but it requires "that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." **20 U.S.C. § 1415(l)**. Those subsections, in turn, require that a parent submit a complaint to the state or local education agency, and then provide for: (1) a "preliminary meeting" between parents and the local education agency to informally resolve the parents' complaint; (2) an "impartial due process hearing" before the relevant State or local education agency that allows the hearing officer to decide a resolution, if any; (3) an appeal to the State educational agency by the losing party. *See id.* **§ 1415(f)-(g)**. If the parent finds the outcome insufficient, they may sue in federal court. ***Id.*** **§ 1415(i)(2)(A)**.

Under *Fry v. Napoleon Community Schools*, the IDEA requires exhaustion only if a suit "seek[s] relief for a denial of a FAPE," and "a court should look to the substance, or gravamen, of the plaintiff's complaint" to determine whether a plaintiff seeks relief for such a denial.  137 S. Ct. at 752.  "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE" but this is a fact-dependent inquiry. ***Id.*** at 757.

The Supreme Court has identified two questions for assessing the gravamen of the complaint:  (1) could "the plaintiff have brought essentially the same claim" if the conduct occurred at "a public facility that was not a school," such as a public theater or library; and (2) could an adult at the school, such as an employee, "have pressed essentially the same grievance?"  ***Id.*** at 756.  If the answer to both questions is yes, then "a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject."  ***Id.  See E.D. By & Through Dougherty v. Palmyra R-I Sch. Dist.***, 911 F.3d 938, 941 (8th Cir. 2019) ("*E.D.*") (describing *Fry*'s two questions as "critical to determining whether" IDEA exhaustion requirement applies); ***Nelson v. Charles City Cmty. Sch. Dist.***, 900 F.3d 587, 592 (8th Cir. 2018) (answering "no" to both *Fry* questions and concluding IDEA exhaustion requirement applied to plaintiffs).

*Fry* hypothesized that IDEA exhaustion requirements do not apply to a complaint by a wheelchair-bound child against his school for failing to provide access ramps because the child could bring a similar suit against a city library, and an adult employee could bring a similar suit against the school.  ***Fry***, 137 S. Ct. at 756.  This is true even though "that architectural feature has educational consequences" and could have been brought under the IDEA because the child "cannot receive instruction" at the school, and simply carrying him inside "may not achieve the sense of independence conducive to academic (or later to real-world) success."  ***Id.***  In contrast, IDEA exhaustion requirements apply to a suit alleging a school's failure to provide math tutoring to address a learning disability because the

-13-

child could not bring such a suit against a public theater, and an employee could not sue the school for not providing math tutoring to the employee. *Id.* at 756-57.

In *Fry* itself, the plaintiffs were parents and their child, a five-year old with severe cerebral palsy, whose trained service dog helped her "live as independently as possible" by retrieving dropped items, supporting her when walking and getting on and off the toilet, opening and closing doors, turning on lights, and other tasks. *See id.* at 751.  The school refused to admit her dog, insisting an adult provide this assistance instead.   *See id.*   The Court held that the Frys need not exhaust administrative options under the IDEA where the complaint "allege[d] only disability-based discrimination, without making any reference to the adequacy of the special education services" provided by the school, and "the nature of the Frys' suit" did not suggest "any implicit focus on the adequacy of [the child's] education." *Id.* at 758.  The Frys themselves acknowledged that the school satisfied their daughter's "educational needs." *Id.*

Here, Plaintiffs seek authority for their school districts to require mask-wearing in schools that would ensure a safe school environment for their children. They challenged their school's failure to require any masks on the premises, which forced them to choose between having children physically attend school, with a significant risk of serious injury or death, or not attend in-person, if at all.  The answer to both of *Fry*'s questions is yes.  First, the Plaintiffs could have brought essentially the same claim against a public hospital or other facility if it failed to require others to wear face masks because this would similarly exclude their children from the facility.  Second, an adult, such as a teacher at the school, could press the same grievance if failing to require others at the school to wear masks put the adult at significantly increased risk of illness or death.  Thus, the gravamen of Plaintiffs' Complaint does not seek relief from a denial of a FAPE.  Indeed, Plaintiffs have not challenged the adequacy of their individual, special education services, or their IEPs. *See* **Pls.' Decls.,** DCDs 3-2, -4, -7, -8, -10, -12.

-14-

Face masks, like wheelchair ramps, render school buildings accessible to a part of the public—students and adults alike—that otherwise could not access them as the rest of the public does. Thus, face masks are a public health feature with "educational consequences," and although suit could have been brought under the IDEA because Plaintiffs may not be able to "receive instruction" at their schools, these facts do not trigger the IDEA's exhaustion requirements, just as they did not for *Fry*'s "architectural feature" of missing wheelchair ramps. *Fry*, 137 S. Ct. at 756.

The experiences of H.J.F.R. and K.G. crystalize why the IDEA does not require exhaustion here. H.J.F.R.'s school offers no fully online learning option. His injury stems not from the relative quality of online or in-person education, but the danger that his school's physical environment—which he must brave—poses to his health unless some masking is required. Similarly, K.G. does not challenge the substantive quality of his education; only the physical safety associated with it. His only disability is asthma. *See* **Geest Decl.** ¶ 4, DCD 3-12. He does not have an individualized education plan; only an inhaler that requires administering as needed. *See id.* ¶ 5; **Geest Sealed Ex. A** at 25, DCD 11. His complaint is not about the appropriateness or adequacy of his public education, but that his school places him at heightened risk of severe illness by not requiring a few individuals to sometimes wear masks. Indeed, it makes little sense to pursue an IEP—that documents K.G.'s "current levels of academic achievement, specifies measurable annual goals for how []he can make progress in the general education curriculum, and lists the special education . . . to be provided so that []he can advance appropriately toward those goals," *Fry*, 137 S. Ct. at 749 (quotations omitted)—where K.G.'s challenge is not academic achievement, but that his nurse refuses to wear a mask when administering his inhaler, and his teacher when interacting one-on-one. Plaintiffs' focus on the threat to their health during their in-person attendance highlights that the gravamen of their complaint is about safe physical access and not subject to exhaustion, unlike the plaintiffs in *E.T. See **E.T.**, 19 F.4th at 767 (requiring exhaustion where "[p]laintiffs d[id] not really center their claims on a deprivation of physical access").

Defendants assert that the "proper" inquiry under *Fry* is "whether a teacher or visitor could bring a claim that they're being forced to choose between their health or receiving an *equal education*." **Reynolds Br.** at 37 (emphasis added).  This attempts to make educational quality dispositive for *Fry*'s questions.  However, *Fry* itself prohibits this approach.  There, the Supreme Court reversed the Court of Appeals for the Sixth Circuit, which "went wrong" by using a more sweeping standard that required exhaustion where the plaintiff's injuries "were, broadly speaking, 'educational' in nature." *Fry*, 137 S. Ct. at 753, 758.  The Court rejected the Sixth Circuit's reasoning that the "value of allowing" the dog at the school was "educational"—and thus required exhaustion—because the dog would bolster the plaintiff's "sense of independence and social confidence," which was "the sort of interest the IDEA protects." *Id.* at 758, *quoting* ***Fry v. Napoleon Cmty. Schs.***, 788 F.3d 622, 627 (6th Cir. 2015), *vacated*, 137 S. Ct. 743 (2017).  *See also **id.*** at 756 n.9 (suggesting "the plausibility of bringing other variants of [a] suit" is the focus of the gravamen inquiry, not "the particular circumstances of such a suit (school or theater? student or employee?)").  Defendants' proposed inquiry here would lead to the very conclusion that the Supreme Court reversed in *Fry*:  that IDEA exhaustion is required because the plaintiff's claim is "broadly speaking, 'educational' in nature."  Indeed, *Fry* would have answered "no" to its second question if the inquiry were whether an adult at the school could have pressed a grievance for the lost educational benefit from a support dog.  This implication shows Defendants' proposed focus is misplaced.

Finally, this Court's post-*Fry* precedent reinforces that exhaustion is not required here.  Plaintiffs have not made IEP compliance "a central dispute of this litigation." ***J.M.***, 850 F.3d at 949  (holding IDEA exhaustion required where claims were "based on the failure to implement [plaintiff's] IEP, specifically regarding discipline," including that the defendant used disciplinary techniques "which were not permitted within [the plaintiff's] IEPs").  Nor is Plaintiffs' suit a type they could not bring against another public facility, and which an adult could not bring against a school.  *See **Nelson***, 900 F.3d at 592 (holding IDEA exhaustion required where Plaintiff "could not have sued a public theater or library for the mishandling of an

-16-

application to open-enroll in online educational programming in a neighboring school district," and an adult employee of the district could not have brought such a claim); *E.D.*, 911 F.3d at 941 (holding IDEA exhaustion required where plaintiffs could not have sued other public facilities for "greater incorporation of [child's] iPad into the classroom or additional time to complete his assignments," and a visitor could not have brought such a claim). Because the gravamen of Plaintiffs' complaint does not seek relief from a denial of a FAPE, the IDEA's exhaustion requirements do not apply.[2]

IV.

Plaintiffs meet each requirement for a preliminary injunction and are therefore entitled to one. "A plaintiff seeking a preliminary injunction must establish" that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *See also Jet Midwest*, 953 F.3d at 1044 (stating similar test);

---

[2]Even if the gravamen of Plaintiffs' complaint sought relief from the denial of a FAPE, exhaustion likely would have been futile and not required because "adequate relief likely could not have been obtained through the administrative process." *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011). *See also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) ("Congress specified that exhaustion is not necessary if . . . it is improbable that adequate relief can be obtained by pursuing administrative remedies."). Iowa code provides merely for "an administrative law judge's determination of whether a child received [a] FAPE." **Iowa Admin. Code r. 281-41.513(1)(a)**. Where schools and school districts were refusing to require masks due to Defendants' threatened enforcement of Section 280.31, an administrative law judge would have had scant power to provide adequate relief. *Cf. Tindal v. Norman*, 427 N.W.2d 871, 873 (Iowa 1988) (finding futility exception to state law exhaustion requirement for challenges to agency decisions applied because "agencies cannot decide issues of statutory validity"). Defendants have not identified contrary authority, while their unsupported assertion that such a judge could impose "any number of reasonable modifications . . . including mask mandates," Reply at 19, contradicts their own interpretation of Section 280.31 and federal disability law.

-17-

*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (en banc) ("[A] party seeking a preliminary injunction of the implementation of a state statute must demonstrate [it] is likely to prevail on the merits." (quotations omitted)).  "The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009).  A district court abuses its discretion when granting a preliminary injunction if it "relies on clearly erroneous factual findings," commits "an error of law," fails to consider "a relevant factor that should have been given significant weight," gives "significant weight" to an "irrelevant factor," or "commits a clear error of judgment" in weighing all proper factors.  *Dixon v. City of St. Louis*, 950 F.3d 1052, 1055 (8th Cir. 2020) (quotations omitted).

Under the first factor, Plaintiffs are likely to succeed on the merits because mask requirements constitute a reasonable modification and schools' failure to provide this accommodation likely violates the RA.

Section 504 of the Rehabilitation Act states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  **29 U.S.C. § 794(a)**.  "[P]ublic entities discriminate in violation of the Rehabilitation Act if they do not make reasonable accommodations to ensure meaningful access to their programs."  *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997).  *See also* **Layton v. Elder**, 143 F.3d 469, 472 (8th Cir. 1998).  For a failure-to-accommodate claim under the RA, a plaintiff must show that (1) she is a qualified individual with a disability, (2) the defendant receives federal funding, and (3) the defendant failed to make a reasonable modification to accommodate her disability.  *Durand v. Fairview Health Servs.*, 902 F.3d 836, 841 (8th Cir. 2018); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076-77 & n.5 (8th Cir. 2006).  "[A]n accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a fundamental

alteration in the nature of the program." ***DeBord***, 126 F.3d at 1106. ***See Pottgen v. Missouri State High Sch. Activities Ass'n***, 40 F.3d 926, 930 (8th Cir. 1994).

Defendants do not contest that they receive federal funding, or that Plaintiffs are otherwise qualified individuals with disabilities who are excluded from meaningful access due to those disabilities. Rather, they argue the accommodations sought are unreasonable. *See* **Reynolds Br.** 42-47. However, Plaintiffs' requested accommodation—that schools require some others wear masks—is reasonable. It does not constitute a "fundamental alteration" of the nature of schools' educational programs. Before Section 280.31 was enacted, the Iowa Department of Education maintained "guidance on face coverings . . . in line with CDC" recommendations, and "defer[red] to local districts" on how to conduct school activities. Iowa Dep't Educ., **Reopening Guidance for Schools: Frequently Asked Questions** (June 30, 2020), *available at* http://web.archive.org/web/20201028011619/https://educateiowa.gov/sites/files/ed/documents/COVID-19%20Reopening%20FAQ%206%2030%2020.pdf (last visited Jan. 20, 2022); Iowa Dep't Educ., **COVID-19 Guidance and Information** (Oct. 7, 2020), *available at* http://web.archive.org/web/20210109052728/https://educateiowa.gov/article/2021/01/07/covid-19-guidance-and-information (last visited Jan. 20, 2022). After the district court enjoined Defendants' enforcement, Iowa public schools enrolling "approximately 30% of students in Iowa" imposed mask requirements. **Srinivas Expert Decl.** ¶ 4, DCD 48-2. Similarly, most of the schools that Plaintiffs attend imposed mask requirements, at least as necessary around Plaintiffs, before Section 280.31 was enacted and reimposed mask requirements after the law was enjoined. Where these schools can, did, and do impose mask requirements, continuing to maintain some mask requirements does not constitute a "fundamental alteration." Further, Defendants have not produced any evidence that mask requirements would create a significant financial or administrative burden.

Requiring masks also is not an unreasonable infringement on third parties' rights. First, this argument is undercut by the fact that some Iowa schools have

already imposed the requirement.  Second, the Eighth Circuit has found reasonable a modification that imposed on third parties without injuring their health.  *See Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1100-01 (8th Cir. 1999) (finding employer's accommodations of employee's condition that resulted in sinus attacks from environmental irritants "were reasonable," including ban on "the use of nail polish in his department").  Third, schools and the State routinely impose similar requirements, including protective headwear, and immunization.  *See* **Iowa Code §§ 280.10, 280.11** (requiring eye and ear protection in some classes); *id.* **§ 139A.8(2)** (prohibiting enrollment in "elementary or secondary school in Iowa without evidence of adequate immunizations" against various communicable diseases).  Because Plaintiffs' requested accommodation is reasonable, they are likely to succeed on their Rehabilitation Act claim.[3]

Because Section 504 of the RA likely requires mask wearing as a reasonable accommodation for plaintiffs' disabilities, this Court need not consider how ARPA or Title II of the ADA applies to Plaintiffs' claims.

Given the likely reasonable accommodation requirement, the next question is whether federal disabilities law preempts Section 280.31.  The district court held that federal law conflicted with and therefore preempted Section 280.31.  Conflict preemption occurs "where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of congressional objectives." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 621 F.3d 781, 794 (8th Cir. 2010) (quotations omitted).

---

[3]In the ADA employment context, a plaintiff must request the "accommodation[] or assistance for his or her disability" before filing suit.  *See Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002).  To the extent that this requirement may apply here, many Plaintiffs—including the parents of H.J.F.R., K.G., and S.V.—did seek face mask requirements for their children's disabilities. *See* **Roise Decl.** ¶ 10, DCD 3-5; **Vercande Decl.** ¶ 14, DCD 3-6; **Devereaux Decl.** ¶ 10, DCD 3-10; **Preston Decl.** ¶ 18, DCD 3-11; **Geest Decl.** ¶ 5, DCD 3-12.

This Court holds that Section 280.31 allows mask requirements that are necessary to comply with the RA or ADA, and is thus not conflict-preempted by these laws.  Section 280.31 prohibits schools from requiring anyone "to wear a facial covering for any purpose . . . unless the facial covering . . . is required by . . . any other provision of law."  **Iowa Code § 280.31**.  Neither the Eighth Circuit nor Iowa courts have assessed how to interpret statutory prohibitions that except compliance with other laws.  As a result, this Court follows Iowa state rules of statutory interpretation.  *See **Brandenburg v. Allstate Ins. Co.***, 23 F.3d 1438, 1440 (8th Cir. 1994).  Iowa courts interpret a law according to its plain language when that language is unambiguous.  ***Rhoades v. State***, 880 N.W.2d 431, 446 (Iowa 2016).  Here, the phrase "unless . . . required by . . . any other provision of law" states unambiguously that Section 280.31 does not apply where "any other provision of law" requires masks. "Unless" and "required by" need no elaboration.  "Any," meanwhile, makes "provision of law" a broad category and does not distinguish between state or federal laws.  *See **Any***, Merriam-Webster Dictionary (defining "any" as "one or some indiscriminately of whatever kind" or "EVERY—used to indicate one selected without restriction"), *available at* https://www.merriam-webster.com/dictionary/any (last visited Jan. 20, 2022).  Thus, the plain meaning of Section 280.31 is that where federal law requires masks in school, Section 280.31 allows them.  *Cf. **Shamrock Farms Co. v. Veneman***, 146 F.3d 1177, 1180 (9th Cir. 1998) (interpreting federal statutory provision, which stated "[n]othing in this Act or any other provision of law shall be construed to preempt" California from regulating milk, to mean that California could promulgate milk standards despite dormant Commerce Clause precedent because, with "any," "Congress demonstrated its intent to encompass all law, whether it be statutory law, common law, or constitutional law").  Defendants themselves acknowledge that if "federal law requires some masks in schools, section 280.31 doesn't prohibit it."  **Reynolds Br.** at 23.  Because Section 280.31 allows mask requirements to comply with the ADA or RA,  it does not conflict with and is not preempted by these laws.

The district court did not interpret Section 280.31 before concluding that federal disability law preempted it.  Instead, the court assumed that Section 280.31

banned mask requirements regardless of federal disability law. This incorrect interpretation of Section 280.31 is an error of law, which this Court reverses for the reasons stated above. Regardless, the first preliminary injunction factor favors Plaintiffs because they are likely to prevail on the merits of their RA claim.

Under the second factor for a preliminary injunction, a plaintiff must demonstrate "that irreparable injury is likely in the absence of an injunction." **Winter**, 555 U.S. at 22. Plaintiffs have met this burden. They have provided evidence, including expert affidavits, that exposure to COVID-19 places them at heightened risk of severe illness or death, and that alternatives to in-person attendance, when available, are inadequate and provide inferior education opportunities. *See* **Waddell Expert Decl.** ¶ 7, DCD 3-1 (noting harms to "emotional" and "developmental well-being" from staying out school); **Srinivas Expert Decl.** ¶ 28, DCD 3-2 (discussing need for in-person instruction and failings of remote instruction); **Sithonnorath Decl.** ¶ 13, DCD 3-7 (stating daughter with Down syndrome has trouble learning online, needs "visual and hands on" learning which is "near impossible" for her remotely, and "regressed" during remote learning).

These harms suffice as irreparable. *See **Plyler v. Doe**, 457 U.S. 202, 221 (1982) (noting the "lasting impact of [education's] deprivation on the life of a child"); **Harris v. Blue Cross Blue Shield of Missouri**, 995 F.2d 877, 879 (8th Cir. 1993) (concluding "life threatening illness" unquestionably constitutes "irreparable injury"); **Issa v. Sch. Dist. of Lancaster**, 847 F.3d 121, 142 (3d Cir. 2017) (recognizing "even a few months in an unsound [educational] program can make a world of difference in harm to a child's educational development" and finding irreparable harm from inadequate educational programs). *Cf.* **Monahan v. State of Neb.**, 645 F.2d 592, 598 (8th Cir. 1981) (finding irreparable harm from educational placement not met where plaintiff's present placement "provide[d] an adequate educational program" but not challenging premise that educational placement could constitute irreparable harm). Further, Defendants do not argue the contrary.

The third factor, the balance of the equities, also favors Plaintiffs.  For this factor, the court weighs "the threat of irreparable harm shown by the movant against the injury that granting the injunction will inflict on other parties litigant."  ***MPAY Inc. v. Erie Custom Computer Applications, Inc.***, 970 F.3d 1010, 1020 (8th Cir. 2020) (quotations omitted).   Plaintiffs have documented serious health and educational harms.  Defendants assert injuries that are minimal.  First, they assert an interest in enforcing the law, but this is not a valid interest, let alone injury, where their enforcement is not required by state law and violates federal law.  Defendants have no interest in forcing schools to not impose mask requirements insofar as federal law requires some mask requirements as a reasonable accommodation for disabled students.   Second, Defendants assert that imposing a "universal mask mandate" may harm other disabled students who cannot wear masks.  *See* **Reynolds Br.** at 45.  However, Plaintiffs do not request this relief, so the hypothetical harm is irrelevant.  Because Defendants' injuries are minimal, while Plaintiffs' have shown a likelihood of irreparable harm, including serious injury and educational impairment, this factor favors Plaintiffs.

The fourth factor, the public interest, also favors Plaintiffs.  Defendants raise comity in state-federal relations, which is relevant to the public interest inquiry.  *See* ***Dixon***, 950 F.3d at 1056.  Although the present injunction entered by the district court may implicate comity concerns, an injunction of proper scope, as discussed below, would not implicate comity because it would maintain Section 280.31's ban on mask requirements where this ban does not violate federal law.  This interest therefore does not weigh against an injunction.  Finally, the public interest also benefits from enjoining current enforcement because it enables schools to require masks that reduce the spread of a dangerous, highly transmissible disease.  *See* **Waddell Expert Decl.** ¶ 22, DCD 3-1 (stating CDC recommends "universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status" due to concerns about "highly transmissible nature" of Delta variant).

Because all four factors favor Plaintiffs, they are entitled to a preliminary injunction.

V.

Plaintiffs are entitled to a preliminary injunction but the district court abused its discretion by entering an overbroad one.  This Court reverses as to the scope of the injunction.

An injunction must be tailored to remedy the specific harm suffered.  *See, e.g.*, ***St. Louis Effort for AIDS v. Huff***, 782 F.3d 1016, 1022-23 (8th Cir. 2015) ("[A] preliminary injunction 'must be narrowly tailored to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law.'" (quoting ***Price v. City of Stockton***, 390 F.3d 1105, 1117 (9th Cir. 2004))); ***Rogers v. Scurr***, 676 F.2d 1211, 1214 (8th Cir. 1982) ("An injunction must be tailored to remedy specific harm shown."); ***Rizzo v. Goode***, 423 U.S. 362, 378 (1976) ("[T]he nature of the violation determines the scope of the remedy." (quoting ***Swann v. Charlotte-Mecklenburg Bd. of Ed.***, 402 U.S. 1, 16 (1971))).

Here, the harm suffered is that Plaintiffs' schools cannot require masks as necessary to accommodate their children's disabilities because of Defendants Reynolds's and Lebo's incorrect interpretation and threatened enforcement of Section 280.31.  Plaintiffs are not harmed by the absence of mask requirements at schools their children do not attend.  Further, to the extent that some schools in Iowa do not encounter anyone whose disabilities require the schools to make others wear masks, Section 280.31 may prohibit those schools from imposing mask requirements without violating federal disability law.  A proper injunction therefore would:  (1) establish that federal disability law requires mask wearing as a reasonable accommodation and that Section 280.31 allows this; (2) prohibit Defendants from imposing a contrary reading of Section 280.31, or otherwise preventing, delaying, or failing to provide such reasonable accommodations; and (3) thereby ensure that Plaintiffs' schools may impose mask requirements as reasonable accommodations.

-24-

The district court could provide further relief as applicable, or sanction any Defendants that violate such an injunction.

The district court, however, did not tailor the present injunction to remedy Plaintiffs' harms.  The court enjoined Defendants "from enforcing Iowa Code section 280.31 banning local public school districts from utilizing their discretion to mandate masks for students, staff, teachers, and members of the public."  **Prelim. Inj. Order** at 27, DCD 60.  By barring Defendants Reynolds and Lebo from enforcing Section 280.31 in all contexts, the court prevented them from enforcing Iowa's law against schools that encounter no one with disabilities that require masks as a reasonable accommodation.  This sweeps broader than the relief necessary to remedy Plaintiffs' injuries and is an abuse of discretion.

* * * * * * *

Plaintiffs are entitled to a preliminary injunction, but the district court erred in its interpretation of Section 280.31 and in the scope of its injunction.  The issues presented by Plaintiffs involve a discrete group of students:  those whose disabilities require accommodations in the form of mask requirements in order to safely be present in their schools.  Defendants' enforcement of Section 280.31 has prevented schools, including those attended by Plaintiffs' children, from providing accommodations required by federal law.  To remedy Plaintiffs' injury, an injunction is necessary only as applied to their schools and districts.  Accordingly, the preliminary injunction is vacated to the extent that it applies to those schools and districts that Plaintiffs do not attend.  The case is remanded to the district court for further proceedings consistent with this opinion.

ERICKSON, Circuit Judge, dissenting.

I disagree with the majority's reasoning and ultimate conclusion that the IDEA does not require administrative exhaustion in this case.  Accordingly, I believe

the majority prematurely found the plaintiffs are entitled to a preliminary injunction and I respectfully dissent.

We are instructed by <u>Fry v. Napoleon Community Schools</u>, 137 S. Ct. at 752, to examine and consider the substance of the plaintiffs' complaint. And if we do so, it is evident that the plaintiffs' claims concern the denial of a FAPE. Certainly, the IDEA makes plain that parents can pursue relief under multiple statutes. Even so, the IDEA still requires parents to first exhaust their administrative remedies. <u>E.D.</u>, 911 F.3d at 940. Plaintiffs' complaint is rife with two concepts: (1) prohibiting schools from imposing a universal mask mandate forces parents to choose between education and their child's health, and (2) the lack of a mask mandate in schools precludes or "effectively exclude[s]" their children from participation in the public education system. The complaint also expressly references the adequacy of alternatives to in-person education.

In my view, the gravamen of the plaintiffs' claims is that Section 280.31's ban on enacting mask requirements in schools deprives children with disabilities from receiving a FAPE, triggering the exhaustion requirement. The claims in this case are narrow and do not so easily transcend into other areas of the children's lives as is suggested by the majority. I am dubious about the majority's contention that the same claims against a public hospital or other facility that fails to require others to wear face masks would be cognizable. Likewise, I have doubts about whether a teacher could successfully press the same grievance.

I find the majority's alternative finding that exhaustion would have been futile unpersuasive. As noted by the Supreme Court, sound policy reasons exist for the exhaustion requirement, including "preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." <u>Bowen v. City of New York</u>, 476 U.S. 467, 484 (1986) (quoting

Weinberger v. Salfi, 422 U.S. 749, 765 (1975)).  I see nothing in this record warranting waiver of the exhaustion requirement.

Finally, by conclusively determining that mask requirements are reasonable accommodations required by federal disability law, the district court broadens our law and fails to give appropriate weight to the requirement that "governmental policies implemented through legislation and developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Libertarian Party of Ark. v. Thurston, 962 F.3d 390, 399 (8th Cir. 2020) (cleaned up).  I do not believe face masks are the equivalent of wheelchair ramps and I do not believe that we should automatically excuse exhaustion and assume the process or relief would be inadequate.

This case is about children's ability to receive instruction while attending school.  Courts should not act so quickly to intervene in the resolution of conflicts which arise in the daily operation of school systems.  The majority noted this action could have been brought under the IDEA.  The plaintiffs should not be permitted to circumvent the exhaustion requirement of the IDEA and have their claims adjudicated for the first time in federal court.  I respectfully dissent as to the majority's resolution of the exhaustion requirement and premature finding that the plaintiffs are entitled to a preliminary injunction.

_____

Appellate Case: 21-3268   Page: 27   Date Filed: 01/25/2022 Entry ID: 5120238