IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| THE ARC OF IOWA et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KIM REYNOLDS, in her official capacity as Governor of Iowa, et al.<br><br>Defendants. | Case No. 4:21-CV-00264-RP-SBJ<br><br><br>**Defendants Governor Kim Reynolds and Ann Lebo's Brief in Support of Motion to Dismiss** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 2

STANDARD FOR MOTION TO DISMISS ................................................... 4

ARGUMENT ...................................................................................................... 5

   I.  Plaintiffs lack standing to challenge Iowa Code section 280.31 because the statute doesn't injure them and their requested relief wouldn't redress their alleged harms............................................................................................ 5

       A.  Plaintiffs are not injured by section 280.31 because it permits schools to mandate facial coverings when required by federal law..... 6

       B.  Enjoining enforcement of section 280.31 does not redress Plaintiff's alleged harms because it doesn't require their children's schools to impose universal mask mandates. ....................................................... 8

   II.  Plaintiffs' claims are moot because of changed circumstances since September 2021 resulting in a lower risk of contracting COVID-19 at school and a lower risk of serious injury or death from the disease............. 11

   III.  Plaintiffs failed to exhaust their administrative remedies under the IDEA as required before suing under federal disability law.................................... 12

   IV.  Federal disability law doesn't require schools to impose—or to have the discretion to impose—universal mask mandates. .......................................... 17

       A.  Section 280.31's prohibition on school districts imposing universal mask mandates is a neutral and nondiscriminatory policy that does not violate federal disability law....................................................... 17

B.   A universal mask mandate in schools is not a reasonable
modification and other reasonable modifications exist. ...................... 19

C.   A contrary interpretation of federal disability law would raise
constitutional concerns. ...................................................................... 23

V.   ARPA doesn't require schools to impose—or have the discretion to
impose—universal mask mandates. ............................................................ 24

CONCLUSION...................................................................................................... 29

## INTRODUCTION

Over a year ago, the Legislature passed, and Governor Reynolds signed, legislation enacting section 280.31 of the Iowa Code into law. *See* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Act § 28 (codified at Iowa Code § 280.31 (2022)) *available at* https://perma.cc/XM6Q-A3HX. That statute became effective immediately, *see id.* § 31, and provides:

> The board of directors of a school district, the superintendent or chief administering officer of a school or school district, and the authorities in charge of each accredited nonpublic school shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's or accredited nonpublic school's property unless the facial covering is necessary for a specific extracurricular or instructional purpose, or is required by section 280.10 or 280.11 or any other provision of law.

Iowa Code § 280.31.

Plaintiffs sued Governor Reynolds, Iowa Department of Education Director Ann Lebo, and ten school districts, alleging that section 280.31 violates title II of the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act, and the American Rescue Plan Act of 2021 ("ARPA") because it prevents their schools from implementing universal mask mandates to protect their children. Compl., Doc. 1 ¶ 76–102. And this Court granted their requested temporary restraining order and preliminary injunction enjoining all Defendants "from enforcing Iowa Code section 280.31 banning local public school districts from utilizing their discretion to mandate

masks for students, staff, teachers, and visitors." TRO Order, Doc. 32, at 29; *see also* Prelim. Inj. Order, Doc. 60, at 27; Compl., Doc. 1, at 37 ¶ 4.

After an expedited appeal of the injunction and a successful rehearing petition, the Eighth Circuit vacated the preliminary injunction as moot because it found that the circumstances of the pandemic had changed. *See Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044–45 (8th Cir. 2022). Indeed, despite the statute being enjoined, by the time of the Eighth Circuit decision, none of Plaintiffs' school districts had universal mask mandates in place. *See* Samantha Hernandez, *Des Moines Public Schools Drops Mask Mandate Following Federal Changes*, D.M. Register (Mar. 3, 2022), *available at* https://perma.cc/7AE8-C2YK (noting Des Moines Public Schools was the last school to drop its mandate).

Proceedings in this Court were stayed while that appeal was pending. But now that the stay has been lifted, it's time for this suit to end. All Plaintiffs' claims fail as a matter of law and should be dismissed under Rule 12(b)(1) and (6).

First, Plaintiffs lack standing for two reasons. They aren't injured by section 280.31 because it doesn't prevent schools from complying with federal law. And any injury isn't redressed by this suit because enjoining section 280.31's enforcement won't provide them a universal mask mandate.

Second, their claims are moot. The Eighth Circuit held that their request for a preliminary injunction was moot because of the changed circumstances of the pandemic. *See Arc of Iowa*, 33 F.4th at 1044–45. That decision is now law of the case. And since they seek the same relief permanently as an injunction or declaratory judgment, the suit as a whole is also moot.

Third, Plaintiffs are barred from asserting their federal-disability-law claims because they haven't exhausted administrative remedies. And even looking past this defect, the novel claims fail as a matter of law because section 280.31 is a neutral,

— 3 —

nondiscriminatory State policy set in statute and thus doesn't violate federal disability law. Universal mask mandates in schools are not a reasonable modification to this policy because it would be an undue burden, fundamentally alter the nature of the State's education program, and infringe on the rights of others. What's more, a contrary interpretation would raise serious constitutional concerns.

Finally, Plaintiffs' alternative claim based on ARPA also fails. Neither the text of the ARPA statute nor the agency guidance requires schools to impose—or have the discretion to impose—universal mask mandates. Interpreting either to impose such a requirement would raise serious constitutional concerns. And regardless, ARPA provides no private cause of action to enforce whatever requirements might be hidden somewhere in it. This suit should be dismissed.[1]

## STANDARD FOR MOTION TO DISMISS

A complaint that fails "to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). While a complaint need not contain "detailed factual allegations," in order to state a claim, it must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8(a). Complaints which offer nothing more than "labels or conclusions" or "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to

---

[1] This motion is filed by Governor Reynolds and Ann Lebo. But if granted, the Court should dismiss the entire case. While Plaintiffs name the school districts as "indispensable but not adverse parties," Compl., Doc. 1, ¶ 27, they do not bring any claims against them or seek any relief against them. *See id.* ¶¶ 76—102. This motion thus addresses *all* claims asserted in this case and should dispose of it in its entirety.

'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility" standard is not the equivalent of a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint under a 12(b)(6) motion, a court must accept the factual allegations as true. *Id.* There is no such requirement that the Court accept the legal conclusions set forth in a complaint as true. *Id.* Courts evaluate plausibility under *Iqbal* and *Twombly* by "drawing on their own judicial experience and common sense" and will consider "only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Whitney v. Franklin General Hosp.*, 995 F. Supp. 2d 917, 925 (N.D. Iowa 2014) (cleaned up). But when considering dismissals for lack of standing and mootness—which challenges Article III jurisdiction—the Court may consider other evidence outside the Complaint. *See Yersanian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636–37 (8th Cir. 2021).

## ARGUMENT

**I.     Plaintiffs lack standing to challenge Iowa Code section 280.31 because the statute doesn't injure them and their requested relief wouldn't redress their alleged harms.**

Plaintiffs want their children's schools to impose universal mask mandates so that they may feel that their disabled children are safer from COVID-19. Section 280.31 stands in their way because it generally prohibits schools from imposing universal mask mandates unless the mask "is required by . . . any other provision of law." Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Act § 28 (to be codified at Iowa Code § 280.31). They allege that the statute violates federal disability law and ARPA and seek to permanently enjoin its enforcement entirely.

But the desired injunction is a mismatch with Plaintiffs' novel disability discrimination claims. A statute that carves out an exception to permit compliance with federal law can't violate federal law. Nor can enjoining the statute get Plaintiffs the mask mandates they desire—because that decision merely reverts to each independent school. Plaintiffs thus lack a fairly traceable injury that can be redressed by the injunction.

**A. Plaintiffs are not injured by section 280.31 because it permits schools to mandate facial coverings when required by federal law.**

Section 280.31 doesn't prohibit any actions of a school where "the facial covering . . . is required by . . . any other provision of law." Iowa Code § 280.31 (2022). So even if Plaintiffs are correct that federal law requires some masks in schools, section 280.31 doesn't prohibit it. The Eighth Circuit agreed, holding that "[i]f another state or federal law requires masks, Section 280.31 does not conflict with that law—and thus should not be completely enjoined." *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1045 (8th Cir. 2022). And the Eighth Circuit "emphasize[d] that the parties and district court should pay particular attention to" this exception "to the extent that this case continues." *Id.* Therefore, no injunction of the statute's enforcement is required. A school already has it within its power to comply with any requirement of federal law.

To be sure, as discussed in Parts IV and V, the State disputes that federal law imposes any requirement that a universal mask mandate be imposed in all Iowa schools—or that they require local school decisionmakers to have the discretion to impose such universal mandates rather than the Governor. And presumably Iowa schools and their lawyers came to the same conclusion since none acted to impose a district-wide, or building-wide universal mask mandate based on some requirement of federal law before this Court enjoined section 280.31.

And it is also true that this Court has already rejected this standing argument in granting a preliminary injunction, prohibiting Governor Reynolds and Director Lebo "from enforcing Iowa Code section 280.31 banning local public school districts from utilizing their discretion to mandate masks for students, staff, teachers, and members of the public." Prelim. Inj. Order, Doc. 60, at 27. The Court reasoned then that "schools in Iowa did not believe they were allowed to implement mask mandates." *Id.* at 12. But following that logic again would conflict with the Eighth Circuit's direction. *See Arc of Iowa*, 33 F.4th at 1045. And in any event, lack of awareness of one provision in a statute is not a valid reason to unnecessarily enjoin that entire statute. And it cannot change the text of the statute which includes the exception—whether or not every school board member or administrator in Iowa was aware.[2]

Neither do the Governor's statements contradict this argument any more than the first paragraph of this Part A contradicts the second. *Contra* Prelim. Inj. Order, Doc. 60, at 12 n.12. While nuanced, the State's position is consistent. No question— the parties disagree over whether federal law requires universal mask mandates in schools. But that dispute—even if Plaintiffs are right in *their* interpretation of federal law's requirements—does not justify the permanent injunction sought by Plaintiffs in *this* case against *these parties*.

If Plaintiffs are correct that universal mask mandates in schools are required by federal disability law, then section 280.31 doesn't stand in the way of their desired mandates. Their quarrel would be with their schools. Now, a school may well disagree

---

[2] If anything, the evidence of schools' beliefs supports the State's view set forth in Part III that federal law doesn't require universal mask mandates. A school would be *accurate* in believing that they couldn't implement a universal mask mandate if federal law doesn't require the mandates. And if true, there still could be no injunction because the merits of the federal claims fail.

that federal law requires a mask mandate. Or the school may fear that it will be subject to enforcement action by the State and not want to risk waiting until then to find out if the State is correct in its interpretation of federal disability law. But enjoining section 280.31 is a mismatch with their claims.

An unnecessary injunction, relying primarily on evidence of possible confusion over the text of a statute, is particularly problematic when it is a federal injunction against a state statute. *See Dixon*, 950 F.3d at 1056 (vacating injunction for failure to properly consider "whether a preliminary injunction served the public interest in comity between the state and federal judiciaries"). "'Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies.'" *Id.* (quoting *R.R. Comm'n of Tex. V. Pullman Co.*, 312 U.S. 496, 500 (1941)); *see also id.* ("'[F]ederal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976))). This case should be dismissed because Plaintiffs are not injured and thus lack standing.

## B. Enjoining enforcement of section 280.31 does not redress Plaintiff's alleged harms because it doesn't require their children's schools to impose universal mask mandates.

The Plaintiff's requested permanent injunction and other relief isn't just unnecessary—it's also insufficient to redress Plaintiffs' alleged irreparable harms. The core injury that Plaintiffs allege is that their districts cannot impose "universal masking" accommodation that they seek. *See* Compl., Doc. 1, ¶¶ 9, 42–47, 53, 59–82, 98–99. They reiterated in the preliminary injunction filings, asserting that their irreparable harms are "heightened risk of exposure" to COVID-19 if they attend in-person school or "loss of educational opportunities" if the students are removed from school. Doc. 17, at 13–14. And they believe that "[i]f everyone were wearing a mask,"

these harms would be avoided and "their children would be safe." *Id.* at 12. Indeed, every Plaintiff expressed their desire to "block" section 280.31 so that their schools could impose a universal mask mandate. *See* Doc. 3-3, at 4 ¶ 16; Doc. 3-4, at 2 ¶ 14; Doc. 3-5, at 3 ¶ 15; Doc. 3-6, at 2, ¶ 18; Doc 3-7, at 3 ¶ 22; Doc. 3-8, at 3 ¶ 14; Doc. 3-9, at 2 ¶ 15; Doc. 3-10, at 4 ¶ 17; Doc. 3-11, at 3 ¶ 24; Doc. 3-12, at 2 ¶ 12; Doc. 3-13, at 2 ¶ 17.

But Plaintiffs don't ask for an injunction requiring everyone in their children's schools to wear a mask. They seek only to enjoin Governor Reynolds and Director Lebo from enforcing section 280.31. Compl. Doc. 1, ¶ 4. That won't remedy their claimed harm. It's dependent on the actions of independently elected school boards and leaders of private schools to decide whether they will in fact implement a universal mask mandate in their school districts like Plaintiffs hope. Because of this lack of redressability, Plaintiffs do not have Article III standing to seek this injunction and it should not have been issued. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring showing that injury is "fairly . . . trace[able] to the challenged action of the defendant"); *see also* U.S. Const. art. III, § 2 ("The judicial power shall extend to all cases . . . .").

In rejecting this argument before, this Court speculated that redressability was not a concern since many districts had mask mandates in the last school year before the enactment of section 280.31, and at least one school district indicated it was prepared to impose a mandate again. TRO Order, Doc. 32, at 16–17. Then, after issuance of the injunction, and some districts again implemented mandates, the Court took those actions and evidence that Plaintiffs' alleged injuries were redressable by its injunction. Prelim. Inj. Order, Doc. 60, at 11.

Indeed, after the Court issued its temporary restraining order, some schools in Iowa did impose a universal mask mandate. *See* Doc. 48-2, at 1–5. And this includes some of the school attended by Plaintiffs' children. *See id.*; *see also* Doc. 48-16, at 2–4. But some schools, like Defendant Linn Mar Community School District, decided to impose a mandate only for students sixth grade and younger and set it to expire 60 days after vaccines are available for children under twelve. *See* Trevor Oates, *Linn-Mar School Board Approves Mask Mandate for PK-6 Students*, KWWL (Sept. 16, 2021), https://perma.cc/MG3B-VVRU; *see also* Doc. 48-2, at 2. And other districts have decided not to impose mandates or are delaying any decision, even after the court's orders, showing that this injunction didn't remedy their harms. For example, one Plaintiff complains that even after the statute has been enjoined and the school board has met three times, her child's district still has not imposed a mandate. Doc. 48-12, at 2; *see also Mask Mandate Fails to Pass at Special Sioux City School Board Meeting*, Radio Iowa (Sept. 16, 2021), https://perma.cc/PR5H-VWXE; Taj Simmons, *Waukee School Board Votes in Opposition of Mask Mandate Within the District,* WHO 13 (Sept. 16, 2021), https://perma.cc/55XJ-YKH9.

Still other Plaintiffs remained uncomfortable with returning their children to in-person learning even after their schools imposed universal mask mandates. One parent with a child enrolled at a school with a new mandate says that the child's doctor recommends "one-on-one or home learning" and that she is still "working with the school on a plan for my child to return to school, specifically additional accommodations that would make it safer for her to attend school." Doc. 48-8, at 1–2, ¶ 2–5. Another was dissatisfied that his children's school district mask mandate was not imposed for a longer period of time and kept his children enrolled online. Doc. 48-9, at 1–2 ¶ 2–5. And a third parent, with a child at a school with a mandate only for students through sixth grade, expressed her opinion that the school should have

imposed a mandate for all grades and was also waiting "to finalize further accommodations under the ADA so that [her child] may return to school in person safely." Doc. 48-15, at 1.

And eventually, despite the statute being enjoined, by the time of the Eighth Circuit decision, none of Plaintiffs' school districts had universal mask mandates in place. *See* Samantha Hernandez, *Des Moines Public Schools Drops Mask Mandate Following Federal Changes*, D.M. Register (Mar. 3, 2022), *available at* https://perma.cc/7AE8-C2YK (noting Des Moines Public Schools was the last school to drop its mandate).

All these actual circumstances in response to the preliminary injunction show that the remedy is dependent on the independent decisions of others. And enjoining the statute did not get Plaintiffs the universal mask mandates they desired. In some cases, it changed nothing about the disabled students' access to education at all. How can Plaintiff's requested permanent relief be said to provide any redress in these circumstances?

In sum, Plaintiffs' requested relief is divorced from their alleged harm and any likely valid legal claim. Because of this mismatch and lack of standing, their claims should be dismissed.

## II.     Plaintiffs' claims are moot because of changed circumstances since September 2021 resulting in a lower risk of contracting COVID-19 at school and a lower risk of serious injury or death from the disease.

On appeal, the Eighth Circuit vacated this Court's "preliminary injunction as moot." *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022). The court explained that "[t]he issues surrounding the preliminary injunction are moot because the current conditions differ vastly from those prevailing when the district court addressed it." It reasoned that because of the availability of COVID-19 vaccines for children and changing variants of the virus and lower transmissions "[n]o court could

grant effective relief as sought for the preliminary injunction." *Id.* at 1045. And it concluded that "enjoining Defendants' enforcement of Section 280.31 has no effect on Plaintiffs' children, whose risk of contracting COVID-19 at school is now low even without mask requirements, as is their risk of serious injury or death." *Id.*

The Eighth Circuit's decision is now binding law of the case here. *See In re Raynor,* 617 F.3d 1065, 1068 (8th Cir 2010) (quoting *Agostini v. Felton,* 521 U.S. 203, 236 (1997)) ("'[A] court should not reopen issues decided in earlier stages of the same litigation.'"); *United States v. Bartsh,* 69 F3d 864, 866 (8th Cir. 1995).

And Plaintiffs' claims for permanent relief are all based on the same legal and factual theories as their preliminary injunction. Indeed, they made the same request for relief to "[p]reliminarily and permanently enjoin the Defendants from enforcing HF 847, and thereby violating the ADA, Section 504 of the Rehabilitation Act, and ARPA;" Compl., Doc. 1, at 37. Thus, for the same reasons that their preliminary injunction is moot, their whole case is moot. It must be dismissed.

### III.   Plaintiffs failed to exhaust their administrative remedies under the IDEA as required before suing under federal disability law.

Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). This dooms their federal disability claims and requires dismissal.

The IDEA ensures that children with certain physical or intellectual disabilities receive a "free appropriate public education," known as a FAPE. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). And the IDEA sets up a comprehensive procedure to provide a FAPE. *See id.* at 748–49. The process starts with the development of an individualized education program ("an IEP"). And it includes administrative procedures to resolve disputes between a school and a family that could ultimately lead to a hearing before a neutral administrative law judge and

— 12 —

then judicial review in state or federal court. *See id.* at 748–49; *see also* Iowa Code §§ 256B.2(2), 256B.4, 256B.6; Iowa Admin. Code r. 281-41.321–.328 (IEP process), 281-41.506 (mediations); 281-41.507–.518 (due-process hearings).

While Plaintiffs sue under title II of the ADA and section 504 of the Rehabilitation Act—rather than under IDEA—they must still exhaust the administrative remedies provided by the IDEA if they are "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*); *see also Fry*, 137 S. Ct. at 750 ("[A] plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures.").[3]

This "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education." *Fry*, 137 S. Ct. at 754. If the suit claims discrimination in a way that does not result in denial of a FAPE, then exhaustion is not required "because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE. *Id.* at 755. In conducting this analysis, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*

Thus, in *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948–49 (8th Cir. 2017), the Eighth Circuit affirmed dismissal of several federal claims—including under the ADA and section 504—because exhaustion was required. The plaintiff was the parent of a disabled elementary student who alleged that her son had been physically restrained "'for half of the time he actually spent at Defendant's schools'" over several months. *Id.* (quoting the complaint). And she alleged that he was "'denied

---

[3] At the hearing on Plaintiffs' Motion for a Temporary Restraining Order, their counsel admitted that they considered bringing a claim directly under the IDEA. Doc. 37, at 50:9–11 ("We considered them, and we decided we don't need to do that to get our plaintiffs relief."). He didn't say that they concluded the relief wasn't "also available" under the IDEA—just that the IDEA claims were unnecessary.

. . . because of his disability, participation in and the benefits of a public education.'" The Court reasoned that "[t]hese allegations show that the complaint was based on the 'denial of a FAPE' under the IDEA." *Id.* at 949.

Plaintiffs allege throughout their Complaint that the lack of a universal mask mandate—or perhaps merely the lack of their schools' authority to be able to consider such a mandate—is excluding them from receiving their appropriate public education. *See* Compl., Doc. 1, ¶ 56 ("Students with disabilities who are unable to safely return to brick-and-mortar schools because of continued health concerns are being excluded from the public school system . . . ."); *id.* ¶ 59 ("Iowa state officials have effectively excluded these students from participation in the public education system . . . ."); *id.* ¶ 58 ("Thus the Defendants' actions will have the perverse effect of either placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system."); *id.* ¶ 57 (complaining of lack of "virtual learning" and that "virtual learning, even if available, is not a viable or adequate substitute for in person learning"); *id.* ¶ 54 (complaining that "Children with disabilities are entitled to learn and interact with all other children, to receive the same education as all other children"); *id.* ¶ 1 (alleging schools cannot comply with section 280.31 and still provide "equal access to their education"); *id.* ¶ 2 (alleging student risk harm to health or harm to "their education and development"); *id.* ¶¶ 38–40 (alleging various educational harms to disabled students because of the pandemic).

Plaintiffs' claimed discrimination is thus an injury that is allegedly denying them a FAPE. That injury could be remedied by granting relief under the IDEA. Exhaustion was required.

This Court previously held otherwise, reasoning that while "Plaintiffs' claims relate to the children's education, Plaintiffs do not seek the type of special education

services that the IDEA guarantees." Prelim. Inj. Order, Doc. 60, at 14. The court relied on the Supreme Court's recognition in *Fry* that not every dispute between a disabled student and a school involves the denial of a FAPE. *Id.* (citing *Fry*, 137 S.Ct. at 754). But the Court in *Fry* didn't hold that the question turns on whether a plaintiff seeks any particular "type of special education services." In fact, it rejected any requirement to use "magic words" or refer to "FAPE" or "IEP" or "IDEA." *See Fry*, 137 S. Ct. at 755.

The proper analysis is whether a plaintiff alleges the denial of a FAPE—the free appropriate public education required by the IDEA—rather than some other injury that doesn't deny appropriate education. *Id.* at 754. In *Fry*, a student with cerebral palsy sought to bring a service dog instead of the one-on-one human aide that the school district offered to meet her educational needs. *Id.* at 758. The plaintiff did not even implicitly allege a denial of her educational needs. *Id.* And thus the Court concluded it likely exhaustion was not required—though it ultimately remanded for reconsideration. *See id.* 758–59.

Unlike *Fry*, Plaintiffs' complaint is explicitly tied to a deprivation of their educational needs. They contend that they are being deprived their education because they're not able to safely attend in-person school without a mask mandate and the alternative of virtual school is inadequate. Compl., Doc. 1, ¶¶ 56–59. Their claims are thus like the student in *J.M.* who alleged discrimination for being kept in restraints for the half the time and deprived his full education. *See J.M.*, 850 F.3d at 948–49.

Before, this Court developed its reasoning by considering two hypothetical questions: Could Plaintiffs have brought this claim against an entity other than a school? And could a teacher or visitor bring a similar claim? Prelim. Inj. Order, Doc. 60, at 13–14. But the Eighth Circuit has explained that it's improper to approach this question at a "higher level of generality" *Nelson v. Charles City Cmty. Sch. Dist.*, 900

F.3d 587, 592 (8th Cir. 2018); *see also Fry*, 137 S. Ct. at 759 (Alito, J., concurring) (explaining that the hypotheticals are "false clues" that "are likely to confuse and lead courts astray" given the overlapping coverage of the statutes).

Fifth Circuit also recently rejected the analogy that this sort of suit is merely seeking "physical access." *E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021). That court explained, "the plaintiffs at base allege something very particular: the deprivation of an in-person state-sponsored education because of their risk of contracting COVID-19 without a mask mandate." *Id.* The Court thus concluded that the answer to both *Fry* questions was no—and exhaustion was likely required. *See id.*

Because Plaintiffs' claims are driven by the focus on the importance of education for their children and their exclusion from receiving that education, the proper level of comparison is whether a teacher or visitor could bring a claim that they're being forced to choose between their health or receiving an equal education— and they could not. Nor could the students bring that same claim against a different entity, like a county courthouse or public library. But at bottom, asking the true question demanded by the statute and *Fry*, students could get the relief they're asking for—accommodation to their disabilities so they can receive a FAPE through the IDEA administrative process.

This case shows the wisdom of the exhaustion requirement. Precisely what additional accommodations these disabled students need because of the pandemic are highly fact-specific, individualized determinations. They depend on the unique health and educational needs of each student, their classrooms and facilities, the current public health conditions, and the most recent and accurate public health guidance on appropriate mitigation measures. Those decisions should be made individually. And if disputes arise, they should be resolved through the proper processes in place—not through a one-size-fits-all injunction in this lawsuit.

Indeed, the record indicates that some of the Plaintiffs started to seek individualized solutions for their children. These included teachers wearing a mask when working on-on-one with the child. Doc. 3-12, at 2 ¶ 9; Doc. 3-11, at 3 ¶ 18. And special arrangements for avoiding crowded hallways. Doc. 3-11, at 3 ¶ 18. Masking of only those small groups near the child. Doc. 3-5, at 2 ¶ 10. Or other social distancing measures. Doc. 3-10, at 2 ¶ 10. In some cases, however, the parents reported that their schools were not following the agreed upon measures. Doc. 3-11, at 3 ¶ 18; Doc. 3-12, at 2 ¶ 10. Yet there's no evidence that they took any steps to try to enforce the agreed measures or seek additional help through any of the remedies available. *See* Doc. Doc. 3-5, at 2; Doc. 3-10, at 2; Doc. 3-11, at 3; 3-12, at 2.

Because Plaintiffs have not exhausted their administrative remedies under the IDEA their claims under the ADA or the Rehabilitation Act must be dismissed.

## IV.   Federal disability law doesn't require schools to impose—or to have the discretion to impose—universal mask mandates.

Plaintiffs assert that section 280.31 violates two federal disability laws: title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act. Their complaint is unclear as to whether they assert that these federal laws require universal mask mandates in schools or merely that federal law requires school districts—rather than the Governor—to have discretion to impose such mandates. But regardless of the precise formulation of the claims, they fail. Neither the ADA nor the Rehabilitation Act require universal mask mandates in schools or requires schools to have the discretion to implement such mandates.

### C.   Section 280.31's prohibition on school districts imposing universal mask mandates is a neutral and nondiscriminatory policy that does not violate federal disability law.

Courts typically analyze disability discrimination claims under title II of the ADA and section 504 of the Rehabilitation Act together. *See, e.g.*, *Davis v. Francis*

*Howell Sch. Dist.*, 138 F.3d 754, 756 (8th Cir. 1998). Under both statutes, "a plaintiff must show that he was a qualified individual with a disability and that he was denied the benefits of a program, activity, or services by reason of that disability." *Id.* (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). And under both, when the denial occurs because of a neutral nondiscriminatory policy rather than because of a plaintiff's disability, no violation arises. *See Davis*, 138 F.3d at 756–57. It matters not whether the plaintiffs "question the wisdom" of the policy. *Id.* at 756. The policy doesn't violate the federal statutes where it "applies to all students regardless of disability and rests on concerns unrelated to disabilities or misperceptions about them." *Id.* (cleaned up); *see also Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971–72 (8th Cir. 1999); *DeBord v. Bd. of Educ.*, 126 F.3d 1102, 1105–06 (8th Cir. 1997).

The Eighth Circuit has thus held that following a policy that all students in an intra-district transfer program must provide their own transportation is not disability discrimination. *See Timothy H.*, 178 F.3d at 972. Nor is following a policy to administer medication in schools only consistent with the maximum dosage recommended by the Physician's Desk Reference. *See Davis*, 138 F.3d at 756; *DeBord*, 126 F.3d at 1105–06. And these were just *policies* of school districts—not a duly enacted statute setting statewide education policy that is entitled to even greater respect.

Section 280.31 establishes a uniform nondiscriminatory policy that—unless required by other law or a specific instructional or educational purpose—local schools cannot require students, employees, or visitors to wear face coverings. There's been no suggestion that the statute was adopted to single out individuals with disabilities. And it imposes no restriction on individuals—whether disabled or not—at all. To be clear, *all* students, employees, and visitors remain free to wear face coverings or take any other health precautions they (or their parents) choose. The statute is mainly an

allocation of decision-making authority between the State and local government, disconnected from students with disabilities. After passage of section 280.31, a universal mask mandate as a public health precaution can only be imposed by the Governor as a part of her emergency powers during a public health disaster, rather than by a school district. *See* Iowa Code §§ 135.144(3), 29C.6.

The alleged denial of Plaintiffs' desired universal mask mandates in their children's schools, and their further alleged denial of education, is not caused because of their disability. If it's caused at all, it's because of this neutral, nondiscriminatory statute. And since title II of the ADA and the Rehabilitation Act do not override neutral local school district policies, they also do not provide a basis to override this statutory product of Iowa's democratic process.[4]

### D. A universal mask mandate in schools is not a reasonable modification and other reasonable modifications exist.

In rejecting this argument before, this Court held that schools are required to make "reasonable modifications" and that "universal masking policies are a reasonable modification, which public schools are required to provide." Prelim. Inj., Doc. 1 at 16, 20. But the Eighth Circuit has not decided "whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory." *Davis*, 138 F.3d at 757; *see also DeBord*, 126 F.3d at 1106; *cf. CVS Pharmacy, Inc. v. Doe*, No. 20-1374 (U.S. July 2, 2021) (granting certiorari on question—which was later dismissed because of a settlement—whether a private cause of action exists for disparate-impact disability discrimination claim under section 504); *Alexander v. Sandoval*, 532 U.S. 275, 284–

---

[4] To be clear, this argument—like the alternative arguments in subsections B and C—defeats all of Plaintiffs' ADA and section 504 claims because they negate the required statutory element of being denied a benefit because of a disability. *See Davis*, 138 F.3d at 756.

86 (2001) (holding that similar Title VI does not create private cause of action for disparate-impact discrimination claims).

But even if reasonable modifications are required, a universal mask mandate is not a reasonable modification. A modification that imposes an undue administrative burden or a fundamental alternation in the nature of the State's education program is not reasonable. *See Davis*, 138 F.3d at 757 (holding that request to deviate from medication policy wasn't reasonable because it would "impose undue financial and administrative burdens on the district by requiring it to determine the safety of the dosage and the likelihood of future harm and liability in each individual case"); *Timothy H*, 178 F.3d at 972–73 (holding that request to establish a special free bus route would be "an undue financial burden and a fundamental alteration in the nature of the intra-district transfer program"); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929–30 (8th Cir. 1994) (holding that request to participate in high school baseball program as a nineteen year-old despite uniform age limit was not reasonable modification because it would "constitute a fundamental alteration in the nature of the baseball program" given its intent to protect younger athletes, have fair competition, and discouraging delays in education).

Modifying the uniform policy established by section 280.13 to impose a universal mask mandate in schools—or permitting schools to make those decisions—would be an undue burden and fundamentally alter the nature of the educational program established by the State. Modifying the policy to give schools discretion would void the Legislature's policy decision to take the highly contentious and emotional issue of masks in schools from the responsibility of local schools so that local leadership could devote their time to other important concerns. This fundamentally alters Iowa's education program as set in section 280.31. And imposing a universal mask mandate would impose the administrative and potential

financial and legal burdens of enforcing a mask mandate on all students, distracting teachers and school administrators from their educational duties.

A universal mask mandate is also not a reasonable modification because it infringes on the rights of third parties—other students, employees, and visitors. In the employment context, the Eighth Circuit has repeatedly recognized that ADA doesn't require "accommodations that would violate the rights of other employees" and doesn't impose "obligation to terminate other employees or violate a collective bargaining agreement." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995); *see also Buckles v. First Data Resources, Inc.*, 176 F.3d 1098, 1100–02 (8th Cir. 1999) (rejecting "irritant-free work environment" as a reasonable accommodation for employee with severe sensitivity to strong smells); *Mason v. Frank*, 32 F.3d 315, 319 (8th Cir. 1994) (holding that an accommodation isn't reasonable if it "would violate the rights of other employees under a legitimate collective bargaining agreement"). Plaintiffs' desired modification of a universal mask mandate is an imposition on the rights of all the other students and visitors to the school. And that is not reasonable.

That's all the more so here. Plaintiff's proposed reasonable accommodation isn't merely an imposition on employees, who are voluntarily working and paid to abide by their employers' directives. Such a comparison might be a fair when talking just about requiring teachers to mask around disabled students, which very well could be reasonable. But that's significantly different than imposing a requirement on students who have a right to receive a free public education and are compelled to attend some school.

What is the limiting principle for the reasonableness of an accommodation, if a single disabled student can sue and require nearly everyone in her school district to wear masks to protect her health? Could she also sue to mandate that they all become vaccinated for COVID-19? It's difficult to see why not under Plaintiffs' logic.

But while a State can of course exercise its police powers to enact such a statute, it doesn't follow that federal disability law could permit a private plaintiff to force such an intrusion on third parties in the name of reasonable accommodation.

Even more, here, there are disability interests on both sides of the debate. Imposing a universal mask mandate can harm disabled students with social communication issues, such as those with autism, because it prevents the students from advancing "social skills and understanding the express of those around [the student] due to [the] fellow students and teachers wearing masks." Doc. 42-2, at 1 ¶ 6; Doc. 42-1, at 2 ¶¶ 9–10. It can also harm disabled students with anxiety. Doc. 42-1, at 1 ¶¶ 4–6. And those who struggle with speech and pronunciation. Doc. 42-1, at 2 ¶ 11. And those with asthma. *Id.* ¶¶ 7–8. And those with severe and painful sensory processing issues. Doc. 42-3, at 1–2 ¶¶ 4–6, 12 (describing how wearing a mask feels like skin is "on fire or poked with sharp needles" creating "a 'traffic jam' in her brain and she essentially becomes 'paralyzed' in that moment). And those who are deaf. Doc. 45-1, at 1–3; 45-2, at 1–2.

The Legislature thus could have reasonably been concerned about balancing all these competing interests, includes the possible negative educational and social consequences. *See* World Health Organization, *Advice on the Use of Masks for Children in the Community in the Context of COVID-19*, Aug. 21, 2020, *available at* https://perma.cc/TTQ8-PNHU (stating that "the benefits of wearing masks in children for COVID-19 control should be weighed against potential harm associated with wearing masks, including feasibility and discomfort, as well as social and communication concerns").

Even the U.S. Department of Education acknowledges that any universal mask mandates in schools must attempt to provide reasonable accommodations. *See* U.S. Dep't of Educ., *Questions and Answers on Civil Rights and School Reopening in*

*the COVID-19 Environment, available at* https://perma.cc/G88U-32SD, at 8–9. The Legislature could conclude that where there are interests such as these on both sides that it would remove the issue of universal mask mandates from the discretion of local schools. And modifying this decision to permit (or require) universal mandates is a fundamental alternation and undue burden of the State's policy choices. It's not reasonable.

Plaintiffs could seek other modifications that would be reasonable. And section 280.31 doesn't prevent schools from engaging with students to provide such modifications. Those could include, for example, greater personal protective equipment for the student (such as a higher quality N95 mask), greater social distancing, or perhaps if justified by the particular facts even limited masking of teachers or students while interacting closely with the individual.

Indeed, as recognized by the Fifth Circuit, Plaintiffs' claim that universal mask mandates are a reasonable accommodation "rests on the faulty premise that the *only* accommodation available to plaintiffs is their schools' ability to impose mask mandates." *E.T.*, 19 F.4th at 768. It overlooks the "availability of vaccines, voluntary masking, and other possible accommodations" *Id*. After all, Plaintiffs "are not entitled to their preferred accommodation, but only a reasonable" one. *Id*. at 767. This claim fails as a matter of law.

### E. A contrary interpretation of federal disability law would raise constitutional concerns.

"[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see also Rounds*, 530 F.3d at 732–33.

But education and protection of the public health are at the core of the State's—rather than the federal government's—domain. And the Supreme Court requires "Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). Nothing in the text of either the ADA or section 504 suggests, let alone clearly states, that it authorizes these disability discrimination statutes authorize this injunction's intrusion into the State's authority to set education and public health policy. Plaintiffs' novel interpretation that a State engages in disability discrimination if it chooses to generally ban universal mask mandates should be rejected to avoid this constitutional concern.

To the extent that Plaintiffs can cabin their interpretation of the statutes to only require that schools have discretion to consider mask mandates, the constitutional concerns are even greater. There is even less of a federal interest in merely dictating the allocation of authority between the State and local governments about masks. And under the Tenth Amendment, the federal government cannot intrude on the State's power to structure its internal division of governmental power to school districts. *See Hunter v. Pittsburgh*, 207 U.S. 161, 178 (1907) ("The number, nature, and duration of the powers conferred upon these [political subdivisions] and the territory over which they shall be exercised rests in the absolute discretion of the state."); *see also* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Such a constitutional problem should be avoided.

## V.   ARPA doesn't require schools to impose—or have the discretion to impose—universal mask mandates.

As an alternative basis for permanently enjoining section 280.31, Plaintiffs contend that it conflicts with the American Rescue Plan Act of 2021 ("ARPA"). Compl.

Doc. 1 ¶¶ 95–102. They argue that the statute, agency guidance, and a letter from the Secretary of Education are "squarely at odds" with section 280.31 because it "*prohibits* local school districts, including Defendant School Boards, from implementing precisely the type of safe return-to-school policies ARPA expects." *Id.* ¶ 101. But ARPA says nothing of the sort. Neither does the agency guidance. And interpreting either to impose such a requirement would raise serious constitutional concerns. Even more, ARPA creates no private cause of action for its enforcement. This claim must also be dismissed.

Plaintiffs rely on section 2001(e)(2)(Q) of ARPA as the source of this purported requirement. Compl,, Doc. 1 ¶ 98. Section 2001 establishes a $123 billion Elementary and Secondary School Emergency Relief Fund and sets certain requirements for allocation of the funds to the States and then to local schools. It imposes two mandates on schools—that they publicly post "a plan for the safe return to in-person instruction and continuity of services" and that they "shall reserve not less than 20 percent of such funds to address learning loss." American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat 4, § 2001(e)(1), (i). And then it provides that they "shall use the remaining funds for any of" a list of 18 alternative purposes. *Id.* § 2001(e)(2). These include, for example: "Purchasing supplies to sanitize and clean the facilities," *id.* § 2001(e)(2)(I); "Planning for, coordinating, and implementing activities during long-term closures," *id.* § 2001(e)(2)(J); and "repair, replacement, and upgrade projects to improve the indoor air quality in school facilities." *Id.* § 2001(e)(2)(P).

The provision relied on by Plaintiffs is one of these 18 alternative purposes. It provides the appropriated funds *could* be used for:

> Developing strategies and implementing public health protocols including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff.

*Id.* § 2001(e)(2)(Q). Nothing in section 2001 *requires* a school or a State to choose to spend any of the federal funds it receives for this purpose rather than any of the other 16 authorized purposes. So even if its text could be interpreted to impose some limited requirement for any funded strategies and protocols "in line" with CDC guidance "to the greatest extent practicable," it would only apply if when funds are used for that purpose.[5] It would make no more sense to turn that single alternative into a blanket mandate than it would to say that the other quoted provisions require schools to close long-term or replace their HVAC systems.

The agency guidance from the U.S. Department of Education fares no better.[6] Plaintiffs point to Interim Final Requirements established by the Department elaborate on the statutory requirement that schools adopt a plan for safe return to in-person learning by requiring schools to include "how it will maintain the health and safety of students, educators, and other school and LEA staff, and the extent to which it has adopted policies, and a description of any such policies, on each of the CDC's safety recommendations including Universal and correct wearing of masks." Dep't of Educ. Interim Final Requirements, *American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund*, 86 Fed. Reg. 21,195, 21200 (Apr. 22, 2021); *see also* Compl., Doc. 1 ¶¶ 99–100.

Yet this language as well merely requires a school to *describe* what it is doing. As the Department's guidance itself acknowledges, "[t]he requirement does not mandate that [a school] adopt the CDC guidance, but only requires that the [school] describe in its plan the extent to which it has adopted the key prevention and mitigations strategies." 86 Fed. Reg. 21,195, 21,201. A school can follow this

---

[5] Indeed, even applying the statute's terms, it's not at all clear that it would be "practicable" for a school to violate another law, such as section 280.31.
[6] The correspondence from the Secretary of Education has no force of law and is irrelevant to any preemption analysis.

requirement without violating section 280.31. *See E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021) (holding that it was "likely error" for district court to conclude that Texas prohibition on mask mandates was preempted by ARPA because "[r]ather than requiring local educational agencies to adopt universal masking, the American Rescue Plan Act requires local educational agencies to *communicate* with the public regarding what requirements, if any, it maintains regarding masking").

Neither ARPA nor the agency guidance imposes any requirement that schools have authority to impose universal mask mandates. The analysis could stop there. But if there were any doubt, the United States Constitution removes it. While Congress has the power to impose requirements on the States through its spending power, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This is because "[t]he legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts the terms of the 'contract'" for the federal funds. *Id.* "By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.*; *see also South Dakota v. Dole*, 483 U.S. 203, 208 (1987).

Section 2001(e)(2)(Q) does not clearly and unambiguously alert States that school districts must have discretionary authority to impose universal mask mandates. Neither does the agency guidance—and in any event only *Congress*, not an agency, impose the unambiguous requirement. *See Va Dep't of Educ. v. Riley*, 106 F.3d 559, 567 (4th Cir. 1997) (en banc) (rejecting use of agency regulation to provide constitutionally required clarity in spending-clause challenge); *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021) ("Relying on regulations to present the clear condition, therefore, is an acknowledgment that Congress's

condition was not unambiguous, so that method of analysis would not meet the requirements of *Dole*).

Education and protection of the public health is also at the core of the State's—rather than the federal government's—domain. And the Supreme Court requires "Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). And the Tenth Amendment prevents the federal government from intruding on the State's power to structure its internal division of governmental power to school districts. *See Hunter v. Pittsburgh*, 207 U.S. 161, 178 (1907). The Court cannot imply the requirement alleged by Plaintiffs consistent with these constitutional demands.

The Court can avoid even reaching these merits questions because ARPA creates no private cause of action for its enforcement "The . . . argument that the American Rescue Plan Act provides a private cause of action is tenuous at best." *E.T. v. Paxton*, 19 F.4th 760, 771 n.3. (5th Cir. 2021). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When Congress does not expressly create a private cause of action in a statute, the judiciary is tasked with determining whether the statute shows an intent to create a private cause of action or a private remedy. *See Id.* "Statutory intent . . . is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a public policy matter, or how compatible with the statute." *Id.* at 286–287 (citations omitted). Therefore, the burden rests on the plaintiff to show that Congress intended for ARPA to include a private cause of action.

The Supreme Court has only implied a private cause of action where one was not included in the statute a few times. Unlike the multi-faceted ARPA, they arose in

the context of discrimination statutes. Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds: Title VI, Title IX, the Rehabilitation Act, and the Affordable Care Act. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569 (2022). Title VI and Title IX were found to have an implied private cause of action for enforcement, and Congress amended the statutes to include this right after the Court's decision. *See Id.* "[T]he Rehabilitation Act and the Affordable Care Act . . . each expressly incorporates the rights and remedies provided under Title VI." *Id.* ARPA does not include the discrimination language from Title VI, or any language that would show Congress intended to imply a private cause of action.

Further, the Supreme Court contemplated whether a student may sue for damages under 42 U.S.C. § 1983 to enforce the Family Education Rights and Privacy Act (FERPA), even though FERPA did not create a private cause of action. *Gonzaga Univ. V. Doe*, 536 U.S. 273, 276 (2002). The U.S. Supreme Court vacated the decision by the Supreme Court of Washington holding "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 256. Finally, the Court suggested with legislation enacted under the spending power, the general remedy would be a termination of funds rather than private action. *See Pennhurst, 451* U.S. 1 at 28.

Here, the regulations promulgated under ARPA have not conferred any private right of action. No individual rights have been created in the statute. Even more, ARPA creates no remedy for private individuals wishing to bring suit. Plaintiffs' claim based on ARPA must be dismissed.

## CONCLUSION

For all these reasons, the Court should dismiss this case.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

JEFFREY S. THOMPSON
Solicitor General

*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ
Assistant Attorney General
Iowa Department of Justice
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
sam.langholz@ag.iowa.gov
jeffrey.thompson@ag.iowa.gov

ATTORNEYS FOR DEFENDANTS
GOVERNOR KIM REYNOLDS AND
ANN LEBO

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon all parties of record by delivery in the following manner on July 1, 2022:

☐ U.S. Mail                ☐ Email
☐ Hand Delivery            ☐ Overnight Courier
☐ Federal Express          ☐ Other
☒ CM/ECF

Signature: */s/ Samuel P. Langholz*