# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

THE ARC OF IOWA; CHARMAINE
ALEXANDER, individually and on behalf of
C.B., a minor; JONATHAN  CRAIG,
individually and on behalf of E.C. and J.C.,
minors; MICHELLE CROFT, individually and
on behalf of J.J.B., a minor; AMANDA
DEVEREAUX, individually and on behalf of
P.D., a minor; CARISSA FROYUM ROISE,
individually and on behalf of H.J.F.R., a minor;
LIDIJA GEEST, individually and on behalf of
K.G., a minor; MELISSA HADDEN,
individually and on behalf of V.M.H., a minor;
HEATHER LYNN PRESTON, individually
and on behalf of M.P. and S.P, minors; LISA
HARDISTY SITHONNORATH, individually
and on behalf of A.S., a minor; REBEKAH
STEWART, individually and on behalf of
E.M.S., a minor; and ERIN VERCANDE,
individually and on behalf of S.V., a minor,

    *Plaintiffs*,

  v.

KIM REYNOLDS, in her official capacity as
Governor of Iowa; ANN LEBO, in her official
capacity as Director of the Iowa Department of
Education; ANKENY COMMUNITY
SCHOOL DISTRICT; COUNCIL BLUFFS
COMMUNITY SCHOOL DISTRICT;
DAVENPORT COMMUNITY SCHOOL
DISTRICT; DECORAH COMMUNITY
SCHOOL DISTRICT; DENVER
COMMUNITY SCHOOL DISTRICT; DES
MOINES PUBLIC SCHOOLS; IOWA CITY
COMMUNITY SCHOOL DISTRICT;
JOHNSTON COMMUNITY SCHOOL
DISTRICT; LINN MAR COMMUNITY
SCHOOL DISTRICT; and WATERLOO
COMMUNITY SCHOOL DISTRICT,

    *Defendants*

Case No. 4:21-cv-264

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS**

i

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.      Plaintiffs continue to have standing. ......................................................................3

          A.      Injury in Fact ..........................................................................................4

          B.      Traceability............................................................................................6

          C.      Redressability ........................................................................................7

    II.     Plaintiffs' claims are not moot. ..............................................................................8

    III.    State Defendants provide no reason for this Court to revisit its prior ruling on administrative exhaustion ....................................................................................10

    IV.   State Defendants' remaining arguments are wrong as a matter of law. ................14

CONCLUSION .................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021) ...............................................................................19

*Alexander v. Choate*,
    469 U.S. 287 (1985) ...................................................................................16

*Am. Council of the Blind v. Paulson*,
    525 F.3d 1256 (D.C. Cir. 2008).................................................................16

*Arc of Iowa v. Reynolds*,
    33 F.4th 1042 (8th Cir. 2022)...........................................................*passim*

*Arizona v. California*,
    460 U.S. 605 (1983) ...................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................3

*Bahl v. Cnty. of Ramsey*,
    695 F.3d 778 (8th Cir. 2012) ...............................................................14, 17

*Barron v. South Dakota Bd. of Regents*,
    655 F.3d 787 (8th Cir. 2011) .....................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 5 (2007) .........................................................................................3

*Brennan v. Stewart*,
    834 F.2d 1248 (5th Cir. 1988) ...................................................................16

*Brown v. Bd. of Educ.*,
    347 U.S. 483 (1954) ...................................................................................19

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .................................................................................4

*CVS Pharmacy, Inc. v. Doe*,
    No. 20-1374 (U.S. July 2, 2021), Mot. 19..................................................17

*Davis v. Francis Howell Sch. Dist.*,
  138 F.3d 754 (8th Cir. 1998) ........................................................................... 16

*DeBord v. Board of Educ. of Ferguson-Florissant Sch. Dist.*,
  126 F.3d 1102 (8th Cir. 1997) .................................................................... 15, 16

*Disabled in Action v. Bd. of Elections in the City of N.Y.*,
  752 F.3d 189 (2d Cir. 2014) ............................................................................ 16

*Durand v. Fairview Health Servs.*,
  902 F.3d 836 (8th Cir. 2018) ..................................................................... 15, 16

*E.D. By & Through Dougherty v. Palmyra R-I Sch. Dist.*,
  911 F.3d 938 (8th Cir. 2019) ........................................................................... 11

*Fry v. Napoleon Cmty. Sch.*,
  137 S. Ct. 743 (2017) ........................................................................... 11, 12, 13

*G.S. v. Lee*,
  558 F. Supp. 3d 601 (W.D. Tenn. 2021) ......................................................... 10

*Hager v. Ark. Dep't of Health*,
  735 F.3d 1009 (8th Cir. 2013) ........................................................................... 3

*Hamilton v. Palm*,
  621 F.3d 816 (8th Cir. 2010) ............................................................................. 4

*In re Raynor*,
  617 F.3d 1065 (8th Cir. 2010) ......................................................................... 10

*Issa v. School Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) .............................................................................. 6

*J.M. v. Francis Howell Sch. Dist.*,
  850 F.3d 944 (8th Cir. 2017) ........................................................................... 13

*Kai v. Ross*,
  336 F.3d 650 (8th Cir. 2003) ............................................................................. 6

*Little Earth of the United Tribes, Inc. v. Dep't of Hous. & Urban Dev.*,
  807 F.2d 1433 (8th Cir. 1986) ......................................................................... 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 8

*Mark H. v. Lemahieu*,
  513 F.3d 922 (9th Cir. 2008) ........................................................................... 16

iv

*McWright v. Alexander*,
  982 F.2d 222 (7th Cir. 1992) .................................................................. 16

*Moore v. Kansas City Pub. Sch.*,
  828 F.3d 687 (8th Cir. 2016) .................................................................. 13

*Morris v. American Nat'l Can Corp.*,
  988 F.2d 50 (8th Cir. 1993) .................................................................... 10

*Nat'l Fed'n of the Blind v. Lamone*,
  813 F.3d 494 (4th Cir. 2016) .................................................................. 16

*Nathanson v. Medical Coll. of Pa.*,
  926 F.2d 1368 (3d Cir. 1991) ................................................................. 16

*Nelson v. Charles City Cmty. Sch. Dist.*,
  900 F.3d 587 (8th Cir. 2018) .................................................................. 14

*Nieves-Marquez v. Puerto Rico*,
  53 F.3d 108 (1st Cir. 2003) ...................................................................... 6

*R.K. v. Lee*,
  568 F. Supp. 3d 895 (M.D. Tenn. 2021) ................................................. 11

*Robinson v. Kansas*,
  295 F.3d 1183 (10th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003) ....................................... 16

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ................................................................................... 4

*Ruskai v. Pistole*,
  775 F.3d 61 (1st Cir. 2014) .................................................................... 16

*S.B. v. Lee*,
  566 F. Supp. 3d 835 (E.D. Tenn. 2021) ................................................. 10

*Sarasota Wine Market LLC v. Schmitt*,
  987 F.3d 1171 (8th Cir. 2021) .................................................................. 4

*Seaman v. Virginia*,
  No. 3:22-cv-00006, 2022 WL 872023 (W.D. Va. Mar. 23, 2022) ........................................ 10

*Shafer v. Zimmerman*,
  No. 20-cv-00023, 2020 WL 7260034 (S.D. Iowa Dec. 10, 2021) (Pratt, J) .............................. 3

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
  251 F.3d 814 (9th Cir. 2001) .................................................................... 6

*Staron v. McDonald's Corp.*,
  51 F.3d 353 (2d Cir. 1995) .................................................................................. 14

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ........................................................................................... 19

*Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*,
  178 F.3d 968 (8th Cir. 1999) .............................................................................. 16

*United States v. Georgia*,
  546 U.S. 151 (2006) ........................................................................................... 19

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ............................................................................................. 4

## **Statutes**

20 U.S.C. § 1415(l) (Individuals with Disabilities Education Act) ....................... *passim*

28 U.S.C. § 2201(a) (Declaratory Judgment Act) ........................................... 16

9 U.S.C. § 794 *et seq.* (Rehabilitation Act) ..................................................... *passim*

42 U.S.C Code § 12131 *et seq.* (Americans with Disabilities Act) ....................... *passim*

Iowa Code § 280.31 ........................................................................................ *passim*

Iowa Code § 139A.8(2)(a)-(e) .......................................................................... 25

## **Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 10

## INTRODUCTION

Governor Reynolds and Director Lebo rehash old arguments in their renewed motion to dismiss. These arguments are wholly insufficient to strip Iowa school districts of the discretion to adopt tailored and temporary masking policies where needed as a reasonable modification pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act to protect the health, welfare, and educational opportunities of students with disabilities who face increased risks of serious health consequences from COVID-19. This Court should reject State Defendants' motion and, as explained in Plaintiffs' July 1, 2022 filing, grant summary judgment to Plaintiffs and enter a targeted and limited declaratory judgment.

First, Plaintiffs have standing to challenge Iowa Code § 280.31 (hereinafter "Section 280.31"). Some Plaintiffs continue to face elevated risks from COVID-19 infection. They face prolonged uncertainty about the reach of Section 280.31 and thus lack necessary legal clarity of their rights. Section 280.31 states that the ban on masking requirements does not apply if a "facial covering is . . . [required by] any other provision of law," but there is no clarity that these "provision[s]" could include federal disability rights laws. At least one Defendant school district continues to believe that this provision does not allow them to grant an accommodation under the federal anti-discrimination laws.[1]  Even more troubling, contrary to the assertions made in their brief that 280.31 "does not prevent school districts from complying with federal law," Mot. 3, State Defendants have declined to concede that the schools could require masking by others as a reasonable modification as required under the ADA or the Rehabilitation Act, and have never retracted the enforcement threats against school districts that do so. Their refusals, upon which

---

[1] For example, on May 27, 2022 the Superintendent of the Iowa City School District wrote in a message to families and staff that "the U.S. Court of Appeals for the 8th Circuit ruled that school districts cannot universally require facemasks to be worn." ECF 88-2 ¶ 19.

they double down in their Motion to Dismiss, have prolonged this legal controversy and created severe uncertainty for Plaintiffs. This is more than enough to demonstrate Plaintiffs' standing.

Second, this case remains an active controversy. State Defendants incorrectly apply the law of the case doctrine. They misinterpret the Eighth Circuit's decision holding that the need for a preliminary injunction was moot to suggest that the entire case is moot. Different standards govern the granting of declaratory and emergency injunctive relief. Nothing in the Eighth Circuit's order warrants finding that the entire action (which includes requests for declaratory relief) is moot.  If anything, the Eighth Circuit's panel opinion invites, and almost calls on, the district court to enter a declaratory judgment; the Eighth Circuit specifically wrote that the "district court should pay particular attention to Section 280.31's exception for 'any other provision of law' . . . . If another state or federal law requires masks, Section 280.31 does not conflict with that law." *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1045 (8th Cir. 2022). That is a far cry from mandating that this Court dismiss the entire action as moot.

Third, Plaintiffs do not need to exhaust their administrative remedies under the IDEA. In fact, the IDEA process could not possibly provide adequate relief for Plaintiffs' charge of disability discrimination. State Defendants raise no new arguments to unsettle this Court's prior reasoning (as well as that of other federal district courts) rejecting State Defendant's exhaustion argument.

Fourth, State Defendants are wrong as a matter of law in the spaghetti-on-the-wall series of arguments they make on pages seventeen to twenty-nine of their brief. For starters, the Supreme Court, the Eighth Circuit, and a dozen other appellate courts have made clear Plaintiffs do not have to show animus towards students with disabilities for there to be a violation of federal civil rights laws. State Defendants are similarly wrong to suggest (without evidence) that

granting schools the power to evaluate students' reasonable modification requests would constitute an administrative burden or a fundamental alteration in the nature of the education in Iowa.  Federal law not only grants schools the power to evaluate students' reasonable modification requests, but also requires schools to evaluate such requests. And State Defendants ignore Supreme Court decisions holding that the ADA applies to states and localities; the only "constitutional concerns" in this case would arise if this Court let Iowa school districts ignore their responsibilities under federal law.

This Court should deny State Defendants' motion to dismiss.

## STANDARD FOR MOTION TO DISMISS

Under the Federal Rules of Civil Procedure, "the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (discussing Fed. R. Civ. P. 12(b)(6)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 5, 570 (2007)). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Shafer v. Zimmerman*, No. 20-cv-00023, 2020 WL 7260034 at *2 (S.D. Iowa Dec. 10, 2021) (Pratt, J) (citing *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010)).

## ARGUMENT

I.      **PLAINTIFFS CONTINUE TO HAVE STANDING.**

"To establish standing, plaintiffs must show that they: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Sarasota Wine Market LLC v. Schmitt*, 987 F.3d 1171, 1177-78 (8th Cir. 2021); *accord Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). As long as one plaintiff has standing to pursue one claim for relief, standing exists for the case as a whole to move forward. *See, e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,* 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). Upon finding that at least one party "has demonstrated standing" with respect to a particular claim, a court generally does not have to consider whether other parties have standing to assert the same claim. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264 & n.9 (1977).  This Court previously found that Plaintiffs had standing, and much of that reasoning is still valid notwithstanding the change in circumstances. ECF 60 at 10-11.

A.     *Injury in Fact*

Since Plaintiffs initiated this litigation, the circumstances of the COVID-19 pandemic have changed markedly. *See, e.g.,* ECF 88-1 (Motion for Summary Judgment) (noting approval and availability of COVID-19 vaccines for children under twelve, changed contagion rates and additional treatment options). These changes led the Eighth Circuit to vacate the preliminary injunction, noting that the need for emergency injunctive relief was now moot. *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044–45 (8th Cir. 2022).

 But some individual Plaintiffs and members of the Arc of Iowa continue to face elevated risks from COVID-19.  The fact that overall conditions have changed or that others no longer face the same risk does not minimize the threats these children face. Nor does it mean that these students can be deprived of the right to petition for a reasonable modification. Because these children continue to face significant risks if they contract COVID-19, and that risk would be

mitigated if their schools adopt some masking requirement, the same fundamental need for reasonable accommodations remains.

With this opposition, Plaintiffs are filing declarations from the physicians for Plaintiffs E.C., M.P., and H.J.F.R., who, relying on fact-and context-specific findings, determined that masking is still necessary for these Plaintiffs to have equal access to their educations. Declaration of Dr. Lisa Menzies; Declaration of Dr. Stephen Mooradian; Letter of Dr. Tim Starner. These declarations confirm, for example, that particular Plaintiffs remain at high risk for severe complications or medical problems like needed ventilatory support if they become infected with COVID-19. Dr. Menzies Dec. ¶ 5; Dr. Mooradian Dec. ¶ 9. The declarations likewise make clear that requiring individuals around the Plaintiff to mask remains the recommendation of these Plaintiffs' doctors. Dr. Menzies Dec. ¶ 11; Dr. Mooradian Dec. ¶¶ 13, 16). They also establish that masking continues to be an important tool to slow the spread of disease, particularly when county transmission is high. Dr. Menzies Dec. ¶ 11. These Plaintiffs have current needs for reasonable modifications to have equal access to their educations.

Moreover, future waves of the pandemic may strengthen this need for these and other high-risk students with disabilities in the future. While much has changed since this litigation was initiated, the underlying need for the simple *possibility* of granting reasonable accommodations has not.

As plaintiffs previously argued, danger to health is a clear injury in fact. *See, e.g.*, *Kai v. Ross*, 336 F.3d 650, 656 (8th Cir. 2003). So too is the loss of educational opportunities. *See, e.g., Issa v. School Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017) ("[E]ven a few months in an unsound program can make a world of difference in harm to a child's educational development") (citing *Nieves-Marquez v. Puerto Rico*, 53 F.3d 108, 121-22 (1st Cir. 2003)). And the mere

violation of Plaintiffs' civil rights under federal anti-discrimination laws is in itself an injury. *See, e.g.*, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (where a "defendant has violated a civil rights statute," courts can "presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation.").

Plaintiffs also face a separate injury from the continued uncertainty about the reach of Section 280.31 and thus their rights. Most notably, Section 280.31 states that its ban on masking requirements does not apply if a "facial covering is . . . [required by] any other provision of law." While the Eighth Circuit intimated that these "provision[s]" could include federal civil rights laws, such that schools could require masking by others as an accommodation as required under the Americans with Disabilities Act or the Rehabilitation Act, State Defendants continue to take the position that school districts cannot accommodate students by requiring masking, Mot. 17-23, and State Defendants have never retracted their threats to punish schools that grant such accommodations. As a result, students with disabilities and their families cannot know whether their requests for accommodation will be considered or summarily denied under Section 280.31. Similarly, their schools cannot know whether granting a reasonable accommodation request will result in sanctions or fines from State Defendants. Plaintiffs therefore remain uncertain whether their children can safely go to schools. Without judicial intervention, this legal uncertainty will continue to complicate and confuse decision-making: parents will be uncertain whether there is any point in seeking accommodations, school principals and administrators will be unsure whether they can require masking as an accommodation, and students with disabilities will face continued barriers to their education.

B.    *Traceability*

State Defendants' statements and actions regarding enforcement of Section 280.31 have fostered fear and confusion, which is more than sufficient to establish traceability. In the weeks leading up to and the early days of the 2021-2022 school year, State Defendants threatened school districts that were considering masking requirements. Compl. ¶¶ 48-49. On appeal, State Defendants said Section 280.31 does not block enforcement of the ADA, *and* that "the ADA and the Rehab Act do not override neutral local school district policies" and thus do not "provide a basis to override this statutory product of Iowa's democratic process. ECF 88-2 ¶ 17. State Defendants also reiterated that "a school that violates the statute—like any school law—could eventually be subject to loss of accreditation or other action by the State Board of Education if the violation is not remedied." ECF 88-2 ¶ 8.

Indeed, State Defendants continue to refuse to recognize the rights of students with disabilities to request reasonable modifications. In particular, in conjunction with Plaintiffs' motion for summary judgment, State Defendants refused to stipulate "that Section 280.31 cannot be cited as a basis to deny a student's request for reasonable modification that includes requiring others to wear masks." ECF 88.

And in their renewed motion to dismiss, State Defendants "disput[e]" that federal civil rights laws "require local school decisionmakers to have the discretion to impose" masking policies. Mot. 6. *See also* Mot. 17 ("Neither the ADA nor the Rehabilitation Act require . . . schools to have the discretion to implement such mandates."); Mot. 20 ("Modifying [section 280.13] to give schools discretion would void the Legislature's policy decision to take the highly contentious and emotional issue of masks in schools from the responsibility of local schools so that local leadership could devote their time to other important concerns").

C.      *Redressability*

Given the uncertainty faced by school districts and Plaintiffs in light of State Defendants threats, a declaratory judgment on behalf of Plaintiffs would provide significant redress. As demonstrated by the actions of over two dozen school districts, which reinstated masking requirements following entry of the temporary restraining order and enabled many of the individual plaintiffs and ARC members to attend school again, ECF 48-2, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-13, 48-14, 48-15, 48-16, restoring school districts' discretion to evaluate reasonable modification requests would not be a purely speculative action with no real-world consequences.[2]

Accordingly, Plaintiffs have established that their injuries are redressable through this litigation.

## II.     PLAINTIFFS' CLAIMS ARE NOT MOOT.

This case continues to present an active and live controversy, as Plaintiffs' request for declaratory relief is not moot. While the Eighth Circuit vacated the October 8, 2021 preliminary injunction on the grounds that changed circumstances rendered that extraordinary form of relief no longer necessary, from the onset of this litigation, Plaintiffs have sought both injunctive *and* declaratory relief. *See, e.g.*, Compl. ¶ 9. Nothing in the Eighth Circuit's order addresses Plaintiffs' claims for declaratory relief, which have not been adjudicated by this Court or any other. The Eighth Circuit noted that its order found "[t]he issues surrounding the *preliminary*

---

[2] In *E.T. v. Paxton*, the Fifth Circuit held that that similarly-situated students with disabilities were unable to demonstrate that their injuries would be redressable. No. 21-51083, 2022 WL 2914732 at *7 (5th Cir. July 25, 2022). This out-of-circuit appellate court ruling, limited to redressability, is clearly distinguishable because it turned on the fact that the Texas plaintiffs, unlike those in this case, "chose not to sue their school districts." *Id*. at *7. The Court observed that "if [Plaintiffs] don't sue the regulated third party, they leave redressability to turn on 'the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict.'" *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). Indeed, this Court's entry of injunctive relief last September led to immediate changes in masking policy in Iowa, further demonstrating the tangible and direct impact of a favorable decision.

*injunction* are moot because the current conditions differ vastly from those prevailing when the district court addressed it." *Arc of Iowa*, 33 F.4th at 1044 (emphasis added). A ruling on one type of relief does not extinguish the viability of claims on which a court has not ruled. Indeed, the Eighth Circuit explicitly made clear that its determination regarding preliminary injunctive relief did not extend to the merits of the underlying action or extinguish forms of relief not at issue. *Id.* at 1045 ("This Court takes no position on the merits of Plaintiffs' claims, which are left for future decision.").

This conclusion certainly makes sense because a claim for preliminary injunctive relief is evaluated under a different legal standard and reflects a fundamentally different form of relief than declaratory relief. Declaratory judgments are statutory remedies and articulate "the rights and other legal relations" of a party, and "have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). They are commonplace. Injunctions, conversely, are equitable remedies issued in extraordinary circumstances.

State Defendants' invocation of the "law of the case," Mot. 12, to argue mootness is thus misguided. The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Morris v. American Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The underlying intent of the doctrine is to "prevent . . . the relitigation of settled issues in a case" *Little Earth of the United Tribes, Inc. v. United States Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986); *In re Raynor*, 617 F.3d 1065, 1068 (8th Cir. 2010). But Plaintiffs' declaratory claims are not settled: Plaintiffs presented full argument on them for the first time on July 1, 2022. Further, the Eighth Circuit explicitly limited its decision to Plaintiffs' claim for emergency injunctive relief. *Arc of Iowa*, 33 F.4th at

9

1045.

The Eighth Circuit went on to observe that "district court should pay particular attention to Section 280.31's exception for 'any other provision of law' . . . . If another state or federal law requires masks, Section 280.31 does not conflict with that law." *Arc of Iowa*, 33 F.4th at 1045. Applying the law of the case doctrine to foreclose declaratory claims here would be particularly inappropriate because the doctrine ensures district courts *honor* the decisions of appellate courts, not undermine them.

## III.   STATE DEFENDANTS PROVIDE NO REASON FOR THIS COURT TO REVISIT ITS PRIOR RULING ON ADMINISTRATIVE EXHAUSTION

State Defendants contend that "Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA")," which they claim "dooms their federal disability claims and requires dismissal." Mot. 12. In granting the preliminary injunction, this Court (like many other federal district courts) correctly rejected this argument, finding that IDEA exhaustion is not required for Plaintiffs' ADA and Rehabilitation Act claims. ECF 60 at 12-14. *See also Seaman v. Virginia*, No. 3:22-cv-00006, 2022 WL 872023 (W.D. Va. Mar. 23, 2022); *G.S. v. Lee*, 558 F. Supp. 3d 601 (W.D. Tenn. 2021); *S.B. v. Lee*, 566 F. Supp. 3d 835 (E.D. Tenn. 2021); *R.K. v. Lee*, 568 F. Supp. 3d 895 (M.D. Tenn. 2021).  State Defendants offer no new arguments to warrant a different result. In any event, the argument is simply premature, because without declaratory relief that federal disability law may require masking, it is irrelevant which disability law the request is brought under.

IDEA ensures that physically or intellectually disabled students receive necessary special education services by requiring states to provide a free appropriate public education ("FAPE"). "Under the IDEA, an 'individualized education program' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE."  *Fry v. Napoleon Cmty.*

10

*Sch.*, 137 S. Ct. 743, 752 (2017).  A plaintiff can bring claims for the denial of a FAPE under the

IDEA so long as the plaintiff first exhausts their administrative remedies under IDEA.  20 U.S.C.

§ 1415(l).  But when an ADA claim's "remedy sought is not for the denial of a FAPE, then

exhaustion of the IDEA's procedures is not required" because "the plaintiff could not get any

relief from those procedures." *Fry*, 137 S. Ct. at 754.  To determine which claims fall under the

IDEA, "a court should look to the substance, or gravamen, of the plaintiff's complaint," not

whether a plaintiff's claim may have "educational consequences." *Fry*, 137 S. Ct. at 572. Where

the "essence" of a lawsuit "is equality of access to public facilities, not adequacy of special

education," exhaustion under the IDEA is unnecessary. *Id*. at 756, 758.

 To determine whether the gravamen of a case falls within IDEA, the Supreme Court

directed courts to assess two questions: "First, could the plaintiff have brought essentially the

same claim if the alleged conduct had occurred at a public facility that was not a school—say, a

public theater or library? And second, could an adult at the school—say, an employee or

visitor—have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 754; *E.D. By &

Through Dougherty v. Palmyra R-I Sch. Dist*., 911 F.3d 938, 941 (8th Cir. 2019).  If the answer

to both questions is yes, the IDEA is inapplicable, and exhaustion is not required.

 This Court correctly held that the answer to both questions in this case is yes. ECF 60 at

13.  First, this Court found that "Plaintiffs could bring their claims for the alleged discriminatory

conduct occurring at another public facility, like a library. . . ." *Id*. (citation and internal

quotation marks omitted).  A plaintiff who is determined to need the reasonable modification of

masking would experience the same risks to their health in other public facilities, and could bring

the same claim for lack of equal access to a library, a doctor's office, or an airplane, if those

facilities were banned from requiring masks. Second, this Court correctly concluded that "[a]n

adult, such as a teacher or a staff member at a public school, could also bring the claims alleged by Plaintiffs." *Id* at 13-14 (citation and internal quotation marks omitted).  Adults with disabilities that make them vulnerable to severe complications from COVID-19, including teachers, staff, and parents, could similarly be endangered by section 280.31, and could equally sue to be able to access the school safely if their disability put them at severe risk.

Nothing in State Defendants' brief warrants the Court revisiting its prior decision on these points.  State Defendants' argument that "the proper level of comparison [under *Fry*] is whether a teacher or visitor could bring a claim that they're being forced to choose between their health or receiving an equal education," Mot. 16, is a point they raised last year and is manifestly wrong.  A teacher or visitor could never bring a claim if the inquiry were phrased in that way, and *Fry* held that whether a teacher or visitor could bring a claim is the relevant inquiry.  The same is true of State Defendants' efforts to rewrite *Fry*'s question about libraries, county courthouses and other public accommodations. *Id*. Based on the straightforward test from *Fry*, this Court thus correctly held that "Plaintiffs need not fulfill the administrative exhaustion requirement of the IDEA because the gravamen of Plaintiffs' Complaint is not for the denial of a FAPE." ECF 60 at 14 (citation and internal quotation marks omitted).

State Defendants re-raise an argument that, because Plaintiffs assert that enforcement of Section 280.31 effectively excludes their disabled children from receiving an education, they necessarily allege the denial of a FAPE. *See, e.g*., Mot. 14. But that proves too much.  As the Supreme Court recognized in *Fry*, "even when the suit arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to [the child's] education"—the "school's conduct toward such a child . . . might injure [the child] in ways unrelated to a FAPE. . . ." 137 S. Ct. at 754.  This Court correctly held that that is the case here:

"Plaintiffs do not seek the type of special education services that the IDEA guarantees.  Rather, Plaintiffs seek to allow their public school districts the discretion to impose mask mandates and provide their children with 'non-discriminatory access to public institutions' under the ADA and Rehabilitation Act."  ECF 60 at 14 (citation omitted).

Plaintiffs do not seek to modify an IEP or educational placement; indeed, a number of plaintiffs do not even have IEPs.  *See Moore v. Kansas City Pub. Sch.*, 828 F.3d 687, 692 (8th Cir. 2016) (concluding under *Fry* that the gravamen of complaint was not denial of a FAPE where plaintiff "did not request any change or amendment to [student's] IEP or educational placement. . . .").  That makes this case unlike *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944 (8th Cir. 2017), on which State Defendants rely, Mot. 13.  In *J.M.*, the claims were "based on the failure to implement J.M.'s IEP" and "fail[ure] to provide proper sufficient supportive services to permit [J.M.] to benefit from . . . instruction." *Id.* at 949-50 (citations and internal quotation marks omitted).

State Defendants' argument that the Court should convert Plaintiffs' claims to ones for denial of a FAPE requiring exhaustion because some Plaintiffs started to seek individualized solutions is meritless.  *See* Mot. 17. As noted above, several Plaintiffs do not have IEPs.  And "the reasonable modification inquiry [under Title II of the ADA] is highly fact-specific and varies depending on the circumstances of each case. . . ." *Bahl v. County of Ramsey*, 695 F.3d 778, 784-85 (8th Cir. 2012); *see also Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) (same). That some of the Plaintiffs sought modifications that match the facts of their particular disability and is a common feature of claims for disability discrimination that does not transform a discrimination claim into a complaint about the sufficiency of an IEP that could be remedied by the IDEA.

13

Finally, this Court correctly determined that no exhaustion was required as IDEA's administrative remedies could not possibly provide adequate relief for Plaintiffs' claim of disability discrimination. *See Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 593 (8th Cir. 2018). An administrative law judge, with the limited authority to adjudicate whether a proposal or refusal to "initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child," Iowa Admin. Code r. 281-41.503(1)(a) and (b); *see* Iowa Admin. Code r. 281-41.507(1)(a), could not enter a declaration that a school district can consider requiring masking, nor could an ALJ declare that Iowa Code section 280.31 cannot be enforced to deny a request for reasonable accommodation. *See Barron v. South Dakota Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011) (holding plaintiffs did not have to exhaust because "adequate relief likely could not have been obtained through the administrative process.").

## IV.     STATE DEFENDANTS' REMAINING ARGUMENTS ARE WRONG AS A MATTER OF LAW.

State Defendants conclude their Motion by presenting a series of demonstrably incorrect arguments based on misconstruing well-established principles of federal law.

First, State Defendants contend no violation of the ADA or Rehabilitation Act occurs when a "neutral nondiscriminatory policy" leads to a rights denial, Mot. 17-18. But numerous courts, including the Eighth Circuit (repeatedly), have held Title II and the Rehabilitation Act do not only apply to policies that are motivated by animus against disabled people or expressly target disabled people. These vital civil rights laws also apply to policies that are "facially neutral" but have a disparate impact.

The Eighth Circuit held in *DeBord* that a plaintiff could show that a facially neutral "policy has the effect of discriminating against the disabled or the severely disabled," such as by

showing that the "facially neutral policy" draws distinctions "on the basis of any trait that the disabled or severely disabled are less or more likely to possess." *DeBord v. Board of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1105 (8th Cir. 1997). The Court explained that Congress was concerned in the ADA not just about intent, but "discriminatory effects." *Id*. at 1106. Although *DeBord* ultimately affirmed summary judgment against plaintiffs' claims, it did so because they "ha[d] not tried to show [that] the policy"—a ban on administering drug dosages at school that exceeded the recommended maximum in the Physicians' Desk Reference—"has the effect of discriminating against the disabled or the severely disabled." *Id*. at 1105.

The Eighth Circuit's recent decision in *Durand v. Fairview Health Servs*., 902 F.3d 836 (8th Cir. 2018), confirms the point. *Durand* held that Title II and the Rehabilitation Act require public institutions and recipients of federal funding to provide an otherwise qualified disabled individual with "meaningful access to the benefit" at issue, because one goal of the ADA was "to remedy. . . discriminatory effects" from facially neutral barriers facing disabled people. *Id*. at 842 (citations and internal quotation marks omitted); *see also Timothy H. v. Cedar Rapids Cmty. Sch. Dist*., 178 F.3d 968, 972 (8th Cir. 1999) (recognizing availability of disparate impact under Rehabilitation Act but finding no "basis for concluding that the school district's policy has a discriminatory impact upon the disabled").

State Defendants rely principally on *Davis v. Francis Howell Sch. Dist*., 138 F.3d 754 (8th Cir. 1998). Mot. 17-20. But that decision merely relied on *DeBord* to reject a challenge to the same drug dosage policy at issue in *DeBord*. *Id*. at 756. *Davis*'s language about how the policy "applies to all students regardless of disability," which State Defendants quote (Mot. 18), came directly from *DeBord*, 126 F.3d at 1105. *Davis* did not reject *DeBord*'s express conclusion that a policy that applies to all regardless of disability but has a different impact on disabled

students would violate the law.  *Id*. at 1105-06.  Section 280.31, which applies differently to disabled students by rendering them susceptible to severe health consequences in comparison to their non-disabled peers, discriminates under the test from *DeBord* and *Durand*.

Moreover, *DeBord* and *Durand* are correct in recognizing that there can be liability based on disparate impact.  As nine other circuits have consistently held over the last 34 years, and as the Supreme Court recognized in *Alexander v. Choate*, 469 U.S. 287 (1985), the plain language and purpose of federal anti-discrimination laws mandates disparate impact liability.[3]   State Defendants failure to acknowledge or address any of these cases confirms their position is a radical departure from decades of established law. And their invocation of the grant of certiorari in *CVS Pharmacy, Inc. v. Doe*, No. 20-1374 (U.S. July 2, 2021), Mot. 19, is curious, given that case was voluntarily dismissed, the certiorari grant dismissed, 142 S. Ct. 480 (Nov. 12, 2021), and, in any event, grants of *certiorari* are not legal determinations of consideration by a court.

Second, State Defendants argue that limited and temporary masking requirements are an unreasonable modification that impose an undue administrative burden on schools or constitute a fundamental alteration.  Mot. 19-20. These are fact specific defenses that require State Defendants to submit substantial evidence to support. Yet, State Defendants merely assert the claim.  *Bahl*, 695 F.3d at 784-85 (reasonable modification inquiry is "highly fact-specific and varies depending on the circumstances of each case. . . .").

State Defendants have produced no evidence that the mere possibility a district could impose a masking requirement creates a financial or administrative burden, let alone an undue

---

[3] *Ruskai v. Pistole*, 775 F.3d 61, 78-79 (1st Cir. 2014); *Disabled in Action v. Bd. of Elections in the City of N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014); *Nathanson v. Medical Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-04, 510 (4th Cir. 2016); *Brennan v. Stewart*, 834 F.2d 1248, 1261-62 (5th Cir. 1988); *McWright v. Alexander*, 982 F.2d 222, 228-29 (7th Cir. 1992); *Mark H. v. Lemahieu*, 513 F.3d 922, 936-37 (9th Cir. 2008); *Robinson v. Kansas*, 295 F.3d 1183, 1187 (10th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003); *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1268-69 (D.C. Cir. 2008).

one, or that the implementation of a masking requirement does so. Recent history (and common sense) also cut against their argument. Record evidence shows that during the 2020-2021 school year, over a third of public school districts in Iowa, enrolling nearly 70% of public school students in the state, enforced mask requirements without fundamentally altering the provision of education. ECF 48-1.  Similarly, following the entry of the preliminary injunction, several dozen schools reinstated masking requirements, without any evidence that this caused undue burden fundamentally altered their provision of education. ECF 48-2, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-13, 48-14, 48-15, 48-16.  Against this baseline, it is hard to see how tailored and temporary masking, perhaps limited to a classroom, after an individualized reasonable modification process, rises to be a fundamental alteration.

State Defendants further contend that a masking policy is unreasonable because "it infringes on the rights of third parties—other students, teachers, and visitors to the school."  Mot. 21. State Defendants do not state what "rights" they invoke here or any source of such rights under federal or state law, or address why a masking requirement differs from other requirements that Iowa schools routinely place on students, teachers, and visitors to facilitate functioning and equitable learning environments. *See, e.g.*, Iowa Code § 139A.8(2)(a)-(e) (requiring proof of immunizations for enrollment in school); Iowa Admin. Code r. 641-7.6 (agency regulations requiring proof of immunization for students enrolled in elementary, secondary, and other types of schools).

State Defendants also argue that "there are disability interests on both sides" of this case, citing affidavits from parents of disabled children who cannot mask. Mot. 22. The beauty of the reasonable modification process is that it allows "both sides" to collaborate to find mutually beneficial solutions. And, as goes without saying, Plaintiffs are not asking for blanket mask

mandates; this Court never entered relief instituting blanket mask mandates. Restoring discretion to schools will allow for the individualized consideration of different claims surrounding masking, based on medical necessity, which is the only way to come up with accommodations when some students with disabilities need masks and others cannot wear them.

Third, State Defendants argue that recognizing the rights of students with disabilities under federal law would raise "constitutional concerns." Mot. 23-24. This argument ignores the text and purpose of these federal civil rights laws, as well as the bedrock principle that public schools are subject to federal law. The text of the ADA and Rehabilitation Act expressly cover activities of "State [and] local government[s]," including specifically a "local educational agency" or "school system." *See, e.g.,* 42 U.S.C. § 12131(1)(A); 29 U.S.C. 794(b)(2). And the Supreme Court has held that Title II was intended to and does apply directly to states and local governments to address "unequal treatment of persons with disabilities by States and their political subdivisions." *Tennessee v. Lane*, 541 U.S. 509, 526 (2004); *United States v. Georgia*, 546 U.S. 151, 154 (2006). State Defendants fail to note, much less address this controlling authority which squarely refutes their position.

Moreover, such an interpretation does not, as State Defendants claim in a strangely archaic argument, "significantly alter the balance between federal and state power. . . ." Mot. 24. (quoting *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021)). As this Court noted in entering the temporary restraining order, federal courts have long held that the nation's schools are subject to requirements of federal law. ECF 32 at 2 (citing *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954)).

Finally, this lawsuit has nothing to do with "the allocation of authority between the State and local governments. . . ." Mot. 24. Restoring discretion by clarifying the meaning of section

280.31 would return authority to school districts because of background state law providing for

local control of schools, not because the ADA and Rehabilitation Act require local control.  The

ADA and Rehabilitation Act merely require that whatever entity has decision-making authority

over school services must be permitted to make that evaluation unencumbered by State

Defendants' threats.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss should be denied.

Respectfully submitted,


 **AMERICAN CIVIL LIBERTIES UNION OF IOWA**

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
Shefali Aurora, AT0012874
Leah Patton, AT0006022
**ACLU of Iowa Foundation Inc.**
505 Fifth Avenue, Suite 901
Des Moines, IA 50309-2316
Telephone: 515-243-3988
Facsimile: 515-243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
leah.patton@aclu-ia.org

**DISABILITY RIGHTS IOWA**
Cynthia A. Miller (AT0005382)
Catherine Johnson (AT0004006)
666 Walnut Street, Suite 1440
Des Moines, IA 50309
T: (515) 278-2502
E: cmiller@driowa.org
E: cjohnson@driowa.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Louise Melling*
125 Broad St.
New York, NY 10004

19

T: (212) 549-2637
E: lmelling@aclu.org
Susan Mizner*
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0781
E: smizner@aclu.org

**ARNOLD & PORTER KAYE SCHOLER LLP**
John A. Freedman*
601 Massachusetts Ave, NW
Washington, DC 20001
T: 202.942.5316
E: john.freedman@arnoldporter.com
*Admitted *pro hac vice*

**THE ARC**
Shira Wakschlag*
The Arc of the United States
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: 202-534-3708
Facsimile: 202-534-3731
E: wakschlag@thearc.org
*pro hac vice admission pending

**DUFF LAW FIRM, PLC**
Thomas J. Duff
The Galleria
4090 Westown Pkwy, Suite 102
West Des Moines, Iowa 50266
Telephone: (515) 224-4999
Fax: (515) 327-5401
E : tom@tdufflaw.com

*Attorneys for the Plaintiffs*

Dated: July 29, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.

All participants in this case are registered CM/ECF users and will served by the CM/ECF system.

Date: July 29, 2022

/s/ Leah Patton
Leah Patton